## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company,<br><br>    Plaintiff,<br><br>  vs.<br><br>DELL, INC., FUJITSU LIMITED, FUJITSU COMPUTER SYSTEMS CORP., INTERNATIONAL BUSINESS MACHINES CORP., LENOVO GROUP LTD., MPC COMPUTERS, LLC, AND SONY ELECTRONICS INC.,<br><br>    Defendants. | **MEMORANDUM DECISION - ORDER GRANTING MOTIONS FOR PROTECTIVE ORDER (IN PART)**<br><br>Civil No. 1:05-CV-64 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

   Plaintiff Phillip M. Adams & Associates, L.L.C. (Adams) alleges the Defendants, some of the largest manufacturers of computers, have infringed on three of his patents related to errors in floppy disk controllers.[1]  He alleges the infringement occurs in many specified models of Defendants' computers.[2]  Pretrial discovery in this action will necessarily involve the disclosure of trade secrets and/or confidential research, development, product, business or commercial information of parties and non-parties.  The parties have therefore filed motions[3] for protective orders to be entered, in varying forms.[4]  The parties have conferred in good faith but have been

---

[1] Amended Complaint at 2, docket no. 6, filed May 31, 2005.

[2] *Id.* at 8.

[3] Adams' Motion for Entry of a Protective Order, docket no. 84, filed April 12, 2006, and Defendants' Motion for Entry of their Proposed Protective Order, docket no. 86, filed April 12, 2006.

[4] Adams' proposed order is Exhibit A to Adams' Memorandum in Support of Motion for Entry of a Protective Order (Adams' Memorandum 85), docket no. 85, filed April 12, 2006.  Defendants' proposed order is Exhibit A to Declaration of Todd M. Briggs in Support of Defendants' Motion for Entry of their Proposed Protective Order, docket no. 88, filed April 12, 2006.

unable to stipulate to the terms of a protective order because of two fundamental conceptual differences:

> Defendants seek an order requiring that the party challenging a confidentiality designation bears the burden of establishing that the designation is improper . . . .[5]

> Defendants seek entry of a protective order that prevents Dr. Adams [principal in Plaintiff Adams] from having access to Defendants' highly confidential technical information.[6]

Plaintiff claims that the first proposal is conceptually unsound.  "There is no reason to change the standard rule that the party designating the documents has the burden to show why their designation is proper."[7]

Plaintiff characterizes the second demand as "onerous, prejudicial and unnecessary," and complains that Defendants are "question[ing] Dr. Adams' integrity . . . ."[8]  Plaintiff also says that Dr. Adams' unique position as inventor of the patents in suit and as sole owner of the Plaintiff entity requires that he have access, and that Adams is not really a competitor of Defendants as to whom exclusion from discovery is required.[9]

## I.      Who should bear the burden of proof when protection is challenged?

The easier dispute is who should have the burden of proof when a confidentiality designation is challenged.  Like most stipulated protective orders, the forms proposed by the parties place the responsibility of designation of confidentiality on the producing party, but subject to objection by the receiving party.  If the dispute cannot be resolved, the issue is submitted to the court for decision.  Defendants, knowing Dr. Adams' access is also in dispute, seek to place the burden of proof on the party challenging designation, as a disincentive to

---

[5] Memorandum in Support of Defendants' Motion for Entry of their Proposed Protective Order (Defendants' Memorandum 87) at 2, docket no. 87, filed April 12, 2006.

[6]. *Id.* at 1

[7] Adams' Memorandum 85, at 10.

[8] *Id.* at 1-2.

[9] Adams' Response to Defendants' Motion for a Protective Order and Request that the Court Consolidate Adams' and Defendants' Motions for a Protective Order (Adams' Memorandum 97) at 6, docket no. 97, filed May 1, 2006.

challenges.[10]  While the court is in favor of disincentives to disputes, the proposal is not sound for compelling policy reasons.

It is presumed that the business of the courts is public.

> There is a strong presumption toward public disclosure of court files and documents, as the "public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding,"  Public disclosure is justified further by the First Amendment.[11]

However, litigants do not waive all privacy by filing suit or by being sued.  Abrogation of privacy would suppress parties' abilities to seek peaceable remedies through the courts.  So, evidentiary privileges assure that confidential relationships are more important than truth-finding, and rules provide that certain personal identifying information should be preserved from public view to protect individual dignity and safety.[12]  The rules also permit certain business information to be protected.

> Upon motion by a party . . . and for good cause shown, the court in which the action is pending . . . may . . . order . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way . . . ."[13]

The Rule allowing protection of business information requires that "good cause" should be shown for protection of sensitive business information.  The person seeking protection has the burden of demonstrating "good cause."  And "good cause" must be determined at least in part by balance with the public interest.  For these reasons, a stipulation cannot raise a presumption of protection.  A stipulated protective order cannot bestow any weight on a party's unilateral designation of protection.  Allowing mechanical designation by a producer is a convenient and

---

[10] Defendants' Memorandum 87, at 6.

[11] *In re Bank One Securities Litigation*, 222 F.R.D. 582, 585 -586 (N.D. Ill. 2004)(citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982) and quoting *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir.1994)).

[12] Notice to Members of the Bar and Litigants, http://www.utd.uscourts.gov/documents/privacy_ntc.html (last visited June 12, 2006).

justifiable mechanism to move litigation along, but the designating party retains the fundamental responsibility to "show cause" for protection.  "Once the designation has been challenged, it is the burden of the designating party to justify the need for enforcement of the protective order in accordance with its terms."[14]

Defendants cite an extremely brief opinion in which a party seeking to remove all protection for documents was bound by "the Protective Order which the parties negotiated and relied on throughout this case."  "The Protective Order places the burden of proof on the party challenging the confidential designation.  Since the parties have stipulated to the Protective Order, they have waived their right to wholesale un-designation of documents."[15]  All that case holds is that if parties negotiate an order, they will be bound by it.

Defendants' arguments that the burden shift is an acceptable disincentive to Adams' challenges[16] to the Protective Order cannot overcome the strong public interest that puts the burden on the proponent of protection.  Therefore, the Defendants' request to shift the usual burden is denied.

---

[13] Fed. R. Civ. P. 26(c).

[14] *Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, 1 (N.D. Ill. January 31, 2005)(unpublished decision). See also *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).

[15] *In re Adobe Systems, Inc. Securities Litigation,* 141 F.R.D. 155, 165 (N.D .Cal. 1992).

[16] Defendants' Memorandum 87 at 6

II.      **Should Dr. Adams' Access Be Limited?**

The second question presented in these motions is whether Dr. Adams should have access to certain highly sensitive technical information.  "Dr. Phillip M. Adams is the named inventor on the asserted patents . . . ."[17]  "Plaintiff Adams is a small company run by Dr. Adams, the general partner of his family partnership which is the sole owner of Plaintiff Adams and [Dr. Adams is] an inventor of the patents-in-suit."[18]  Further, Dr. Adams is the expert witness used by Plaintiff Adams in other litigation and will be designated in this litigation.  Plaintiff Adams says it "cannot easily identify an expert who does not have any affiliation or connection with the Defendants."[19]  "Defendants seek entry of a protective order that prevents Dr. Adams from having access to Defendants' highly confidential technical information"[20] because he is an inventor, applicant on seven pending patents, a competitor of Defendants, and a licensor of patents.

**General Balancing**

In determining how to protect confidential information in the context of a suit, "the court should balance the [discovering party's] interests in full disclosure of relevant information and reasonable protection [of the disclosing party] from economic injury.  In making this determination, the court is required to exercise its sound discretion to implement the philosophy of full disclosure of relevant information during discovery, while at the same time affording the parties reasonable protection against harmful side effects."[21]  This balancing is helpful in determining whether protection should be implemented.

---

[17] Defendants' Memorandum 87, at 1.

[18] Adams' Memorandum 97, at 3-4.

[19] *Id.*

[20] Defendants' Memorandum 87 at 1.

[21] *Davis v. AT&T Corp,* No. 98-CV-0189S(H), 1998 WL 912012, at *2 (W.D.N.Y. December 23 ,1998) *(citing Safe Flight Instrument Corporation v. Sundstrand Data Control Inc.,* 682 F. Supp. 20, 23 (D. Del. 1988) and quoting *E.I. du Pont de Nemours & Company v. Phillips Petroleum Company,* 219 U.S.P.Q. (BNA) 37, 38 (D. Del.1982)) *See also Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992)

Both policies – protection from misuse and full disclosure – can be achieved by restricting parties and closely related counsel from access to any of the sensitive information. Thus, business financial data can be withheld from a competitor in a suit where such data is needed to calculate damages, by giving access only to unrelated experts and outside counsel.  In employment litigation, information from co-employee and supervisor personnel files can be made available to plaintiff's counsel, but withheld from the plaintiff employee who might misuse irrelevant information.  Information required in litigation, but also needing protection, is withheld from inordinate disclosure and distribution.

**Information at Risk**

The scope of information in play in this suit is demonstrated by discovery Adams has already presented to Defendants.  This discovery has not been answered because of the dispute over protective order terms.[22]

> "All documents pertaining to the manner of operation of the computer systems made or sold by or on behalf of Defendants from 1999 to the present" (Doc. Req. 12);

> "product design notebooks, circuit schematic diagrams and specifications" (Doc. Req. 35);

> "All technical information referring or relating in any way to the motherboards and super I/O devices contained in Defendant's computer systems" (Doc. Req. 47).

> "All communications with or between actual or potential customers pertaining to computer systems with data corruption problems or issues" (Doc. Req. 8); and

> "All documents relating or referring in any way to any anomalies, defects, or problems identified by Defendant, suppliers, customers, and/or users referring or relating in any way to the motherboards and super I/O devices contained in Defendant's computer systems" (Doc. Req. 50).[23]

---

[22] Adams' Memorandum 85 at 1.

[23] Defendants' Memorandum in Opposition to Adams' Motion for Entry of its Version of a Protective Order (Defendants' Memorandum 98) at 5-6, docket no. 98, filed May 1, 2006.  *See also* Defendants' Memorandum 87 at 8.

This wide scope of discovery indicates that there is much information which needs to be protected from general disclosure.  Neither party in litigation wants to lose protection for its internal processes and documentation.  Therefore, a general protective order is warranted.  Both parties propose orders which allow designation of certain information as CONFIDENTIAL, accessible only to certain persons, including outside counsel, two designated corporate legal or IP employees, independent experts and consultants and court personnel.  Further, each proposed order provides for designation of highly sensitive and/or competitive business, financial and technical information as CONFIDENTIAL – ATTORNEYS ONLY with access more tightly restricted to outside counsel and independent technical experts and consultants, after an opportunity for objection.

Plaintiff alleges Dr. Adams needs access to some of the highly sensitive confidential technical information.  Adams' proposed order is structures to give Dr. Adams access to "technical information, including, but not limited to, correspondence, communications, and emails, concerning any modification or additions to, or testing of, components, including, without limitation, motherboards or chips, whether hardware or software oriented, that (i) addresses in any way a defect as identified in the Amended Complaint, or (ii) is alleged to infringe one or more of the claims of the patents-in-suit, including the 5,379,414, 5,983,002, and the 6,401,222 patents."[24]   While Plaintiff wants Dr. Adams to have access to only a subset of the CONFIDENTIAL-ATTORNEYS ONLY information, Defendants object.

**Factors to Consider**

At least two courts have identified six factors to be considered in determining who can have access to confidential information.  The factors originated in a case considering whether *counsel* should have access to information, but the same factors were summarized and used in a case considering access by a *party*:

---

[24] [Adams Proposed] Protective Order, Exhibit A to Adams' Memorandum 85.

Relevant considerations for striking this balance include (1) whether the person receiving the confidential information is involved in competitive decision making or scientific research relating to the subject matter of the patent, (2) the risk of inadvertent disclosure of proprietary information, (3) the hardship imposed by the restriction, (4) the timing of the remedy, and (5) the scope of the remedy.[25]

**Competitive Decision Making**

Much of the argument presented on Dr. Adams' access centers on whether he is a "competitive decision-maker." This concept arises from cases determining whether *counsel* should or should not have access to confidential information of an adverse party. "A key factor in assessing the risk of inadvertent disclosure of trade secrets is whether counsel is engaged in competitive decision-making."[26] Defendants point to cases holding that prosecuting patent applications amounts to competitive decision making. In those cases, the usual remedy is to bar counsel from patent activity for the pendency of the litigation and for a period of time thereafter.[27]

The court is not convinced that the "competitive decision-making" case law, arising with regard to *counsel* -- who are essentially fungible -- should apply to principals such as Dr. Adams. The single factor of competitive decision-making to deny access to data can trigger an absolute bar when other counsel are available – it need not be balanced with other factors. But a party appears as an integral part of the litigation. While counsel's role can be replaced relatively easily, a party's role in the suit and in business decision making is not subject to ready substitution.

The concept of competition is useful, however, in understanding the potential risks of misuse of confidential information. Defendants characterize Adams' potential reach broadly as "development, licensing and commercialization of computer products and computer-related

---

[25] *Davis v. AT&T,* 1998 WL 912012, at *2 (citing *Motorola, Inc. v. Interdigital Technology Corporation*, No. Civ.A. 93-488-LON,1994 WL 16189689, at *83-86 (D. Del. Dec. 19, 1994)).

[26] *Interactive Coupon Mktg Group, Inc. v. H.O.T.! Coupons, LLC.,* No. 98 C 7408.1999 WL 618969, at *2 (N.D. Ill. August 9, 1999)(citing *Brown Bag Software v. Symantec*, 960 F.2d 1465, 1470 (9th Cir.1992)).

technologies. . . .  [A]lthough neither Dr. Adams nor his company manufacture or sell computers, he is undoubtedly a competitor in the area of development and exploitation of computer-related technologies . . . ."[28]  Plaintiff Adams states that the opposite is true.  "Dr. Adams does not have any connection with any manufacturer of computers. Neither he nor his company does any work in the area of computers. Plaintiffs [sic] simply do not compete with Defendants in this area."[29]  Defendants admit that Dr. Adams is not a competing computer manufacturer,[30] but say the issue is whether he can use the information to a competing advantage.  "He is undoubtedly a competitor in the area of development and exploitation of computer-related technologies . . . ."[31]  While Defendants argue in broad terms, Plaintiff Adams is only seeking that Dr. Adams have access to information about floppy disk controller and data storage errors.

**Inadvertent Use**

It is Dr. Adams' position as inventor, owner, and expert that gives the parties such concern.  Plaintiff argues the multiple roles make Dr. Adams indispensable.  Defendants, however, claim each of these roles presents a possibility for *unintentional or unavoidable* misuse of information subject to discovery in this case.  "Defendants are in no way questioning Dr. Adams' integrity nor are they suggesting that he would intentionally misuse their confidential information.  Defendants are concerned that Dr. Adams may *inadvertently* misuse their confidential technical information."[32]  Even an inventor of "great moral fiber" may lack the "human ability during future years of research to separate the [patent] applications he has

---

[27] Defendants' Memorandum 87, at 13

[28] *Id.* at 12

[29] Adams' Memorandum 97, at 6.

[30] Defendants' Memorandum 87, at 12.

[31] *Id.*

extrapolated from [litigation] documents from those he develops from his own ideas."[33]  And a business owner would similarly find it impossible to intelligently detach his decision making from confidential information gathered in litigation.

### Potential inadvertent misuse in patent processes and consulting

Defendants' concern is heightened because Dr. Adams is not only the inventor of patents at issue in this litigation, but he is currently involved in patent applications.  "Dr. Adams is the sole named inventor on at least seven patent applications pending before the USPTO" and "is also pursuing a "business method" patent entitled "Computerized product improvement apparatus and method."[34]

Adams claims Dr. Adams' role in the pending applications is irrelevant.  "[U]nder the Patent Act he is barred from broadening any of his pending patent applications to include information that is not already included in the specification."[35]

Adams is also currently involved in the computer industry beyond pursuing his own new patents and enforcing his existing patents.  According to Defendants,

> Dr. Adams claims to have licensed computer related technologies to at least two of Defendants' direct competitors, Hewlett Packard and Compaq.  Dr. Adams may also be developing additional computer products and technologies—he has been involved in the development of computer products since the 1980s and has pending patent applications relating to computer products.[36]

Defendants also claim there may be unknown risks because "Dr. Adams may have still more patent applications pending in the United States or in other countries that have not been

---

[32] Defendants' Memorandum 98, at 1-2 (emphasis in original).

[33] *Safe Flight*, 682 F. Supp. at 22.

[34] Defendants' Memorandum 87, at 7.

[35] Adams' Memorandum 97, at 7.

[36] Defendants' Memorandum 87, at 8 (citing Amended Complaint at 2-4 and 7 (Docket No. 6)).  *See also* Defendants' Memorandum 98, at 4-5.

published but which may be related to subject matter of this action."[37]  Thus, there are several

potential circumstances in which Dr. Adams might be benefited by information received from

Defendants in this suit.

Adams claims that since he is not a computer maker, he is not strictly "competitive" with

Defendants[38] and he further "agree[s] not to file any new patent applications on subject matter

related to the subject matter in this case for the next two (2) years"[39] as a way of minimizing the

risk of inadvertent misuse.  The proposal arises from analogy to cases considering access by

counsel, which will be discussed later.[40]

### Considerations Related to Party Access – Rights and Hardship

Most cases considering restriction of access to information consider access by counsel.

In those cases, the impact on the client is relational and not direct.  Those courts only consider

whether counsel can have access and, if so, under what circumstances.  The opinions sometimes

analyze whether the party who retained counsel had any role in creating the hardship by

involving litigation counsel in patent prosecutions.  In those cases, courts minimize

considerations based on hardship because they are self-created.

In this case, Plaintiff arrived with Dr. Adams as sole owner, inventor and its person most

knowledgeable in the subject matter.  There is no reason to discount hardship because of

Plaintiff's voluntary actions.

Another factor in hardship is the fact of Dr. Adams' multiple roles.  As Plaintiff says,

"Dr. Adams is uniquely qualified to assist his counsel with trial preparation and interpretation of

---

[37] Defendants' Memorandum 98 at 4.
[38] Adams' Memorandum 97, at 6.
[39] *Id.* at 8.
[40] *Davis, supra,* note 21, imposed a similar requirement on a party.

technical information precisely because he is the inventor."[41]  These multiple roles mean that denial of access would have multiple impacts.

A party to litigation has a more fundamental interest in access to information than retained counsel or even an employee.  One case suggested that the party's right to access might implicate due process considerations.[42]  The impingement on these rights is part of the consideration of hardship by restriction of access to information.

Because of the unique considerations for access by a party, this section of the order discusses opinions dealing with party access, not access by counsel.

In *Davis v. AT&T*[43] the court considered the hardship issue at length, deciding to grant the individual plaintiff access.   The precise issue in that case was speech recognition software, on which the "defendants have spent in excess of $50 million for research and development."[44] The court decided that defendants would be protected from economic injury if the plaintiff were permitted access only on condition that he "shall not be permitted to file, prepare or prosecute any patent application in the field of automatic speech recognition during the pendency of this lawsuit and for two years after its conclusion."[45]  Making access conditional allowed the plaintiff to make the choice between (a) access subject to conditions and (b) freedom from conditions, by no access.  "If the hardship upon the plaintiff is too great, plaintiff has the option of foregoing access to the confidential proprietary information and restricting access to plaintiff's counsel and plaintiff's experts."[46]  The court imposed the condition in part because it did not appear to

---

[41] Adams' Memorandum 97 at 6.

[42] *Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 509 (Fed. Cl.1996).

[43] No. 98-CV-0189S(H), 1998 WL 912012 (W.D.N.Y. Dec. 23, 1998).

[44] *Id.* at *3.

[45] *Id.* at *1.

[46] *Id.* at *3.

impinge on the plaintiff's activities.  "[P]laintiff has not applied for patents in the field of speech

recognition, or in any other field, since 1987, and plaintiff has made no showing that any plans or

projects would be affected by the proposed restriction on patent applications."[47]

Other cases have not permitted party-inventors access to certain technical information.  In

*Rice v. The United States*[48] the patentee plaintiff was denied access because "he continues to

publish, consult and seek patents in the area of gas turbine technology."[49]  The plaintiff had not

attempted to locate an expert and the defendants pointed out that

> Mr. Rice could . . . inadvertently reveal such information in technical articles,
> through consulting or in the process of amending one of his currently pending
> patent applications.   In his application for future patents . . . Mr. Rice cannot be
> expected to separate his own original ideas from those gleaned from his review of
> the protected information at issue in this case.[50]

The court did not consider a restrictive prohibition on the plaintiff's activities, but did suggest

that "Plaintiff's counsel may move the court to designate plaintiff an expert with respect to

specific items of protected information where no outside expert can be retained by plaintiff's

counsel."[51]

Other cases barring principal access include *Safe Flight Instrument Corp. v. Sundstrand

Data Control, Inc.*[52]  That court barred plaintiff's president, with more than sixty patents in the

area in suit,[53] from access to confidential information where another corporate officer might be

appointed to make business decisions, with access to the information, and the plaintiff had not

---

[47] *Id.*

[48] 39 Fed. Cl. 747, 751 (Fed. Cl. 1997).

[49] *Id.* at 751.

[50] *Id.*

[51] *Id.* at 748.

[52] 682 F.Supp. 20 (D. Del.1988).

[53] *Id.* at 21.

yet "investigate[d] the availability of qualified outside experts."[54]   Again, no restrictions on the

president's activities were considered.  Similarly, *IP Innovation L.L.C. v. Thomson, Inc.,*[55] barred

the inventor of the patents-in-suit and many other patents, who was designated as plaintiffs'

expert, from access to confidential information when no restrictions were considered.

Two other cases are dissimilar in their settings, and are cited here only in the interest of

thoroughness.  *Standard Space Platforms Corp. v. United States*[56] permitted access for a

plaintiff's founder and president, largely because he was no longer employed in the industry in

dispute.  *Phillips Petroleum Co. v. Rexene Prods. Co.,*[57] denied a requested protective order

modification to allow a CEO access to confidential data, largely because the order restricting his

access was negotiated and had been in force for some time.

In this case, where Dr. Adams is the inventor, expert witness and sole owner of Plaintiff,

the hardship would be extreme, and might even make litigation impossible if the decision maker,

analyst and inventor could not communicate on the most fundamental level with counsel.

Discovery, motion and trial practice – and the possibility of settlement – would be convoluted if

Dr. Adams were excluded from substantive information.

**Timing**

The "timing" factor refers to the stage of the litigation in which the issue is raised.  In

cases considering access by counsel, if the objection is made late in the litigation, so that

replacement of counsel would be prejudicial, access is likely to continue.

---

[54] *Id*. at 22.

[55] No. 1:03-CV-0216-JDT-TAB, 2004 WL 771233, (S.D. Ind. April 08, 2004).

[56] 35 Fed. Cl. 505, 509 (Fed. Cl.1996).

[57] 158 F.R.D. 43 (D. Del.1994)

In this case, a similar factor to "timing" might be the strategic effect of excluding a party from access to information, and the impact of a rule of party exclusion on litigation in general. Sole proprietor inventors like Dr. Adams would be significantly disadvantaged in litigation if they were automatically excluded from access.

**Scope of the Remedy**

The "scope of the remedy" refers to the nature and length of limitations of any remedial measures. Defendants propose total exclusion of Dr. Adams as a remedial measure, but Plaintiff proposes that Dr. Adams have access to the limited range of highly sensitive technical information if he agrees to all the terms of the protective order (including the commitment not to use the information for any purpose outside the litigation) and further "agree[s] not to file any new patent applications on subject matter related to the subject matter in this case for the next two (2) years"[58] This temporal period does not address the question of the length of the litigation (addressed in most protective orders with similar provisions) and does not address the pending applications. If there is to be a remedy other than Dr. Adams' exclusion, it should at least extend through the litigation and should also deal with the pending applications.

**Should We Prefer a Party Expert or an Independent Expert?**

It would be wrong for this decision to be made in a vacuum, as if an idealized, trouble-free alternative is readily available. Dr. Adams is intended to be the expert for Plaintiff Adams.[59] Plaintiff Adams claims it "cannot easily identify an expert who does not have any affiliation or connection with the Defendants."[60]  Presumably, this is because the field of experts

---

[58] Adams' Memorandum 97, at 8.
[59] *Id.* at 3.
[60] *Id.* at 4.

is so small.  Another case noted that expertise can be automatically problematic.  "[A]ny independent expert with technical proficiency [sufficient to testify] would likely be active in the business, thereby raising those same concerns."[61]  It is almost a catch-22:  to be qualified, the person must be involved, but that involvement creates concerns about disclosure.

Further, calling in another expert would create another potential diverter of information. The information would flow to a person less controlled by the court.  It is easier for the court to supervise a party than an independent expert because the "parties' incentive to supervise, and their ability to control compliance with, the protective order by its inside experts and consultants would be greater than that which might be exercised over outside experts and consultants."[62]

Finally, the court and the litigation process have an interest in having the most qualified expert.  Dr. Adams should not be dismissed lightly as an expert.  "In patent cases . . . the court can think of no one more qualified than the inventors to express opinion as to what constitutes theft of their inventiveness."[63]

### Dr. Adams' Prior Access

Another pertinent factor is that Dr. Adams has had access to similar (if not partially identical) information in a prior suit.[64]  The issue of Dr. Adams' access was not as developed in that other case and did not involve these Defendants, but Dr. Adams had access to much information about Floppy Disk Controllers (and related components) in related litigation, including information related to suppliers of components apparently at issue in this litigation.

---

[61] *Rice*, 39 Fed. Cl. at 751.

[62] *DuPont*, 219 U.S.P.Q. at 39.

[63] *Baxter Int' l. v. Cobe Lab, Inc.*, 794 F. Supp. 252, 253 (N.D. Ill. 1991) (quoting *Meese v. Eaton Mfg. Co.*, 35 F.R.D. 162, 166 (N.D. Ohio 1964)).

[64] Adams' Memorandum 85, at 2.  Adams' Memorandum 97, at 3-4.

In the Gateway litigation, Adams v. Gateway, Case No. 2:02-cv-00106TS, Dr. Adams . . . had access to the technical information of Winbond and ITE, two of Gateway' s suppliers [who] provided the products that are central to the inventions of the patents-in-suit, i.e, floppy disc controller chips.
The Defendants in this case are merely system houses that source FDC chips and other components and assemble them into the finished computers that the consumers purchase.[65]

### Summary and Conclusion – Dr. Adams Should Have Conditional Access

Considering all the foregoing discussion, Dr. Adams should be able to have access, subject to the Protective Order, to the narrow scope of technical information proposed by Plaintiff, on condition of certain safeguards designed to meet the specific concerns in this case. Dr. Adams should only have access subject to written agreement that Plaintiff and Dr. Adams shall not file a patent application related to computer error detection or correction for a period of one year from the date of termination of this litigation; that Plaintiff and Dr. Adams shall provide counsel for Defendants with a copy of all future correspondence with the patent office regarding current pending applications; and that Plaintiff and Dr. Adams shall provide Defendants with a list of all pending patent applications in their behalf or listing either of them as inventor or owner.

The language effecting this order is proposed in a modification of Defendants' proposed protective order, served herewith in draft form.  Within ten days, any party may state an objection *to the form* by which the draft protective order implements this decision.  Objections shall be to form and not to the substance of this decision.  Objections, if any, to the substance of this decision shall be made to the district judge.

---

[65] Adams' Memorandum 97, at 4.

**ORDER**

IT IS HEREBY ORDERED that the motions for protective order[66] are GRANTED IN

PART as herein provided.  The motion to consolidate[67] these motions is MOOT.


Dated this 12th day of June, 2006.


_____
David Nuffer
United States Magistrate Judge

---

[66] Adams' Motion for Entry of a Protective Order, docket no. 84, filed April 12, 2006 and Defendants' Motion for Entry of their Proposed Protective Order, docket no. 86, filed April 12, 2006
[67] Docket no. 99, filed May 1, 2006.