Raymond P. Niro
Vasilios D. Dossas
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

Gregory D. Phillips (4645)
Kevin A. Howard (4343)
HOWARD, PHILLIPS & ANDERSEN
560 East 200 South, Suite 300
Salt Lake City, Utah 84102
(801) 366-7471

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>DELL INC., FUJITSU LIMITED, FUJITSU COMPUTER SYSTEMS CORP., INTERNATIONAL BUSINESS MACHINES CORP., LENOVO (UNITED STATES), INC., MPC COMPUTERS, LLC, and SONY ELECTRONICS INC.,<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLETE ANSWERS TO INTERROGATORY NO. 14, AND FOR A FINDING THAT RULE 33(d) DOES NOT APPLY**<br><br>Civil No. 1:05-CV-64<br><br>The Honorable Ted Stewart<br>Magistrate Judge David Nuffer |

**I.      INTRODUCTION**

The Court is already familiar with the subject matter of this patent case. It involves Floppy Disk and similar controllers ("FDC's") -- the subject of plaintiff's prior lawsuit against Gateway. Plaintiff Philip M. Adams & Associates, L.L.C. ("Adams") moves to compel interrogatory answers in this case.

Adams files this motion against the Dell, Fujitsu, IBM and Lenovo defendants. MPC agreed to the relief requested during the meet-and-confer process, and Sony's meet-and-confer process has not yet concluded because Adams granted Sony additional time. Though Adams moves only against four of the six groups, Adams discusses all defendants for completeness in Part III.D, below.

Although Adams filed this lawsuit on March 12, 2005, and although Adams attempted to conduct discovery beginning in the Fall of 2005, defendants have been successful in delaying and stalling any meaningful discovery. Defendants continue their stonewalling by refusing to answer the most basic interrogatory requesting defendants to specify the FDC chips found in computers defendants have sold over the past five years. This information is readily available to defendants.

Defendants have the requested information at their fingertips. After the $2.1 billion Toshiba settlement involving defective FDC's was announced, defendants, just as Gateway did, undoubtedly investigated which FDC chips were present in defendants' product lines. It is inconceivable that defendants (who faced billions in potential liability) would not have investigated whether their products contained defective FDC chips, and taken steps to insure that their product line was not defective. Of course, in correcting defendants' defective product line,

1

defendants infringed Adams' patents in selling modified FDC chips that were modified using Adams' patented technology.

## II.     ADAMS SEEKS TO SEQUENCE DISCOVERY EFFICIENTLY

Plaintiff Adams commenced infringement discovery in what he hoped was a sensible sequence.  Step 1 was to discover the scope of the infringement.  Step 2 was to take technical discovery of the accused technology for each instance of infringement suggested during Step 1.  Step 3 was technical expert discovery.

Some defendants are interfering with and refusing to participate in Step 1.

To learn the scope of the infringement and discover this most basic information, Adams served the following Interrogatory 14:

### INTERROGATORY NO. 14

Please (a) identify all of the products that you import, make, use, sell or offer for sale and that include a Floppy Disk Control (FDC); (b) identify all of the products that you import, make, use, sell or offer for sale and that include a Super I/O (SIO) device; (c) identify all of the products that you import, make, use, sell or offer for sale and that include a Bridge Chip with an integrated Super I/O (SIO) device; (d) identify the FDCs used in the products identified in part (a) above; (e) identify the manufacturers of those FDCs; (f) identify the SIOs used in the products identified in part (b) above; (g) identify the manufacturers of those SIOs; (h) identify the Bridge Chips used in the products identified in part (c) above; and (i) identify the manufacturers of those Bridge Chips.  State the number of each product identified in part (a) above that you have imported, made, used, sold or offered for sale.  State the number of each product identified in part (b) above that you have imported, made, used, sold or offered for sale.  State the number of each product identified in part (c) above that you have imported, made, used, sold or offered for sale. (See text of Interrogatory reproduced in each of Exhibits C-F).

When all six groups of defendants provide complete answers, Adams will use the information in the following way.  First, Adams will serve narrow and targeted third-party subpoenas on the manufacturers of all named FDCs, SIOs and Bridge Chips.  Second, Adams will use such third-party documents and deposition testimony to formulate more complete

infringement contentions against the named parties.  For example, Adams may not yet be aware of all of the FDCs, SIOs and Bridge Chips that cause defendants to infringe.  This third-party discovery is necessary to close that line of inquiry.  Third, Adams will take party discovery to confirm each instance of infringement.  This is how Adams will formulate final infringement contentions.

Of the six groups of defendants, only MPC has agreed to provide complete and forthright answers (promised to Adams by July 12).  In the case of Sony, Adams gave the Sony group a two-week extension of time, and has not completed the meet-and-confer process.  The remaining four groups -- Dell, Fujitsu, IBM and Lenovo -- have (to varying degrees) fallen short of their discovery obligations.  Adams addresses each individually in Part III.D. below.

## III.   THE OBJECTIONS LACK MERIT

Defendants' objections fall into three basic categories, each lacking merit.  First, all defendants (identified below) objected to providing information beyond the limited list of accused products identified in the Amended Complaint (or otherwise interpose arbitrary limitations on the scope of discoverable accused products).  Second, certain defendants object that the industry-standard terminology of this interrogatory is vague or ambiguous.  Third, certain defendants invoke Rule 33(d) rather than provide narrative answers or tabular answers.  For the reasons that follow, Adams respectfully requests the Court overrule the objections, hold that Rule 33(d) does not apply to answers to Interrogatory No. 14 and order defendants to give complete answers.

The rest of this memorandum is organized as follows.  First, Adams identifies the legal bases for overruling the categories of objections.  Then, Adams addresses each defendant (or

group of defendants) individually to show that its specific objections fall into categories that lack merit.

### A.      Scope-of-Infringement Discovery Is Relevant

A defendant may not validly object to reasonably crafted scope-of-infringement discovery.

The cases on point all hold that Adams is entitled to take discovery of the scope of defendants' infringement.  That is the clear purpose of Interrogatory No. 14 in the context of the patents-in-suit. See  E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co., 24 F.R.D. 416, 426 (D. Del. 1959) ("It is obvious that the plaintiff is entitled to know which products the defendant or its licensees manufacture which may infringe."); Andco Environmental Processes, Inc. v. Niagara Environmental Associates, Inc., 215 USPQ (BNA) 224, 226 n.3 (W.D.N.Y. 1982) ("Plaintiff is not required to prove its case on the pleadings. Certainly, the fact that it has found three instances of potential infringement entitles it to determine *whether other such instances exist*.") (emphasis added); Rohm and Haas Co. v. Brotech Corp., 1990 U.S. Dist. LEXIS 20117 at *20 (D. Del. 1990) ("[A] defendant cannot simply claim noninfringement and limit discovery according to its view of the case."). See also, The Chamberlain Group, Inc. v. Interlogix, Inc., 2002 U.S. Dist. LEXIS 3046 at *4-5 (N.D. Ill. 2002) (permitting accused product scope discovery).

Adams already has a substantial basis to believe defendants' computers with WinBond and ITE Floppy Disk Controllers infringe.  The wording of the Amended Complaint expressly reserved the right to identify further infringing models:

> The infringement that has occurred is at least of claim 1 of the >414 patent, claims 1-6 and 8-15 of the >002 patent and claims 1-7, 9-16 and 18-20 of the >222 patent through commercialization, sale, offer for sale or use of *at least* the following model computers[.]

4

(Amended Complaint ¶ 18, emphasis added). Adams crafted Interrogatory No. 14 as narrowly as possible to allow discovery of other instances of infringement. The caselaw supports that, when Adams named specific models in the Amended Complaint, he did not thereby limit his case to infringement uncovered before suit. Such an argument turns the concept of "discovery" on its head. The Court should overrule this objection.

### B.     Industry Terminology Is Not Vague or Ambiguous

A defendant may not validly object that industry standard terms are vague or ambiguous.

Defendants object that the interrogatory is vague and/or ambiguous. Some have singled out the terms Super I/O (SIO) device and Bridge Chips in particular. However, the industry knows very well that SIO and Bridge Chip devices are (or may be) variants of Floppy Disk Controllers. For example, SIOs perform FDC functions plus additional functions.

The vagueness/ambiguity objection is self-serving and wrong. The terms are so established that Wikipedia (the online encyclopedia) has an entry for Super I/O: "A super I/O chip combines interfaces for a variety of low bandwidth devices" (Exhibit A). The Wikipedia entry also has an external link to a list of super I/O chips.

Likewise, the industry knows what Bridge Chips are. See, for example, the September 7, 2005 article published by Hardware Secrets LLC, "Everything You Need to Know About Chipsets" (Exhibit B). This article describes what bridge chips do in a computer system and mentions that they are also called ICH (I/O Controller Hub) chips.

The vagueness/ambiguity objection therefore lacks credibility in the context of notorious industry knowledge. The Court should overrule this objection.

### C.     Rule 33(d) Does Not Apply

A defendant may not invoke Rule 33(d) without meeting specific requirements.

5

Certain defendants assert reliance on Rule 33(d).  Rule 33(d) permits a party to forego a narrative interrogatory answer under certain limited and well-defined circumstances.  If the answer may be derived or ascertained from business records and if the burden of deriving or ascertaining the answer is substantially the same for both parties, the answering party may specify the records and afford a reasonable inspection opportunity. FRCP 33(d).

Two separate reasons foreclose the use of Rule 33(d) here.  First, only one defendant (Lenovo) has so far provided production number ranges or allowed an inspection opportunity.  See Walt Disney Co. v. DeFabiis, 168 F.R.D. 281, 284 (C.D.Cal. 1996); T.N. Taube Corp. v. Marine Midland Mortgage Corp., 136 F.R.D. 449, 454-55 (W.D.N.C. 1991).  This alone merits overruling the use of Rule 33(d).

More importantly, because of the nature of Interrogatory No. 14, defendants cannot credibly argue that the burden of deriving or ascertaining the knowledge is "substantially the same" for both sides.  Defendants are obviously the most familiar with their own business records.  Defendants are far more likely than Adams to know how to read their internal documents to ascertain the parts on computer parts lists which might constitute the applicable FDC, SIO or Bridge Chips.

Adams' experience in the Gateway litigation also supports that the burden is not "substantially the same."  Adams discovered that, when system houses (such as the defendants) learned of the Toshiba class-action settlement, they conducted investigations into what FDC chips they used in their computers, who supplied those chips and whether the chips had any defects.  Thus, the defendants have already collected the information requested by Interrogatory No. 14.

In addition, Gateway provided Excel spreadsheets with Interrogatory No. 14 – type information during the Gateway litigation. That Gateway had already compiled the information in the ordinary course of its business strongly suggests that defendants have already compiled the information as well, given the parallel motivation to keep meticulous records of such matters in the wake of the Toshiba settlement.

Under these circumstances, the burden is not "substantially the same," and Rule 33(d) is unavailable to defendants. See In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 351, 366 (D. Ill. 2005) ("While another review of the documents that have been produced would be anything but effortless, the effort involved is not as great for the producing parties as it is for the plaintiffs, since the former are more familiar with the documents than the plaintiffs."); see also Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc., 224 F.R.D. 644, 650 (D. Cal. 2004) ("[T]he Rule 33(d) procedures are not available to Baxter because the burden is higher for it than it would be for Baxter because Baxter has access to the inventors and can interview them at will."); Lonberg v. City of Riverside, 2000 U.S. Dist. LEXIS 22757, 9-10 (D. Cal. 2000) ("The Court finds that the information is not as readily ascertainable by plaintiff as it is by defendant, even with the detailed explanation eventually provided by Mr. Caldwell in hand [see Caldwell Decl., para. 8], because of, among other things, the ramp-by-ramp or file-by-file differences in documentation, and dispersal of defendant's records.").

Rule 33(d) is not available to defendants. Even if it were, they have failed to invoke it properly.

### D. Defendants' Objections Fit Within the Discredited Categories

#### 1. Dell

Dell's objections (Exhibit C) fit within the first discredited category: refusing to provide information beyond the list of accused products identified in the Amended Complaint.  In its response to Interrogatory No. 14, Dell claims that it is premature to request information beyond the computer system specifically accused of infringement. It further claims that providing information about all Dell computers containing a FDC, SIO device or Bridge Chip is overbroad, unduly burdensome and oppressive.  Dell's General Objections Nos. 4 and 9 also fit within the first discredited category by objecting to interrogatories that do not specify a relevant time period and manufacturer, respectively.  Dell's objections fit within the third discredited category by invoking Rule 33(d) in the response to Interrogatory No. 14.

### 2. Fujitsu

Fujitsu's response to Interrogatory No. 14 (Exhibit D) fits within the first discredited category of objections by claiming that Adams has not included an identification of the accused products.  Fujitsu's objections further fit within the first discredited category by objecting to interrogatories which seek information about products before May 31, 1999, in General Objection No. 6.  Fujitsu's response to Interrogatory No. 14 fits within the second discredited category, vague or ambiguous industry-standard terminology, by specifically objecting to the terms "Floppy Disk Control," "Super I/O device" and "Bridge Chip with an integrated Super I/O device."  Finally, Fujitsu's General Objection No. 8, which objects to all interrogatories seeking information already in the possession of Adams, fits within the third discredited category. See T.N. Taube Corp., 136 F.R.D. at 454-55 (overruling objection that discovering party already has the information).

### 3. IBM

IBM's response to Interrogatory No. 14 (Exhibit E) fits within the first discredited category by objecting to Adam's request for information concerning "all" IBM products that include any "FDC," "SIO" or "integrated SIO." IBM's General Objections Nos. 6 and 17 also fit within the first discredited category by objecting, as overly broad, to all interrogatories that are not confined to a relevant time period and to all interrogatories in which Adams has not identified each accused product, respectively. By invoking Rule 33(d) in its response to Interrogatory No. 14 and objecting to all interrogatories that seek a narrative response in General Objection No. 15, IBM's objections fit within the third discredited category.

### 4. **Lenovo**

Lenovo complied with many, but not all, of Adams' requests. It supplemented its response to Interrogatory No. 14 (Exhibit F) during the meet-and-confer process. As supplemented, Lenovo's response still has the following flaws. First, Lenovo's objections still fit within the third discredited category by invoking Rule 33(d) (although to Lenovo's credit it at least produced some documents which it claims contains the information). If the Court rules Rule 33(d) inapplicable here, this response is insufficient. Indeed, the documents Lenovo cites do not contain all the information requested, e.g., manufacturer identities. Second, even Lenovo's document production omits responding to important parts of the interrogatory: the number of each product made, used, sold, etc. This information remains completely absent.

### 5. **MPC**

MPC has kindly promised a full response by July 12. Adams will review such response carefully, and hopes there will be no need to supplement this motion.

### 6. **Sony**

9

Sony just served its response, which appears to have the same flaws as the rest of defendants' -- namely, inappropriately limiting the scope of discoverable information just to its definition of "accused products," and claiming ignorance over what is a Bridge Chip incorporating a Super I/O device.  Sony has unilaterally limited its response to parts having a floppy drive and including FDC's manufactured by ITE, National Semiconductor and Winbond.  If the Adams-Sony meet-and-confer process does not lead to Sony providing a full response, Adams may need to supplement this motion.

**IV.    CONCLUSION**

For the foregoing reasons, Adams respectfully requests the Court grant its motion and order proper answers to Interrogatory No. 14 so that full infringement discovery may commence.

DATED:  July 6, 2006.

PHILLIP M. ADAMS & ASSOCIATES, L.L.C.,

/s/ Gregory D. Phillips
Gregory D. Phillips (4645)
Kevin A. Howard (4343)
HOWARD, PHILLIPS & ANDERSEN
560 East 200 South, Suite 300
Salt Lake City, Utah 84102
(801) 366-7471

Vasilios D. Dossas
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 6, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Matthew W. Neumeir | Terry E. Welch |
| Reginald J. Hill | Darren K. Nelson |
| Stephen M. Geissler | Parr Waddoups Brown Gee & Loveless |
| Jenner & Block | 185 South State Street, Suite 1300 |
| One IBM Plaza | Salt Lake City, Utah  84111-1537 |
| 330 North Wabash Avenue | (801) 532-7840 |
| Chicago, Illinois  60611 | (801) 532-7750 |
| (312) 222-9350 | |
| Fax:  (312) 527-0484 | |

**Attorneys for Dell, Inc.**

| | |
|---|---|
| Michael A. Jacobs | Sterling A. Brennan |
| Parisa Jorjani | David R. Wright |
| Morrison & Foerster LLP | Janna L. Jensen |
| 425 Market Street | Workman Nydegger a |
| San Francisco, California  94105-2482 | Professional Corporation |
| | 1000 Eagle Gate Tower |
| (415) 268-7000 | 60 East South Temple |
| Fax:  (415) 268-7522 | Salt Lake City, Utah  84111 |
| | (801) 533-9800 |
| | Fax:  (801) 328-1707 |

**Attorney for Fujitsu Computer Systems Corp. and Fujitsu Limited**

| | |
|---|---|
| David L. Witcoff | Todd M. Shaughnessy |
| John A. Marlott | Snell & Wilmer |
| Timothy J. Heverin | Gateway Tower West |
| Jones Day | 15 West South Temple, Suite 1200 |
| 77 W. Wacker Drive, Suite 3500 | Salt Lake City, Utah  84101 |
| Chicago, Illinois  60601-1692 | (801) 257-1900 |
| (312) 782-3939 | Fax:  (801) 257-1800 |
| Fax:  (312) 782-8585 | |

**Attorneys for International Business Machines Corporation (IBM)**

11

| | |
|---|---|
| Steven J. Rizzi | Catherine Agnoli |
| Weil, Gotshal & Manges LLP | Parsons Behle & Latimer |
| 767 Fifth Avenue | One Utah Center |
| New York, New York  10153 | 201 South Main Street, Suite 1800 |
| (212) 310-8000 | P.O. Box 45898 |
| Fax:  (212) 310-8007 | Salt Lake City, Utah  84145-0898 |
| | (801) 532-1234 |
| | Fax:  (801) 536-6111 |

**Attorneys for Lenovo (United States) Inc.**

| | |
|---|---|
| Michael S. Dowler | Jeremy O. Evans |
| Brian L. Jackson | Jackson, Walter & Evans |
| Howrey LLP | 10421 Jordan Gateway, Suite 630 |
| 750 Bering Drive | South Jordan, Utah  84095 |
| Houston, Texas  77057-2198 | (801) 576-2660 |
| (713) 787-1400 | Fax:  (801) 576-2661 |
| Fax:  (713) 787-1440 | |

**Attorneys for MPC Computers, LLC**

| | |
|---|---|
| Kevin B. Johnson | Rick B. Hoggard |
| Todd M. Briggs | Arthur B. Berger |
| Christopher A. Honea | Ray Quinney & Nebeker P.C. |
| Quinn Emanuel Urquhart Oliver | 36 South State Street, Suite 1400 |
|   & Hedges | P.O. Box 45385 |
| 555 Twin Dolphin Drive, Suite 560 | Salt Lake City, Utah 84145-0385 |
| Redwood Shores, CA  94065 | |
| (650) 801-5000 | |
| Fax:  (650) 801-5100 | |

**Attorneys for Sony Electronics Inc.**

According to the Court's mailing list in this matter, the following parties are not E-filers and are being sent a copy of the foregoing by first class mail:

    Matthew D. Powers
    Jared Bobrow

Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, California  94065
(650) 802-3000
Fax:  (650) 802-3100

Benjamin J. Bradford
JENNER & BLOCK
1 IBM PLAZA STE 4600
CHICAGO, IL 60611

                                                    /s/ Susette van der Beek