# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>DELL, INC., FUJITSU LIMITED, FUJITSU COMPUTER SYSTEMS CORP., INTERNATIONAL BUSINESS MACHINES CORP., LENOVO GROUP LTD., MPC COMPUTERS, LLC, AND SONY ELECTRONICS INC.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO COMPEL**<br><br><br>Case No. 1:05-CV-64 TS<br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

On November 22, 2006, Plaintiff filed its Second Motion to Compel.[1]  Plaintiff asks the court to compel Defendants to produce the documents Plaintiff has requested.[2]  Plaintiff claims it has almost been "a full year after serving its requests" and that Plaintiff "cannot prosecute this action without those documents."[3]

The initial complaint was filed May 12, 2005,[4] and an amended complaint was filed a couple of weeks later.[5]  Plaintiff served its first set of document requests on December 8, 2005,[6] but the Defendants objected to the request as premature because parties had not yet conducted an

---

[1]    Second Motion to Compel, docket no. 184, filed November 22, 2006.

[2]    *Id.* at 1.

[3]    *Id.*

[4]    Complaint, docket no. 1, filed May 12, 2005.

[5]    Amended Complaint, docket no. 6, filed May 31, 2005.

[6]    See Adams' Memorandum Supporting Its Second Motion to Compel, Ex. A, docket no. 190, filed November 28, 2006 (Supporting Memorandum).

attorneys' conference under Fed. R. Civ. P. 26(f).[7]  On January 18, 2006, the parties conferred

by telephone pursuant to Rule 26(f), but were unable to agree on a discovery schedule.[8]  Both

sides submitted their proposals for discovery cut-off,[9] but it was not until June 5, 2006 that the

court entered a scheduling order setting January 1, 2007 as the cut-off date for liability fact

discovery, and May 25, 2007 as the cut-off date for damages fact discovery.[10] Those dates have

been extended to August 2, 2007.[11]

　　　　After Defendants objected to the first set of document requests, Plaintiff granted

Defendants until March 15, 2006 to respond.[12]  Plaintiff complains that on March 15, 2006 the

Defendants served written responses, but did not produce or make available any documents.[13]

　　　　On April 12, 2006 Plaintiff and Defendant Sony each filed a motion for a protective order

to regulate the handling of sensitive intellectual property.[14]  On June 29, 2006, the magistrate

---

[7]　　　*See* Supporting Memorandum at 2; Letter from Jackson to Dossas, dated Jan. 6, 2006, Ex. B to Declaration of Parisa Jorjani in Support of Opposition to Plaintiff's Second Motion to Compel (Jorjani Decl.); Letter from Jorjani to Dossas, dated Jan. 6, 2006, Ex. C to Jorjani Decl.; Letter from Hill to Dossas, dated Jan. 6, 2006, Ex. D to Jorjani Decl.; Letter from Johnson to Dossas, dated Jan. 9, 2006, Ex. E to Jorjani Decl.

[8]　　　Plaintiff's Status Report, docket no. 73, filed Feb. 3, 2006, at 1; Defendants' Report of the Attorneys' Planning Meeting Pursuant to Fed. R. Civ. P. 26(f), docket no. 74, filed Feb. 7, 2006, at 2, 5.

[9]　　　Plaintiff suggested the fact discovery cut-off date should be Sept. 1, 2006. Plaintiff's Status Report, docket no. 73, filed Feb. 3, 2006, at 4. Defendants proposed June 6, 2007 as the cut-off date.  Defendants' Report of the Attorneys' Planning Meeting Pursuant to Fed. R. Civ. P. 26(f), docket no. 74, filed Feb. 7, 2006 at 6.

[10]　　　Scheduling Order, docket no. 112, filed June 5, 2006, at 3.  On November 30, 2006 the fact discovery cut-off date was extended to August 2, 2007.  Order, docket no. 195.

[11]　　　Order Granting Agreed Motion to Modify Scheduling Order, docket no. 196, filed November 30. 2006.

[12]　　　Supporting Memorandum at 2.

[13]　　　*Id.*

[14]　　　Plaintiff's Motion for Protective Order, docket no. 84, filed April 12, 2006; Defendant's Motion for Entry of Their Proposed Protective Order, docket no. 86, filed April 12, 2006.

judge entered a protective order.[15]  Plaintiff filed its first motion to compel on July 6, 2006.[16]

On October 12, 2006, Plaintiff served its initial infringement contentions.[17]

Plaintiff claims only a "small trickle of documents started to arrive," and that none of the

defendants had provided a "complete response" by November, 2006.[18]  However, Plaintiff

admits that the defendants had each produced over two thousand documents before November 2,

2006.[19]  In a letter dated November 2, 2006, Plaintiff indicated frustration with Defendants'

responses to Plaintiff's requests, listed examples of documents that were deemed to be missing,

and pointed out Defendants' failure to provide privilege logs.[20]  Plaintiff requested that the

Defendants respond to the November 2nd letter by November 6, 2006.[21]  Dell, Sony, and MPC

sent responses on November 6, and Fujitsu sent its response on November 8.[22]

In Plaintiff's Second Motion to Compel, filed November 22, 2006, Plaintiff lists five

categories of documents which should be included in the order to compel.[23]  They are (a) all

documents relating to the Toshiba settlement; (b) all documents relating to patents in suit; (c)

microcode for FDC chips; (d) Dell documents relating to all its products that use FDC chips; and

(e) a log of all privileged documents not produced.[24]

---

[15]     Protective Order, docket no 122, filed June 29, 2006.

[16]     Plaintiff's Motion to Compel Complete Answers to Interrogatory No. 14, docket no. 123, filed July 6, 2006.

[17]     Adams' Infringement Contentions for All of the Defendants, attached as Sealed Ex. A to Defendant Dell Inc.'s Response to Adams' Second Motion to Compel, docket no. 216, filed December 18, 2006 (Dell's Response).

[18]     Supporting Memorandum at 3.

[19]     *Id.* at 6.

[20]     Ex. B to Supporting Memorandum.

[21]     *Id.* at 2.

[22]     Ex C to Supporting Memorandum.

[23]     Second Motion to Compel at 2.

[24]     *Id.*

Plaintiff's grievances against each of the defendants are essentially the same, but each Defendant opposed Plaintiff's motion on slightly different grounds.  Each category sought will be discussed individually for each Defendant.

A.    **Dell**

On July 17, 2006, shortly after the protective order was entered on June 29, 2006, Dell informed Plaintiff it was beginning its document production.[25]  Dell produced approximately 8,509 documents before Plaintiff's November 2, 2006 letter,[26] and by November 7, 2006 had produced a total of 15,301 documents.[27]  (Plaintiff asserts that only 6,510 documents were produced by Dell after November 2, 2006.[28])  Dell responded to Plaintiff's November 2 letter on November 6, 2006 as requested.[29]  Dell produced its privilege log on December 18, 2006.[30]

Toshiba settlement documents

Plaintiff alleges that its first set of document requests sought "documents relating to . . . the 1999 Toshiba class action settlement for 2.1 billion dollars and defendants' reaction to it."[31]  Plaintiff cites Request Nos. 5-6, 15, 41-45, 50-97, but *Toshiba* is not mentioned in any of these requests.[32]  Plaintiff has not shown that it requested documents relating to the *Toshiba* settlement by name before Plaintiff's November 2, 2006 letter.  Dell says it complied with that relatively recent request.  Dell asserts it "has produced all non-privileged documents related to the Toshiba

---

[25]    Dell's Response at 9; see Letter from Bradford to Dossas, dated July 17, 2006, Ex. 3 to Dell's Response.

[26]    Supporting Memorandum at 6.

[27]    Letters from Bradford to Dossas, dated Aug. 28, 2006 and Nov. 7. 2006, Exs. 4, 5 to Dell's Response.

[28]    Supporting Memorandum at 6.

[29]    Letter from Hill to Dossas, dated November 6, 2006, Ex. C to Supporting Memorandum.

[30]    Letter from Hill to Dossas, dated Dec. 18, 2006, Ex. 7 to Dell's Response.

[31]    Supporting Memorandum at 2.

[32]    Plaintiff's First Set of Document Requests to All Defendants (Plaintiff's First Set of Requests), Ex. A to Supporting Memorandum.

Settlement" after a reasonable investigation, and indicates it will produce any additional documents it uncovers in its ongoing investigation.[33]

Plaintiff has failed to show that Dell has refused to produce documents related to the *Toshiba* settlement.  Dell promptly responded after the first specific (and informal) request was made on November 2, 2006.

Patents in suit documents and correspondence

Plaintiff requests Defendants produce all documents and correspondence relating to the patents in suit.[34]  Dell asserts that it "has produced all non-privileged documents and correspondence relating to the patents in suit and Adams," and that it will continue to produce related documents as uncovered in its ongoing investigation.[35]

Microcode for FDC chips

Plaintiff claims that Dell "[has] control of the microcode of the FDC chips and must provide it" to Plaintiff.[36]  Dell, however, argues that it should not be compelled to produce the microcode in the FDC chips of its computers because it "neither possesses nor controls the microcode."[37]  Dell also points out that Plaintiff is attempting to obtain the same information from third parties who actually possess and control the microcode.[38]

The Federal Rules of Civil Procedure permit a party to serve a request for production of materials "which are in the possession, custody or control of the party upon whom the request is

---

[33]     Dell's Response at 4.

[34]     Second Motion to Compel at 2.

[35]     Dell's Response at 5.

[36]     Supporting Memorandum at 10.

[37]     Dell's Response at 5.

[38]     *Id.*

served."[39]   The party does not necessarily need to have *physical possession* of the information to be required to produce it.   *Control* is sufficient to obligate a party to produce.

Courts have varied in determining what constitutes the requisite control.  Plaintiff bases its argument that Defendants have the requisite control on cases from the Southern District of New York.[40]   That District interprets the concept of control broadly, using a "practical ability" standard that courts in this circuit have rejected.[41]   District courts in this circuit have focused on a party's "legal right"[42] and "[t]he relationship between the party and the person or entity having actual possession of the document."[43]

The party requesting production has the burden of showing that the other party has sufficient control over the documents.[44]   The cases Plaintiff cites involve the production of documents from third parties who have a very close relationship to the named party—a wholly owned subsidiary, a current officer of the party company, and joint venturers and co-owners.[45]   Plaintiff has failed to show how Dell's relationship with its supplier meets the same threshold as these close relationships.  In fact, Plaintiff has not produced any evidence of the nature of Dell's

---

[39]     Fed. R. Civ. P. 34.

[40]     Supporting Memorandum at 11.

[41]     *See Am. Maplan Corp. v. Heilman*, 203 F.R.D. 499, 502 (D. Kan. 2001)(holding that the "practical ability" test is not supported by law and, in fact, conflicts with the Federal Rules of Civil Procedure); *Klesch & Co. Ltd v. Liberty Media Corp.*, 217 F.R.D. 517, 520 (D. Colo. 2003) ("even under the most expansive interpretation of 'control,' the 'practical ability' to demand production must be accompanied by a similar ability to enforce compliance with that demand.").

[42]     *DirecTV, Inc. v. Hess*, No. 04-2233-GTV-DJW, 2005 WL 375668, at *1 (D. Kan. Feb. 9, 2005) ("A party that has a legal right to obtain certain documents is deemed to have control of the documents.')(quoting *Clark v. Vega Wholesale, Inc.*, 181 F.R.D. 470, 472 (D. Nev. 1998)); *Stoldt v. Centurion Industries, Inc.*, No. 03-2634-CM-DJW, 2005 WL 375667, at *7 (D. Kan. Feb. 3, 2005); *Shaw v. Management & Training Corp.*, No. 04-2394-KHV-DJW, 2005 WL 375666, at *2 (D. Kan. Feb. 9, 2005).

[43]     *Shaw*, 2005 WL 375666, at *2.

[44]     *Sithon Maritime Co. v. Holiday Mansion*, No. Civ. A. 96-2262-EEO, 1998 WL 182785, at *6 (D.Kan. Apr. 10, 1998) ("The party seeking production of the documents . . . bears the burden of proving that the opposing party has such control.").

[45]     *See* Fujitsu's Opposition to Adams' Second Motion to Compel at 7-8, docket no. 215, filed Dec. 18, 2006, (*hereinafter* Fujitsu's Opposition).

relationship with its suppliers.  Plaintiff only indicates Gateway worked closely with its supplier and suggests each of the Defendants had similar relationships with their suppliers.[46]

By the same token, Dell has offered little evidence of the nature of its relationship with its suppliers.  Thus, the court really has insufficient information to take either extreme action – compelling Dell to produce the microcode or excusing Dell from taking any action.  However, knowing that there is, or was, a contractual relationship of some financial significance, it seems reasonable to require Dell to make a formal written request to supplier(s) for the microcode, and to provide a copy of the request and any response to Plaintiff.  Dell should take reasonable, good faith action to facilitate the delivery of the microcode.

Privileged documents

Plaintiff claims that all defendants, including Dell, have waived the attorney client privilege because they have failed to produce privilege logs in a "timely manner."[47]  Plaintiff cites several cases which interpret what happens when a party fails to produce a privilege log, but none of the cases cited are from this circuit.[48]

Dell argues that privilege will not be waived unless "the offending party committed unjustified delay in responding to discovery."[49]  Dell also argues that it will "suffer tremendous prejudice" if the Court were to take away its privilege.[50]  Dell also points out that "it seems incomprehensible that Adams does not itself have any privileged documents," and yet Plaintiff

---

[46]     Supporting Memorandum at 11.

[47]     *Id.* at 8 (citing Fed. R. Civ. P. 26(b)(5)).

[48]     See Supporting Memorandum at  9–10.

[49]     Dell's Response at 9 (quoting *Heavin v. Owens-Corning Fiberglass*, No. 02-2572-KHV-DJW, 2004 WL 316072 (February 3, 2004).

[50]     Dell's Response at 10.

has not produced a log.[51]   The circumstances of this case do not now justify waiver of the privilege.

<u>Documents relating to all Dell products that use FDC chips</u>

Plaintiff requests the Court's assistance in compelling Dell to produce "the documents on the products that include FDC chips."[52]   Dell argues this request is too burdensome and is inconsistent with the Federal Rules of Civil Procedure.[53]   It complains that Plaintiff's "discovery requests are overly broad and would place an undue burden on Dell because the requests seek documents on *every* Dell product."[54]   Dell predicts this would require the production of hundreds of thousands of pages, many of which are stored in various Dell facilities and storage facilities, in addition to what it has already produced.[55]

Dell sought clarification from Plaintiff on several occasions as to what Dell products Plaintiff considered to be at issue.[56]   In that time Plaintiff identified only one model as allegedly infringing.[57]   On October 23, 2006, Dell produced a list of products potentially relevant to Plaintiff's suit,[58] which identifies the FDC or super I/O device component of each product and

---

[51]      *Id.*

[52]      Supporting Memorandum at 7.

[53]      Dell's Response at 1.

[54]      *Id.* at 7.

[55]      *Id.* at 8.

[56]      Letters from R. Hill to B. Dossas, dated May 17, 2006; Sept. 26, 2006; Oct. 31, 2006; and Nov. 16, 2006, Ex. 1 to Dell's Response.

[57]      Letter, dated May 23, 2006, from B. Dossas to R. Hill, Ex. 2 to Dell's Response.

[58]      Defendant Dell Inc.'s Second Supplemental Response to Plaintiff's Second Set of Interrogatories, Sealed Ex. B to Dell's Response; Dell's Response at 7.

the manufacturer.[59]  Dell also produced the technical specifications for super I/O devices in its

products.[60]

 Dell says that "[i]ncluded in [its] document production are technical documents

including: (1) specifications on a majority of the super I/O devices contained in Dell's products;

(2) specifications for the product Adams identified in the May 23, 2006 letter and a related

product; and (3) documents and communications related to the patents in suit and Adams."[61]

 The court must balance the burden of discovery with the need for discovery.[62]  At the

current time, the court does not know whether Plaintiff can make a preliminary showing of

infringement as to any of the Dell products for which information already exists.  Before

requiring production of more (and less accessible material) Plaintiff will be required to

preliminarily demonstrate the viability of Plaintiff's claims as to the products Dell has identified.

 **B.** **Fujitsu**

 Fujitsu produced approximately 2,189 documents before November 2, 2006, and 9,031

documents after that date.[63]  On November 8, 2006 Fujitsu responded to Plaintiff's November 2,

2006 letter.[64]  Fujitsu complains that "[t]o this day, Adams has not completed its production" of

documents requested by Defendants.[65]

---

[59] Dell's Response at 7.

[60] *Id.*

[61] *Id.* at 3.

[62] Fed. R. Civ. P. 26(e).

[63] Supporting Memorandum at 6.

[64] Fujitsu's Opposition at viii.

[65] *Id.*

Toshiba settlement documents

Fujitsu asserts that it "has already produced all documents related to the Toshiba settlement that are in its possession, custody and control."[66]  Fujitsu first denies that any of Plaintiff's document requests "even mention a 'Toshiba settlement' or a 'class action,'"[67] and then denies that these documents are very relevant.[68]  Despite these objections, Fujitsu asserts it has in fact complied with Plaintiff's request.[69]

Patents in suit documents and correspondence

Fujitsu argues that it is unclear what Plaintiff intended by the request for "all documents and correspondence relating to the patents-in-suit and Adams"[70] because "the motion is devoid of any argument on this issue."[71]  The only documents previously requested that Fujitsu found to relate to this category were "documents relating to [Fujitsu's] negotiations with Adams regarding a license of his patented technology."[72]  Fujitsu admits this is not the first time Plaintiff has referred to licensing negotiations with Fujitsu,[73] but denies there is any factual basis to these references.[74]

In a letter dated November 8, 2006, Fujitsu requested that Plaintiff provide Fujitsu with information regarding "when, where and with whom [the licensing negotiations] took place," if

---

[66]     *Id.* at 1.

[67]     *Id.*

[68]     *Id.*

[69]     *Id.* referencing documents FJ 0002695 and FJ 0016142.

[70]     Fujitsu's Opposition at 2 (quoting Motion at 12).

[71]     *Id.*

[72]     *Id.* (quoting Adams' Nov. 2, 2006 letter).

[73]     Fujitsu's Opposition at 2.

[74]     *Id.*

in fact they took place so that Fujitsu could attempt to locate relevant documents, if any.[75]  "To date, Adams has not provided any such information."[76]  Because Plaintiff has not provided any information, and Fujitsu is unaware of any such negotiations, Fujitsu asserts it cannot be compelled to produce any such documents.  The court agrees.  Fujitsu also requests that Plaintiff be "ordered to refrain from referring to such non-existent negotiations in its submissions."[77]  This seems severe, though somewhat understandable.

Microcode for FDC chips

Fujitsu asserts that contrary to Plaintiff's allegations of "refus[al] to provide technical information for [its] computers, including the micro code for the floppy disc control chips,"[78] Fujitsu "has produced thousands of pages of detailed technical information for its computers."[79] Plaintiff has complained that some of these documents are in Japanese,[80] but Fujitsu argues this "is hardly unexpected from a Japanese company."[81]  The court agrees, so long as Fujitsu is unable to produce currently available English language versions.

Fujitsu admits that it has not produced the microcode information, but argues it is because the microcode is not in Fujitsu's possession, custody, or control.[82]  Again Plaintiff has failed to describe in any detail the nature of Fujitsu's relationship with its supplier, and has not proven Fujitsu's "legal right" to the microcode.

---

[75]     *Id.* at 3 (quoting Jorjani Letter, dated Nov. 8, 2006, Ex. P to Jorjani Decl.).

[76]     Fujitsu's Opposition at 3.

[77]     *Id.*

[78]     Second Motion to Compel at 10.

[79]     Fujitsu's Opposition at 5 referencing documents FJ 0003627-4072 and FJ 0004875-10512.

[80]     Nov. 2, 2006 Letter (Ex. B to Supporting Memorandum).

[81]     Fujitsu's Opposition at 5.

[82]     *Id.*

Similarly, however, the court will require Fujitsu to make a formal written request to supplier(s) for the microcode, and to provide a copy of the request and any response to Plaintiff. Fujitsu should take reasonable, good faith action to facilitate the delivery of the microcode.

Privileged documents

Fujitsu asserts that it has not waived its attorney client privilege because it has not withheld any documents on the basis of privilege.[83]  Fujitsu claims and has informed Plaintiff, that it "has not found any relevant, privileged documents that pre-date this lawsuit."[84]  Fujitsu adds that the authority that Plaintiff cited indicates that a privilege log is only necessary "[w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged."[85]

**C.   MPC**

On August 31, 2006 MPC produced over 6,000 documents.[86]  Before Plaintiff's November 2, 2006 letter complaining about Defendants' document production, "MPC had already informed Adams telephonically that it was reviewing and marking a significant supplementation that would be finished shortly."[87]  Then on November 3, 2006, MPC "completed the lengthy review and marking these documents," and then produced over 25,000 additional documents.[88]  MPC argues that while Plaintiff's Motion is "technically correct that MPC produced most of its documents after Adams' November 2nd letter, the Motion fails to

---

[83]     *Id.* at 4.

[84]     *Id.* (quoting Jorjani Nov. 8, 2006 Letter (Ex P to Jorjani Decl.)).

[85]     Fujitsu's Opposition at 4 (quoting Fed. R. Civ. P. 26(b)(5)).

[86]     Defendant MPC Computers LLC's Response to Adams' Second Motion to Compel (MPC's Response), docket no. 214, filed Dec. 18, 2006, at 2.

[87]     *Id.*

[88]     *Id.*

mention that MPC had already informed Adams that supplementation efforts were well underway, and that Adams' letter and MPC's supplemental production were only one day apart."[89]

Toshiba documents

MPC argues that the Toshiba settlement took place two years before MPC was even formed, and, therefore, it is "far-fetched" for Plaintiff to expect to get MPC documents relating to the settlement.[90]  "Although MPC does not understand itself to have any documents relating to this *Toshiba* settlement, after a reasonable search, MPC has already produced all responsive documents in its possession, custody or control."[91]  MPC argues that Plaintiff "has no basis to suggest that MPC has withheld any documents relating to the *Toshiba* settlement."[92]  The court agrees.

Patents in suit documents and correspondence

MPC also understands Plaintiff's request for documents relating to the patents-in-suit and Adams, although not explained in its motion, to refer to "negotiations with Adams regarding a license of his patented technology," as requested in Plaintiff's November 2, 2006 letter.[93]  As MPC indicated in its letter to Plaintiff dated November 6, 2006, "MPC has not located any such documents, nor is MPC aware of any such negotiation."[94]  In that same letter, MPC requested that, "[i]f Adams had licensing negotiations with MPC, then please let us know when these took

---

[89]     *Id.*

[90]     *Id.* at 3.

[91]     *Id.* at 3–4.

[92]     *Id.* at 4.

[93]     *Id.*; Nov. 2, 2006 Letter, Ex. B to Supporting Memorandum.

[94]     MPC's Response at 4; Ex. B, to MPC's response, para. 3.

place and with whom, and we can try to focus the search for any pertinent documents."[95]

Plaintiff never responded to this request, so MPC believed it was a moot point.[96]  MPC argues it

has no documents in this category and that Plaintiff has no basis to suggest otherwise.[97]  The

court agrees.

Microcode for FDC chips

Like the other defendants, MPC asserts that it lacks possession, custody and control over

the microcode for FDC chips.[98]  MPC asserts it "merely buys motherboards that contain these

chips," and has neither control over the manufacturer to obtain such information nor the personal

capability to do so.[99]  MPC has offered to let Plaintiff inspect the FDC chips and extract the

microcode,[100] "but Adams has never indicated a willingness to do so."[101]  MPC points out that

Plaintiff has "acknowledged that the third-party suppliers are the appropriate source for this

information," by subpoenaing the suppliers directly.[102]  Again Plaintiff has failed to describe in

any detail the nature of MPC's relationship with its supplier, and has not proven MPC's "legal

right" to the microcode.  But MPC should make the same request the court has required of Dell

and Fujitsu.

---

[95]     MPC' Response at 4; Ex. B, para. 3.

[96]     MPC's Response at 4.

[97]     *Id.*

[98]     *Id.* at 5.

[99]     *Id.*

[100]    *Id.;* Ex. E, para. 3.

[101]    MPC's response at 5.

[102]    *Id.*

<u>Privileged documents</u>

MPC asserts that it has not waived any privilege and that it has acted in good faith.[103] It asserts that four days after Plaintiff's November 2, 2006 request for the privilege log, MPC informed Plaintiff that it had not identified any pre-litigation privileged documents.[104]  After its November 6, 2006 letter, MPC "discovered arguably responsive documents which are privileged" and "promptly" informed Plaintiff of its discovery on November 17, 2006.[105]  MPC then produced the log on November 21, 2006.[106]  Although Plaintiff did request the privilege log in its First Set of Requests,[107] Plaintiff has not shown that MPC first encountered privileged documents beforeNovember 6, 2006.  The Plaintiff has not given any substantiated reason to believe otherwise.

**D.      <u>Sony</u>**

Sony produced 2,123 documents before November 2, 2006.[108]  On November 6, 2006, Sony made a timely response to Plaintiff's November 2 letter.[109]  On November 14, 2006, Sony wrote Plaintiff again, "stating that a motion to compel would be premature and indicating its willingness to discuss Sony's document production issues without burdening the Court."[110] Sony claims on November 22, 2006, it produced over a thousand pages, although Plaintiff

---

[103]     *Id.*

[104]     *Id.* at 7–8.

[105]     *Id.* at 8; Ex. C.

[106]     MPC's Response at 8; Ex. C & D.

[107]     Plaintiff's First Set of Requests at 2.

[108]     Supporting Memorandum at 6.

[109]     Defendant Sony Electric Inc.'s Opposition to Adams' Second Motion to Compel (Sony's Opposition), docket no. 218, filed Dec. 18, 2006 at 5.

[110]     *Id.* at 5–6; see Nov. 14, 2006 e-mail from Briggs to Dossas, Ex. D to Sony's Opposition.

complains Sony produced nothing after November 2.[111]  Sony produced a privilege log on
December 15, 2006.[112]

Toshiba settlement

Sony asserts that "Adams has failed to point to any document request that seeks these
documents,"[113] and denies that the *Toshiba* documents are even relevant to the present case.[114]
Sony asserts, however, that it has "performed a diligent search and located responsive
documents."[115]  It claims these documents are privileged, however, and has identified them in its
December 15th privilege log.[116]  Plaintiff has failed to give any evidence that Sony has
unjustifiably refused to produce the requested documents.

Patents in suit documents and correspondence

Sony, like the other defendants, is confused as to what Plaintiff is referring to by
documents relating to the patents-in-suit and Adams, because the subject is not explained in
Plaintiff's memorandum in support of its motion.[117]  Sony infers that Plaintiff is referring to
documents relating to "negotiations with Adams regarding a license of his patented technology"
described in Plaintiff's November 2, 2006 letter.[118]

Sony alleges that Plaintiff fails to point to a document request for these documents,
before the November 2nd letter.[119]  It appears, however, that request numbers 45, 56-58 in

---

[111]      Sony's Opposition at 6; Second Motion to Compel at 6.

[112]      Sony's Opposition at 6.

[113]      *Id.* at 7.

[114]      *Id.*

[115]      *Id.*

[116]      *Id.*

[117]      *Id.*

[118]      *Id.* at 8; Nov. 2 Letter (Ex. B to Supporting Memorandum).

[119]      Sony's Opposition at 8.

Plaintiff's First Set of Document Requests refer to such documents and communications,[120] so this is no refuge for Sony.  Sony also asserts that despite Plaintiff's improper procedure and ambiguous categorization, Sony has produced the documents requested to the extent that they exist.[121]  Plaintiff has given no basis to believe otherwise.

Microcode for FDC chips

Although Plaintiff has not specifically shown that Sony has a "legal right" to the microcode, Plaintiff has given some description of Sony's relationship with one of its suppliers: "Sony admits that pursuant to its purchase agreements with ASUS, ASUS agrees to indemnify Sony against all liabilities in connection with any claim or action that the computers and motherboards provided by ASUS to Sony infringes any patent."[122]  Further information was offered by Sony in its quest to implead its suppliers, some of whom are now parties. [123]

While this evidence may not be determinative of the requisite control, it is sufficient to justify ordering Sony to make the same request as is being required of the other Defendants.

Privileged documents

Sony alleges Plaintiff did not request a privilege log until November 2, 2006, and that Plaintiff has not produced a log either.[124]  Both of these arguments are unpersuasive.  Plaintiff requested a privilege log in its first request for production.[125]  And Plaintiff's failure to produce a log cannot excuse Sony from producing a log.

---

[120]     Plaintiff's First Set of Requests at 11–13.

[121]     Sony's Opposition at 8.

[122]     Supporting Memorandum at 11–12.

[123]     Memorandum in Support of Defendant Sony electronic Inc.'s Motion to Implead Third Parties Under Rule 14 at 6-7, and referenced exhibits, docket no. 171, all filed under seal October 27, 2006.

[124]     Sony's Opposition  at 10.

[125]     Plaintiff's First Set of Requests at 2.

Sony also claims that it had no responsive privileged documents until Plaintiff sought the *Toshiba* documents, and that Sony thereafter produced a privilege log on December 15, 2006.[126] Because the *Toshiba* documents were not formally requested until November 2, 2006, Plaintiff has failed to show that it was prejudiced by any delay, or that there was in fact any delay in production of a log.

## ORDER

IT IS HEREBY ORDERED that Plaintiff's Second Motion to Compel[127] is DENIED.

IT IS FURTHER ORDERED that on or before March 9, 2007, each of the Defendants shall make a formal written request to supplier(s) for the microcode, and provide a copy of the request and any response to Plaintiff.  Each Defendant should take reasonable good faith action to facilitate the delivery of the microcode.

Dated this 22nd day of February 2007.

BY THE COURT:

_____
David Nuffer
United States Magistrate Judge

---

[126]   Sony's Opposition at 11.

[127]   Docket no. 184, filed November 22, 2006.