Rick B. Hoggard (5088)
Arthur B. Berger (6490)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543

Kevin P.B. Johnson (admitted *pro hac vice*)
Todd M. Briggs (admitted *pro hac vice*)
Michael W. Gray (admitted *pro hac vice*)
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California  94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Defendant and Third-Party
Plaintiff Sony Electronics Inc.

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> DELL, INC., FUJITSU LIMITED, FUJITSU COMPUTER SYSTEMS CORP., MPC COMPUTERS, LLC, AND SONY ELECTRONICS INC., <br><br> Defendants. | **DEFENDANT SONY ELECTRONICS INC.'S COMBINED:** <br><br> **(1) MEMORANDUM IN OPPOSITION TO ADAMS' MOTION FOR TERMINATING SANCTIONS; AND** <br><br> **(2) MEMORANDUM IN SUPPORT OF CROSS-MOTION TO STRIKE ADAMS' MOTION FOR TERMINATING SANCTIONS** <br><br> Civil No.  1:05-CV-64 <br><br> The Honorable Ted Stewart <br> Magistrate Judge David Nuffer |
| SONY ELECTRONICS INC., a Delaware corporation, <br><br> Third-Party Plaintiff, <br> vs. <br><br> ASUSTEK COMPUTER, INC., ASUS COMPUTER INTERNATIONAL, WINBOND ELECTRONICS CORPORATION, AND ITE TECH. INC., <br><br> Third-Party Defendants. | |

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................. 3

    A.  The *Christian* Litigation ....................................................................... 3

    B.  Sony's Victory In *Christian* ................................................................. 6

III.  ARGUMENT ..................................................................................................... 6

    A.  Adams' Motion For Terminating Sanctions Is Frivolous ..................... 6

        1.  Adams Fails To Tell The Court That The *Christian* Documents It
             Claims Sony Lost Or Destroyed Have Been And Continue To Be
             Available For Inspection ........................................................... 7

        2.  Adams Fails To Tell The Court That The Parties Agreed Sony
             Would Not Have To Provide A Privilege Log For *Christian*
             Documents ................................................................................ 9

    B.  Adams' Motion For Terminating Sanctions Should Be Stricken From The
        Record ................................................................................................ 10

IV.  CONCLUSION ............................................................................................... 14

Sony Electronics Inc. ("Sony") opposes Plaintiff's ("Adams'") motion for terminating sanctions and cross-moves for an order striking Adams' motion.

## I.    INTRODUCTION

Adams' motion for terminating sanctions has no merit.  Adams brazenly and falsely asserts that Sony lost or destroyed documents from the *Christian* litigation and that "Sony has lied to Adams; and Sony has lied to this Court."  Adams' allegations are outrageous, completely false and entirely lacking of any evidentiary support.  Adams also failed to meet and confer with Sony before filing its motion.  Had Adams done so, it would have quickly learned that its motion was baseless.

Adams' claim that Sony lost or destroyed documents relating to the *Christian* case is absolutely false (as confirmed by the supporting declarations from Sony's Senior Vice President and Deputy General Counsel and Sony's lead trial counsel[1]), and completely undermined by the fact that Sony offered to make the *Christian* documents – which include the very documents Adams claims were lost or destroyed – available for inspection in December 2006.[2]  Indeed, Sony's opposition to Adams' second motion to compel filed in December 2006 made *numerous references* to its inspection offer.  Adams' reply filed in January 2007 acknowledged Sony's inspection offer and confirmed the parties agreement that Sony would not have to provide a privilege log for the *Christian* documents.

---

[1]   *See* Declaration of Chris Ekren, submitted herewith ("Ekren Decl."), ¶ 2; Declaration of Kevin P.B. Johnson, submitted herewith ("Johnson Decl."), ¶ 5.
[2]   The *Christian* litigation was a short-lived class action relating to allegedly defective FDC chips brought against Sony.  The case was dismissed in Sony's favor on summary judgment.

To this day, Adams has never accepted Sony's offer to make the *Christian* documents available for inspection.  If it had chosen to review the *Christian* documents, Adams would have found some of the very documents it claims were "lost or destroyed" by Sony.  Yet, Adams inexplicably and conveniently fails to inform the Court of Sony's inspection offer (and Adams' decision not to review such documents) in its motion for terminating sanctions.

Adams' motion is the most recent example of its willingness to make any allegation, no matter how extreme, without first establishing that its allegation has a sound factual basis.  This disturbing trend plagues Adams' pleadings, motions, and discovery and is becoming more common as the case proceeds.  Sony fears Adams' conduct will only worsen if left unchecked by the Court.  Equally disturbing are Adams' constant attempts to impute the actions of Gateway to Sony.  Sony and Gateway are very different companies – indeed competitors – in the computer business.  Gateway's actions and conduct can in no way be imputed to Sony and this Court should not allow Adams to try its case against Sony based on the actions of Gateway.

This Court has admonished litigants, like Adams, who choose to misrepresent the record, and Sony respectfully submits that such admonishment is appropriate here.[3]   Because Adams' motion is unfounded and permeated with false, misleading, and libelous statements, Sony respectfully requests Adams' motion for terminating sanctions be denied and Adams' motion be stricken from the Court's docket.

---

[3]  *See Kloepfer v. Honda Motor Co.*, 1987 WL 928119 at *2 (D. Utah 1987)  ("Even if sanctions are not imposed, attorneys who misrepresent the law in written or oral argument suffer a natural consequence for their conduct: their credibility and reputation are lowered in the eyes of a judge who may review their arguments in future matters.") (Attached as Exhibit A).

## II.   STATEMENT OF FACTS

### A.     The *Christian* Litigation

In April of 2000, a class action lawsuit was filed against Sony in the United States District Court, District of Minnesota.   The case was styled *Michael Christian, et al., v. Sony Corporation of America, et al.* ("*Christian*").[4]   Plaintiffs were private individuals named Michael Christian and Shirley Bebensee.[5]   Plaintiffs alleged that Sony's computers contained defective Floppy Disk Controller ("FDC") chips.

In August of 2000, the Minnesota district court entered an order requiring the parties to engage in mediation.[6]   The mediation included two technical exchange sessions.[7]   In the first session, plaintiffs' expert(s) were to describe the alleged FDC defect and the defendants were allowed to question plaintiffs' expert(s).   In the second session, the defendants' expert(s) were to make a comparable demonstration.

Dr. Adams served as plaintiffs' expert for the first mediation session.[8]   Dr. Adams attended this session, along with his personal counsel, Gregory Phillips (who also represents the plaintiff Adams in the present case), and plaintiffs' attorneys.   Sony had several individuals attend this session on its behalf including in-house counsel, outside counsel, a technical expert, and other employees.

---

[4]  The docket for the *Christian* case is attached as Exhibit B ("Christian Docket").  Sony Corporation of America and Sony Electronics Inc. were the defendants in the case.

[5]  *Id.*

[6]  *Id.*, Docket No. 15.  The mediation order for the *Christian* case is attached as Exhibit C ("Christian Mediation Order").

[7]  *Id.*

[8]  *See* Declaration of Michael T. Williams, submitted herewith ("Williams Decl."), ¶¶ 2-3.

During the technical exchanges, neither the plaintiffs nor Dr. Adams were ever able to demonstrate that Sony's computers had defective FDCs.   Indeed, during the first session, Dr. Adams was given the opportunity to test the personal Sony laptop computer belonging to Sony's outside counsel.[9]   Tellingly, Dr. Adams tested the computer, but was unable to detect any errors.[10]

Adams' motion and Dr. Adams' declaration state that at the second mediation session in January 2001 Dr. Adams "found that some of Sony's computers no longer had a defect."[11]   Dr. Adams does not explain how he found that some of Sony's computers were not defective during that session, but he is most certainly referring to the test he performed on Sony's outside counsel's computer.  If so, Dr. Adams' declaration and Adams' motion falsely describe when the test took place.  The demonstration using Sony's counsel's computer took place during the first mediation session in November 2000.[12]  This fact destroys Adams' theory that following the first mediation session "Sony, just like Gateway, had replaced the defective Winbond Super I/O chip with a Winbond Super I/O chip that incorporated the Adams technology."[13]  This is yet another example of Adams misrepresenting the facts and desperately trying to impute Gateway's actions on Sony.

---

[9] *See* Williams Decl., ¶¶ 3-4.

[10] *Id.*

[11] *See* Adams Memorandum In Support Of Motion For Sanctions Against Sony Including Terminating Sanctions Based Upon Sony's Spoliation Of Evidence Of Sony's Piracy ("Adams Memorandum") at 5; *see also* Declaration of Phillip M. Adams In Support Of Motion For Sanctions Against Sony Including Terminating Sanctions Based Upon Sony's Spoliation Of Evidence Of Sony's Piracy ("Adams Declaration"), ¶4.

[12] *See* Williams Decl., ¶¶ 3-4.

[13] *See* Adams Memorandum at 5.

During the first mediation session, Sony also challenged the *Christian* plaintiffs' expert, Dr. Adams, to provide Sony with a "real world" hardware and software configuration that would result in the manifestation of the alleged defect in the FDC; that is, a configuration that a consumer could reasonably encounter during normal use.  In response, Sony received a one page document that purportedly described how to configure a computer to replicate the alleged FDC defect.  Dr. Adams apparently created this document and refers to it as a "test jig."  As Sony explained to the plaintiffs' attorneys in *Christian*, the test jig does not represent a reasonable real world configuration of a computer.  It intentionally places the computer in an unnatural, non-real world state in an attempt to induce errors.  Throughout the *Christian* litigation and to this day, Dr. Adams has never provided Sony with any evidence that its computers manifest the alleged FDC defect in a real world environment.

Adams avoids telling the Court that Dr. Adams was the plaintiffs' expert during the *Christian* litigation, apparently trying to create the impression that he had direct meetings with Sony specifically to discuss his patents.  In its motion, Adams merely states that "During the pendency of the <u>Christian</u> class action, . . . Sony representatives met with Dr. Adams and Gregory Phillips (counsel for Adams)."[14]  Furthermore, Dr. Adams' declaration details the November 2000 and January 2001 meetings, but Dr. Adams never mentions the *Christian* litigation or that he was serving as the plaintiffs' expert during the court-ordered mediation sessions.[15]

---

[14]  *Id.*
[15]  *See* Adams Declaration at 2-3.

B.      Sony's Victory In *Christian*

In April 2001, a few months after the second mediation session, Sony filed a motion for summary judgment.   The Court granted Sony's summary judgment motion on the plaintiffs' Computer Fraud and Abuse Act and Uniform Commercial Code claims and dismissed the case with prejudice on July 6, 2001.[16]   The plaintiffs appealed to the Eighth Circuit,[17] but ultimately dismissed their appeal by joint motion and the case concluded in November 2001.[18]   This marked the end of the *Christian* litigation.

III.    ARGUMENT

A.      Adams' Motion For Terminating Sanctions Is Frivolous

Adams makes the incredible claim that Sony lost or destroyed documents from the *Christian* litigation, including: notes from the Court ordered mediation sessions; so-called "test jigs" provided to Sony's counsel by plaintiffs' counsel; internal Sony correspondence and memorandum;  correspondence between Sony's counsel and plaintiffs' counsel;  and correspondence between Sony and its experts and suppliers.[19]

Adams inexplicably fails to inform the Court that Sony made the *Christian* documents – the very documents Adams claims have been lost or destroyed – available for inspection in December 2006, and the parties agreed that Sony would not have to provide a privilege log for documents relating to the *Christian* litigation.  Had Adams bothered to meet and confer before filing its motion for terminating sanctions, it would have learned just how frivolous its motion is.

---

[16]  *See* Christian Docket, Docket No. 62.  The *Christian* summary judgment order is attached as Exhibit D.

[17]  *Id.*, Docket No. 64.

[18]  *Id.*, Docket No. 67.

[19]  *See* Adams Memorandum at 6, 9-10, and 14.

It does not appear that Adams has any interest in playing by the rules or trying this case on the merits.  Instead, Adams is simply seeking to pin "bad acts" on Sony.

> 1.  **Adams Fails To Tell The Court That The *Christian* Documents It Claims Sony Lost Or Destroyed Have Been And Continue To Be Available For Inspection**

In November 2006, Adams filed a motion to compel.[20]  Adams sought documents relating to (1) the *Toshiba* settlement; (2) the patents-in-suit and Adams; (3) microcode for the FDC chips in Sony's computers; and (4) documents withheld pursuant to the attorney-client privilege.[21]  Although Adams' motion was not directed to *Christian* documents, Sony's counsel called Adams' counsel in early December 2006 to confirm whether Adams wanted documents from the *Christian* litigation.  Sony's counsel informed Adams' counsel that Sony would make non-privileged documents from the *Christian* case available for inspection.  Adams' counsel informed Sony that he did not believe Adams was seeking *Christian* documents, but that he would confirm.  Adams' counsel never expressed any interest in reviewing the *Christian* documents.

On December 18, 2006, Sony filed "Defendant Sony Electronics Inc.'s Opposition To Adams' Second Motion To Compel."[22]  Sony's opposition made **_numerous references_** to its inspection offer.  For example, Sony stated in its introduction:

> Sony has also inquired whether Adams is seeking documents regarding a previous class action filed against Sony involving claims of product liability with respect to

---

[20]  Adams filed its motion on November 22, 2006, but did not file the supporting memorandum until November 28, 2006.

[21]  *See* Memorandum Decision And Order Denying Motion To Compel at 3 (Docket No. 251).

[22]  *See* Exhibit E, Defendant Sony Electronics Inc.'s Opposition To Adams' Second Motion to Compel, filed on December 18, 2006 ("MTC Opposition") (Docket No. 218).

FDC chips in its computers, the *Christian* litigation.  Sony understands that Dr. Adams was an expert for the plaintiff in that action.  Sony informed Adams that it is willing to make the non-privileged documents relating to the *Christian* litigation available for inspection.  Sony estimates the volume of these documents to be approximately 80,000 pages.  Adams' counsel informed Sony that he does not believe Adams is seeking documents from the *Christian* litigation, but that he would confirm this.  Sony is still awaiting confirmation from Adams' counsel.

*          *          *

As mentioned above, it remains unclear whether Adams is seeking any documents from the *Christian* litigation. If Adams informs Sony that it is seeking these documents, Sony will supplement its privilege log accordingly.  However, if Sony is required to produce such a privilege log for the *Christian* litigation, Adams should be required to produce a privilege log for the *Gateway* litigation, which is far more related and relevant to the present action, and any other litigation Adams was involved in that relates to the alleged FDC defect.[23]

In its January 2007 reply brief, Adams acknowledged Sony's offer for inspection and confirmed the parties' agreement that Sony did not have to provide a privilege log for the *Christian* documents:[24]

Sony makes repeated reference to a Christian litigation as some sort of excuse for its non-compliance.  Counsel for Sony and Adams discussed this matter with respect to a log of privileged documents for that litigation and agreed that the parties need not identify post-compliant [sic] documents for that case, just as they would not for the present case and the Gateway litigation.[25]

In the best light, Adams forgot about its agreement with Sony and its January 2007 representation to the Court.  Whatever Adams' motivation is, the foregoing completely undermines Adams' motion for terminating sanctions and demonstrates that Adams had no basis for bringing this motion.

---

[23] *Id.*

[24] *See* Exhibit F, Adams' Reply Memorandum In Support Of Its Second Motion To Compel, filed on January 4, 2007 ("MTC Reply") (Docket No. 221).

[25] *Id.* at 7.

Adams also mischaracterizes the May 1, 2007 meeting between Sony and Adams. The purpose of that meeting was to discuss settlement under Federal Rule of Evidence 408, not to discuss discovery disputes and both parties acknowledged that during the meeting.[26]  In fact, at the beginning of the meeting Sony's counsel explained that the meeting was protected by Rule 408 and Adams and his counsel agreed.[27]  Contrary to the unsupported statement in Adams' motion,[28] Sony did not deny the existence of any documents related to the *Christian* litigation at that meeting.[29]  Sony was in no position to confirm or deny the existence of specific documents referred to by Adams during the settlement meeting, which is understandable considering the *Christian* documents consist of approximately 80,000 pages.  Following the May 1 meeting, Adams never contacted Sony to discuss any allegation that documents were destroyed.[30]  Nor did Sony ever hear anything from Adams about the *Christian* documents until the surprise filing of this motion.[31]

2.   **Adams Fails To Tell The Court That The Parties Agreed Sony Would Not Have To Provide A Privilege Log For *Christian* Documents**

Adams suggests that Sony's privilege log should include entries for documents generated by the *Christian* litigation.[32]  Adams' suggestion is absurd given the facts.  The parties agreed Sony would not have to include *Christian* documents on its privilege log in exchange for Adams not having to provide a privilege log for its documents in the Gateway case.  Adams itself

---

[26]  *See* Johnson Decl., ¶ 4.

[27]  *Id.*, ¶ 3.

[28]  *See* Adams Memorandum at 10.

[29]  *See* Johnson Decl., ¶ 4.

[30]  *Id.*

[31]  *Id.*

[32]  *See* Adams Memorandum at 6.

memorialized this agreement in its January 2006 filing with the Court.[33]  Again, it is unclear why Adams fails to inform the Court of this agreement.

It is worth noting that many of the *Christian* documents Adams claims were lost or destroyed would be protected by the attorney-client privilege, the work product doctrine, or settlement/mediation privileges.  The *Christian* case was filed in April 2000 and concluded in late 2001.

### B.   Adams' Motion For Terminating Sanctions Should Be Stricken From The Record

Adams' motion and memorandum contain numerous false statements.  Statements that even the most cursory investigation would have revealed are untrue.  The motion is so egregious, when looked at in the context of the facts, that Sony requests the Court strike Adams' motion and supporting documents pursuant to both the Court's inherent authority as well as Local Rule 1-2.[34]  The Court's inherent authority extends to outright dismissal of a lawsuit.[35]  Consequently, the less severe sanction of striking motions and memoranda is well within the Court's inherent power.[36]  The Court also has the power to strike the motion under its Local Rules.[37]  Adams'

---

[33]  *See* MTC Reply at 7.

[34]  Although the Federal Rules do not include a provision for striking motions and memoranda, the Court has the authority to do so through its inherent authority and under Local Rule 1-2.  *See In Re Courtesy Inns*, 40 F.3d 1084, 1089 (10th Cir. 1994) (citing *Chambers v NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) ("The court ordinarily should rely on the Rules rather than the inherent power.  But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.").

[35]  *See Chambers v NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *LaFleur v. Teen Help*, 342 F.3d 1145, 1149-50 (10th Cir. 2003).

[36]  *See Chambers*, 501 U.S. at 44-45 ("Consequently, the 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power as well.").

[37]  Under Local Rule 1-2, the Court has the authority to "impose sanctions for violation of these civil rules."  The authorized range of sanctions is wide.  LR 1-2; *LaFleur*, 342 F.3d at 1149 (affirming district court dismissal of complaint pursuant to LR 1-2 for violation of LR 83-1.1).

motion is an absurdity and violates both the Utah Rules of Professional Conduct and the Local Rules because it contains false statements of fact.[38]  It has no place on the Court's docket.

Through its counsel, Adams levels extraordinary allegations against Sony, yet does so based on misrepresentations of the record.  Adams repeatedly claims that Sony lost or destroyed evidence from the *Christian* litigation.[39]  As demonstrated above, Adams has had an open offer to inspect non-privileged *Christian* documents, but has never bothered to do so.  It is unacceptable and a waste of this Court's and Sony's resources for Adams to allege that Sony lost or destroyed documents related to the *Christian* litigation – *in a motion requesting the extraordinary remedy of terminating sanctions* – when Adams did not first review the *Christian* documents that Sony made available for inspection.

Perhaps most egregiously, Adams asserts that "Sony has lied to Adams; and Sony has lied to this Court."[40]  These statements are patently false and highly offensive.  Sony stated in its opposition to Adams' second motion to compel that it conducted a reasonable search for documents relating to "negotiations with Adams regarding a license of his patented technology."[41]  Sony then stated that it "agreed to produce these documents to the extent they exist and are not privileged, and Sony has done so."[42]  Adams claims that Sony's representation

---

[38]  LR 83-1.1 requires that "[a]ll attorneys practicing before this court ... must comply with ... the Utah Rules of Professional Conduct."   Utah Rule of Professional Conduct 3.3 requires that "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal."

[39]  *See* Adams Memorandum at 1, 2, and 9-11.

[40]  *Id*. at 8-9 and 15.

[41]  *See* MTC Opposition at 8.

[42]  The court-ordered mediation sessions in the *Christian* litigation were not negotiations for Adams' patented technology.  *See* Christian Mediation Order.  Furthermore, Sony has produced a 2003 letter from Adams to Sony and a response from Sony to Adams.  Sony is aware of no other communications between Sony and Adams that occurred after the *Christian* litigation and before
   (footnote continued)

is a lie because Sony did not produce "documents relating to the two meetings, the test jigs, or communications with its suppliers and technical design experts."[43]   Adams is wrong.   The very next sentence in Sony's opposition states: "Sony has also made available for inspection approximately 80,000 pages of documents relating to the *Christian* litigation and is awaiting an answer from Adams' counsel as to whether Adams is interested in inspecting these documents."[44] Adams knows full well that documents relating to the two mediation sessions, the test jigs, any communications with suppliers due to the *Christian* litigation, and the technical experts in the *Christian* litigation are documents pertaining to the *Christian* case.

Adams also mischaracterizes prior interactions between Sony and Dr. Adams.   Adams paints the false picture that Dr. Adams and Sony were engaged in licensing negotiations during 2000-2001 separate and apart from the *Christian* litigation.[45]   The only reason Sony met with Dr. Adams was because he was the plaintiffs' expert for the two court-ordered mediation sessions in the *Christian* litigation.[46]   Sony never negotiated with Dr. Adams for his technology and has

---

the present one.  Adams attached copies of these letters as Exhibits D and E to its motion for terminating sanctions.

[43]   *See* Adams Memorandum at 8-9.

[44]   *Id.*

[45]   Adams' portrayal of the two mediation sessions strongly suggests he was not acting as an impartial expert for the plaintiffs in *Christian*.  Instead, Dr. Adams' apparent goal was to convince Sony that its computers had defective FDCs in the hope that Sony would license *his* technology.  Sony was simply unwilling to license technology that solved a non-existent problem.  To this very day, Sony has not used any of Adams' patents and is unaware of any consumer complaints against Sony of data corruption due to any of the alleged last byte defects in its FDCs.

[46]   Adams fails to inform the Court that he met with Sony because of the court-ordered *Christian* mediation sessions.   As previously explained, Sony only came in contact with Dr. Adams because he happened to be the expert for the plaintiffs in the *Christian* mediation sessions.

never held a meeting or discussion with Dr. Adams outside of the context of the *Christian* litigation and the present litigation.

Adams' motion and Dr. Adams' sworn declaration also state that a "William Philmill" of "Zunddesign Inc." was one of Sony's experts in the *Christian* litigation.[47]  This again appears to be incorrect.  Several days before the January mediation session, an attorney for the plaintiffs sent a letter to Sony's counsel disclosing a "William Philmlee" of "Zundesign Incorporated" as a participant for the plaintiffs' – not Sony – at that mediation session.[48]

Adams also misstates a prior order from this Court.  Adams claims that six categories of documents listed on pages 9 and 10 of its brief are not privileged, citing several discovery orders from the *Gateway* case.[49]  Judge Nuffer never made such a sweeping declaration.  Judge Nuffer carefully outlined a line-drawing procedure whereby certain Gateway documents were privileged and others were not.[50]  A "cursory reading of [Judge Nuffer's order] would have revealed" that many of the documents in the six categories cited by Adams would be privileged.[51]  For example, documents relating to any testing performed during the *Christian* litigation would be privileged under Judge Nuffer's order.  Adams and its counsel plainly misstate Judge Nuffer's legal ruling in what appears to be another attempt to draw unwarranted parallels between Gateway and Sony.

---

[47]  *See* Adams Memorandum at 6; Adams Declaration at 3.
[48]  *See* Exhibit G, Letter dated January 5, 2001 from Lisa Mezzi (plaintiffs' counsel) to Michael T. Williams (Sony's counsel) disclosing Mr. William Philmlee.
[49]  *See* Adams Memorandum at 9-10.
[50]  *See* Gateway Docket No. 136 at 28.
[51]  *See Honda Motor Co.*, 1987 WL 928119 at *1.

Adams also falsely asserts that it engaged in a proper meet and confer before filing this motion.[52]  Just as Adams did when it filed its second motion to compel,[53] Adams ignored the meet and confer requirement before filing its motion for sanctions.  Adams did not make a single phone call or send a single email or letter regarding the allegedly lost or destroyed *Christian* documents.  Had it done so, Sony and the Court would not have been burdened with Adams' baseless motion.

Finally, Adams states that Sony denied the existence of any documents memorizing "the prior discussions, correspondence between the parties, and the prior transfer of the jigs" or documents resulting from these events.[54]   In typical fashion, Adams makes this bold statement with no citation or evidence to support it.    Indeed, there is no evidence because Sony never made any such statement.  Sony never denied the existence of these documents, which pertain to the *Christian* litigation.

In short, Adams' motion is inundated with misrepresentations, false information, and highly offensive allegations that have no basis in fact.  Sony therefore respectfully requests that the Court strike Adams' motion and all supporting papers from its docket.

## IV.    CONCLUSION

For the foregoing reasons, Sony respectfully request that the Court deny Adams' motion for terminating sanctions, grant its cross motion to strike Adams motion for terminating sanctions, and grant any other relief it deems appropriate in view of Adams' frivolous motion.

---

[52]  *See* Adams' Motion For Sanctions Against Sony Including Terminating Sanctions Based Upon Sony's Spoliation Of Evidence Of Sony's Piracy at 2 (Docket No. 285).

[53]  *See* MTC Opposition at 4-6 (detailing Adams' failure to properly meet and confer before filing its motion to compel).

[54]  *See* Adams Memorandum at 10.

Dated:  June 18, 2007               QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

                            /s/  Kevin P.B. Johnson
Kevin P.B. Johnson
Attorneys for Defendant and Third-Party Plaintiff
Sony Electronics Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2007, I electronically filed **DEFENDANT SONY ELECTRONICS INC.'S COMBINED: (1) MEMORANDUM IN OPPOSITION TO ADAMS' MOTION FOR TERMINATING SANCTIONS; AND (2) MEMORANDUM IN SUPPORT OF CROSS-MOTION TO STRIKE ADAMS' MOTION FOR TERMINATING SANCTIONS** with the Court and electronically served the same on the following through the Court's ECF system:

**Attorneys for Phillip M. Adams & Associates, L.L.C.**

| | |
|---|---|
| Vasilios D. Dossas | Gregory D. Phillips |
| Niro, Scavone, Haller & Niro | Howard, Phillips & Andersen |
| 181 West Madison Street, Suite 4600 | 560 East 200 South, Suite 300 |
| Chicago, Illinois 60602 | Salt Lake City, Utah  84102 |
| (312) 236-0733 | (801) 366-7471 |

**Attorneys for Dell, Inc.**

| | |
|---|---|
| Reginald J. Hill | Terry E. Welch |
| Jenner & Block LLP | Parr Waddoups Brown Gee & Loveless |
| 330 North Wabash Avenue | 185 S. State Street,  Suite 1300 |
| Chicago, IL 60611 | Salt Lake City, Utah |
| (312) 222-9350 | (801) 532-7840 |

**Attorneys for Fujitsu Limited and Fujitsu Computer Systems Corp.**

| | |
|---|---|
| Parisa Jorjani | Sterling A. Brennan |
| Morrison & Foerster LLP | Workman Nydegger |
| 425 Market Street | 1000 Eagle Gate Tower, 60 East South Temple |
| San Francisco, California  94105-2482 | Salt Lake City, Utah  84111 |
| (415) 268-7000 | (801) 533-9800 |

**Attorneys for MPC Computers, LLC**

| | |
|---|---|
| Brian Jackson | Jeremy O. Evans |
| Howrey LLP | Jackson Walter Evans & Huntsman |
| 1111 Louisiana, 25th Floor | 10421 Jordan Gateway, Suite 550 |
| Houston, TX  77002-5242 | South Jordan, Utah  84095 |
| (713) 787-1400 | (801) 576-2660 |

**Attorneys for Winbond Electronics Corporation**

| | |
|---|---|
| Gary C. Ma | Neil A. Kaplan |
| Akin Gump Strauss Hauer & Feld LLP | Clyde Snow Sessions & Swenson |
| 2 Palo Alto Square | 201 South Main Street, #1300 |
| 3000 El Camino Real, Suite # 400 | Salt Lake City, Utah 84111-2216 |
| Palo Alto, CA  94306 | (801) 322-2516 |
| (650) 838-2010 | |

**Attorneys for ASUSTeK Computer, Inc. and ASUS Computer International**
R. Stephen Marshall
J. Mark Gibb
Durham Jones & Pinegar
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110
(801) 415-3000


I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 18, 2007.


_/s/_   Todd M. Briggs_____