Terry E. Welch (5819)
PARR WADDOUPS BROWN GEE &
LOVELESS
185 S. State Street, Suite 1300
Salt Lake City, Utah
Telephone: (801) 532-7840

Reginald J. Hill (admitted *pro hac vice*)
Joseph A. Saltiel (admitted *pro hac vice*)
Benjamin J. Bradford (admitted *pro hac vice*)
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, IL 60611
Telephone: (312) 222-9350

Attorneys for Dell Inc.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company,<br> Plaintiff,<br><br>v.<br><br>DELL INC., FUJITSU LIMITED, FUJITSU COMPUTER SYSTEMS CORP., MPC COMPUTERS, LLC and SONY ELECTRONICS, INC.,<br> Defendants. | **DELL'S OPPOSITION TO ADAMS' MOTION TO PRECLUDE DELL FROM DISCLOSING THE ADAMS SOURCE CODE**<br><br><br>Civil No. 1:05-CV-64 TS<br><br><br>The Honorable Ted Stewart<br><br>Magistrate Judge David Nuffer |
| SONY ELECTRONICS INC., a Delaware corporation,<br>Third-Party Plaintiff,<br><br>v.<br><br>ASUSTEK COMPUTER, INC., ASUS COMPUTER INTERNATIONAL, WINBOND ELECTRONICS | |

| | |
|---|---|
| CORPORATION, AND ITE TECH. INC.,<br>  Third-Party Defendants. | |
| | Civil No. 1:05-CV-64 TS |
| PHILLIP M. ADAMS & ASSOCIATES,<br>L.L.C., a Utah Limited Liability Company,<br>  Plaintiff, | |
| v. | Civil No. 2:07-CV-422 TS |
| QUANTA COMPUTER, INC., QUANTA<br>COMPUTER USA, INC., QUANTA<br>MANUFACTURING, INC., MICRO-STAR<br>INTERNATIONAL CORPORATION,<br>LTD., MSI COMPUTER CORPORATION<br>and NATIONAL SEMICONDUCTOR<br>CORPORATION,<br>  Defendants. | |

This Court should deny Plaintiff Phillip M. Adams & Associates L.L.C.'s ("Adams")

Motion to Preclude Dell from Disclosing Adams Source Code ("the Motion") because Adams

has not met its burden of proof.  Under the Protective Order, Adams has the burden of showing

why the disclosure of Adams's Source Code ("the Source Code") to Defendant Dell, Inc.'s

("Dell") expert would harm it and why Adams believes that the protections of the Protective

Order are inadequate.  Adams has done neither.  Additionally, denying Dell's expert access to

the Source Code would prejudice Dell in its ability to defend itself in this litigation.  Therefore,

Dell's expert is entitled to view the Source Code.

## STATEMENT OF FACTS

The Protective Order

On June 29, 2006, this Court entered a Protective Order to govern any record of information produced in this action and designated as CONFIDENTIAL or CONFIDENTIAL - ATTORNEYS' EYES ONLY.[1,2]  The Protective Order expressly allows a party to disclose CONFIDENTIAL or CONFIDENTIAL - ATTORNEYS' EYES ONLY information to independent consultants or experts ("expert") who are retained by a party, who are assisting in the litigation and who have completed the Confidential Undertaking attached to the Protective Order.[3]  The Protective Order also requires that a party shall provide the designating party the identity and other information regarding the expert prior to disclosing any of the designating party's confidential information to that expert.[4]  If the designating party objects to such a disclosure, the objection must:

> (i) be in writing;
> (ii) state in detail the basis for the objections;
> (iii) identify the objecting party's CONFIDENTIAL or CONFIDENTIAL - ATTORNEYS' EYES ONLY information that underlies the objection;
> (iv) identify how the party believes such information may be used to its harm; and
> (v) state why the objecting party believes the protections already afforded by this Protective Order would be inadequate to prevent the anticipated harm such that the objection is warranted.[5]

---

[1] In Adams' Memorandum in Support of Its Motion to Preclude Dell From Disclosing Adams Source Code ("Adams Memorandum"), Adams attached, as its Exhibit A, an alleged copy of the protective order.  Exhibit A to Adams Memorandum, however, is not the Protective Order.  That attachment was Adams's proposed protective order, which the Court did not adopt.  Instead, the Court adopted a different Protective Order, which is attached hereto.

[2] Exh. A, Protective Order at ¶ 1.

[3] *Id.* at ¶¶ 5.1, 5.2.

[4] *Id.* at ¶¶ 5.2, 5.3.

[5] *Id.* at ¶ 5.3.

The "objecting party shall bear the burden of proof" to show why the Court should enter an order preventing disclosure to the consultant.[6]

<u>The Source Code</u>

The Source Code is software that is an embodiment of U.S. Patent Nos. 5,983,002 and 6,401,222 ("the Detector Patents"), which are two of the patents asserted against Dell in this action.[7]  Adams alleges that the Source Code is a trade secret.[8,9]  When Adams produced the Source Code in this litigation, it designated it as CONFIDENTIAL - ATTORNEYS' EYES ONLY under the Protective Order.

The Source Code is software written in a computer language that humans can read, but computers cannot execute.  Source code, like a foreign language, is not readable by everyone.  Only persons with the proper training and experience with computer languages can understand source code.

In order for a computer to execute source code, the source code needs to be translated, *i.e.,* compiled into an object code.  Object code is a computer language that computers can execute, but humans cannot read.  The relationship between source code and object code has been described as follows:

---

[6] *Id.* at ¶ 5.4.

[7] Exh. B, Adams' Infringement Contentions for All of the Defendants, at 5; Exh. C, 4/24/08 Ltr. to R. Hill at 1; Exh. D, Second Amended Complaint for Patent Infringement at 2-4; Exh. E, Complaint for Patent Infringement and Misappropriation of Trade Secrets, at 2, 8-9; Exh. F, 7/21/03 Adams Dep. Tr. at 260:17-19.

[8] Exh. E at 8-10.

[9] Adams's statement that the Source Code is still a trade secret today and must remain confidential is at odds with his statement in its Complaint against Quanta Computer, Inc. et al. There Adams said that "Adams maintained the confidentiality of its Detector trade secrets until the aforementioned '222 patent issued on June 4, 2002. *Until that time,* Adams' Detector trade secrets were extremely valuable." (Exh. E at ¶ 22, emphasis added.)  This statement suggests that his trade secret became public when his patent issued and has no value today.

> source [code] of a program is what the developer worked with-it is comparable to the manuscript of a book or the score of a piece of music.  However, while a musician with perfect pitch could listen to a piece of music and write down the exact same score, we cannot look at the [object code] or its user interface and reconstruct the source code.  Often a considerable amount of functionality is not obvious from the interface and information in the source has been lost or hidden in the [object code].[10]

Here, Adams compiled the Source Code into object code and called the file containing the object code FDCCheck.exe.[11]  According to Adams, HPFDC.exe is a renamed copy of FDCCheck.exe.[12]  In its complaints, Adams alleges that certain defendants (excluding Dell) misappropriated Adams trade secret by obtaining unauthorized copies of its object code and using it to test their products.  Adams alleges this use also constituted patent infringement of the Detector Patents because this use of the object code was unauthorized.[13]  According to Adams, Dell infringes the Detector Patents because it has incorporated products into its computers that have been tested by object code derived from the Source Code, such as HPFDC.exe.[14]  In addition, Adams used the object code such as HPFDC.exe to test Dell products to determine if they infringed his Detector Patents.[15,16]

---

[10] *Dynamic Microprocessor Assoc. v. EKD Computer Sales*, 919 F.Supp. 101, 103-104 (E.D.N.Y. 1996).
[11] Exh. C at 1.
[12] *Id.*
[13] Exh. B at 2-10; Exh. D at 3-4.
[14] Exh. B at 3-10.
[15] Adams stated that it used HPFDC.exe or FDtest.ext to test Dell's products.  (*See* Exh. G.) Adams likely meant to state that it used HPFDC.exe or FDCcheck.exe to test Dell's products. FDCtest.exe is software developed by NEC six years prior to the filing of the Detector Patents. If FDCtest.exe was used to test Dell's products for infringement that would mean the FDCtest.exe program would render the Detector Patents invalid.
[16] Exh. G, 3/5/08 Ltr. to R. Hill at 2.

Dell's Expert

Dell has retained Bruce Maggs, Ph.D, as an independent consultant in this matter. Dr. Maggs received his Bachelor's, Master's, and Ph.D. in Computer Science from the Massachusetts Institute of Technology and is currently a Professor of Computer Science at Carnegie Mellon University. Dr. Maggs is not an employee of any of the Defendants and has not performed consulting work in the past ten years relating to floppy drive operation. Adams has not made any allegations against or otherwise attacked the credibility of Dr. Maggs.

Meet And Confer

On June 16, 2008, pursuant to the Protective Order, Dell identified Dr. Maggs to Adams and indicated that Dell wanted to disclose Adams's confidential information to Dr. Maggs.[17] On June 19, 2008, Adams objected to Dell disclosing the Source Code to Dr. Maggs and referred Dell to *Adams v. Gateway, Inc.*, Case No. 2:02-cv-106 TS (D. Utah) ("the *Gateway* litigation") as the basis of its objection.[18] Dell responded by reminding Adams that its objection failed to identify any of the information required by Paragraph 5.3 of the Protective Order.[19] On June 24, 2008, Adams responded again referring to the *Gateway* litigation as its basis for its objection and inquired why it was necessary for Dell to disclose the Source Code to its expert.[20] Dell responded by providing several reasons why the Source Code is relevant to this case including infringement, anticipation, obviousness, enablement, best mode, and Adams's trade secret allegations.[21] Dell also stated that this case was different from *Gateway*.[22] Furthermore, Dell

---

[17] Exh. H, 6/16/08 Ltr. to V. Dossas.
[18] Exh. I, 6/19/08 Email to B. Bradford
[19] Exh. J, 6/19/08 Email to G. Phillips.
[20] Exh. K, 6/24/08 Email to J. Saltiel.
[21] Exh. L, 6/24/08 Email to G. Phillips.

specifically identified the Source Code as an embodiment of the invention, which Adams has not refuted in this case.[23]  Indeed, Adams's infringement contention is based on his allegation that certain defendants used object code derived from the Source Code.[24]  On July 3, 2008, the parties met and conferred but were unable to resolve Adams's objection.

The Gateway Case

In the *Gateway* litigation, Gateway moved the Court for relief from the protective order to permit it to supply the Source Code to its expert.[25]  Among other points, Gateway argued two of the same points that Dell argues:  that the Source Code is relevant to enablement and best mode issues.[26]  Gateway's argument, however, is different from Dell's argument.  First, Gateway did not raise any issues relating to infringement, anticipation, obviousness, and trade secret.[27]  Second, Gateway's enablement and best mode arguments were based on the Code of Federal Regulations ("CFR") and Manuel of Patent Examining Procedure ("MPEP") warning that failure to submit source code during prosecution might result in a software patent being invalid for lack of enablement or failure to disclose the best mode.[28]  As discussed below, Dell's enablement and best mode arguments are not based on the CFR or MPEP, but instead, *inter alia*, on Federal Circuit case law allowing defendants to use evidence extrinsic to the patent specification to prove invalidity.

---

[22] *Id.*
[23] *Id.*; Exh. M, 6/27/08 Email to J. Saltiel.
[24] Exh. B at 3-10.
[25] Exh. N, Gateway's Motion For Relief Under The Protective Order (D.I. 112 of the *Gateway* litigation).
[26] Exh. O, Gateway's Submission Regarding Need For Expert To Examine Source Code (D.I. 165 of the *Gateway* litigation) at 4-6.
[27] *Id.*
[28] *Id.*

## ARGUMENT

### I.   ADAMS HAS FAILED TO SHOW HOW DISCLOSURE OF THE SOURCE CODE TO DELL'S EXPERT UNDER THE PROTECTIVE ORDER WILL HARM IT.

Regardless of whether the Source Code is a trade secret, Dell is entitled to have its expert review the Source Code because it is relevant and necessary for its defense. Courts routinely allow parties to provide "valuable" trade secrets, such as source code, discovered during litigation to experts who have agreed to be bound by a protective order.[29]

Under the Protective Order, Adams has the burden of proof to show why this Court should preclude Dell's expert from reviewing the Source Code. In its memorandum, the only harm alleged by Adams is made through the Declaration of Phillip M. Adams that was submitted to this Court *over four years ago* in the *Gateway* litigation. In that declaration, Dr. Adams alleged that "my source code is worth hundreds of millions of dollars, and if disclosed, even inadvertently, would be devastating -- similar to the secret formula of Coca-Cola being disclosed."[30]

Dr. Adams' conclusory statement fails to satisfy Adams's burden of showing why the Protective Order is inadequate to prevent any anticipated harm. Here, Dr. Maggs has signed the Confidential Undertaking attached to the Protective Order agreeing to comply with the terms of the Protective Order. Dr. Maggs is an independent consultant and a well-respected professor at a prominent university who is not associated with any floppy diskette manufactures. There have

---

[29] *See, e.g., Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 300 (D. Del. 1985) (ordering Coca-Cola to disclose its famous secret formula to plaintiff's experts); *Forterra Sys., Inc. v. Avatar Factory*, 2006 WL 2458804 at *2 (N.D. Cal. Aug. 22, 2006) (compelling production of source code in a patent case to an expert); *Mextel, Inc. v. Air-Shields, Inc.*, 2004 WL 614601 at *1 (E.D.Pa. Jan. 30, 2004) (compelling production of source code to an expert); *Dynamic*, 919 F.Supp. at 106 (same).
[30] Adams Memorandum at Exh. E, ¶ 5.

- 1 -

been no allegations or suggestions that Dr. Maggs will inadvertently disclose the Source Code or will be unable to keep the Source Code confidential. In fact, when Dell pressed on this point, Adams said that "Adams will immediately provide the court with the various objections Adams now harbors concerning Dell's behavior, *e.g.*, Dell's or its experts cannot be trusted."[31] To date, Adams has not provided the Court any such objection nor has Adams articulated any basis for such concerns.

Notwithstanding Adams's rhetoric, the Protective Order has been adequate. Adams has already produced the Source Code to counsel for the Defendants, which means that at least 18 different law firms, over 40 attorneys, and many additional support staff have access to the Source Code. Adams has also produced the Source Code in other litigations. All of these parties have been able to abide by the terms of the Protective Order. Thus, there is no reason to doubt that the Protective Order will not be adequate to protect the Source Code from an additional disclosure to Dell's expert.

Because the Protective Order is adequate to protect Adams from any anticipated harm, this Court should deny Adams's Motion.

## II.     THE SOURCE CODE IS RELEVANT TO DELL'S DEFENSE.

### A.     It Is Inherently Unfair To Allow Adams To Use The Source Code To Determine If Dell Infringed The Patents-in-Suit But Not Allow Dell's Expert Access To The Source Code To Rebut Adams's Infringement Contentions.

Dell will be prejudiced if its expert is not allowed access to the evidence Adams used to determine that its products infringed the patents-in-suit. "Defendants have the right to know and discover before trial the facts on which plaintiff bases its charges of infringement, and

---

[31] Exh. M.

- 2 -

defendants are entitled to know the specific factual basis for infringement charges."[32]  Adams based his allegation that Dell's infringes the patents-in-suit on tests it conducted on Dell's products using object code derived from the Source Code.[33]  Adams also alleges that Dell infringes the Detector Patents because it incorporates products from other parties into its computers that were allegedly tested using object code derived from the Source Code.[34]

The object code, *e.g.*, HPFDC.exe, is of little value by itself.  Humans cannot read object code so a person typically cannot tell how the object code functions without also having access to the source code.[35]  Providing attorneys access to source code is insufficient because the attorneys are not experts in the field so they may not be able to fully understand the source code without assistance from an expert.  Moreover, Adams should not be able to force the attorneys to become witnesses to testify about how the Source Code functions.  Therefore, Dell is entitled to have an expert review the Source Code so that Dell can adequately prepare its defense.  For example, upon analyzing the Source Code, Dell's expert may be able to discover information that Dell can use to rebut Adams's infringement contentions.

Allowing Dell's expert to access the Source Code will also level the playing field. Adams's expert, Dr. Adams, not only has access to the Source Code, but he wrote it.  Therefore, Dr. Adams is in a position to support his infringement contentions and rebut Defendants' allegations of invalidity by explaining how the Source Code functions.  Dell's ability to rebut or undermine any testimony from Dr. Adams or statements from Adams's counsel regarding the

---

[32] *Loctite Corp. v. Fel-Pro Inc.*, 94 F.R.D. 1, 9 (N.D. Ill. 1980) (finding that defendant was entitled to discovery on the tests used by plaintiff to support its allegation of patent infringement in the complaint); (*see also* D.I. 154, Memorandum Decision and Order, at 7-8).
[33] Exh. G at 2.
[34] Exh. B at 3-10.
[35] *See, e.g., Dynamic*, 919 F.Supp. at 105.

functionality of the Source Code will be severely hampered if it is not allowed to consult with an

expert regarding the Source Code. Adams should not be allowed to use knowledge of the Source

Code to its benefit, but then be allowed to shield its positions from criticism by prohibiting

others from access to the Source Code. Therefore, this Court should deny Adams's Motion and

allow Dell's expert to access the Source Code.

B.     **If The Source Code, An Embodiment Of The Detector Patents, Does Nothing More Than What Is Disclosed In The Prior Art, The Detector Patents Would Be Invalid.**

Refusing to allow Dell's expert access to the Source Code will unfairly limit the means

by which Dell can attack the validity of the patents-in-suit. One way that Dell may attack the

validity of the Detector Patents is by comparing the Source Code to the prior art. Dell's expert

must have access to the Source Code to make this comparison.

"To anticipate a claim, a prior art reference must disclose every limitation of the claimed

invention, either explicitly or inherently."[36] "[I]f granting patent protection on the disputed

claim would allow the patentee to exclude the public from practicing the prior art, then the claim

is anticipated, regardless of whether it also covers subject matter not in the prior art."[37] So if the

Source Code, an embodiment of the Detector Patents, does nothing more than what is disclosed

in the prior art, the claims of the Detector Patents would be invalid.[38]

Adams argues that validity should be determined "by the express claims of the patent."

While validity can be determined by looking at the claims of the patent, Adams has failed to cite

---

[36] *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).
[37] *Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999) (affirming invalidity of claims that did nothing more than would be inherent by practicing the prior art).
[38] *See id; see also Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 781-82 (Fed. Cir. 1985) (reversing the district court that found a patent claim valid even though it would exclude others from making, using, or selling articles described in a prior art reference).

- 4 -

any case law forbidding a court from looking at other evidence. To the contrary, the Federal Circuit routinely affirms the invalidity of patents even though the defendant did not compare the claims of a patent to the prior art, but instead, relied on a physical embodiment of the claimed invention.[39] If Dr. Maggs were allowed to review the Source Code, an embodiment of the invention claimed in the Detector Patents, and found that it did nothing more than what is disclosed in the prior art, that evidence would invalidate the claims of the Detector Patents.

**C.      Dell's Expert Should Be Entitled To Review The Source Code To Rebut Adams's Claims Of Commercial Success.**

Refusing Dell's expert access to the Source Code will foreclose one avenue for Dell to rebut Adams's assertions of commercial success. Commercial success is one secondary consideration that can rebut a *prima facie* case of obviousness.[40] For commercial success to be relevant to the obviousness inquiry, a patentee needs to show "a sufficient relationship between the commercial success and the patented invention."[41]

In brief after brief to the Court, Adams has touted the value and success of his claimed inventions. Because Dell has alleged that the Detector Patents are invalid as obvious, Adams will no doubt try to rebut Dell's allegation of obviousness by showing that the embodiments of his invention were commercially successful. If Adams intends to use commercial success to

---

[39] *See, e.g., Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) (rejecting patentee's argument that defendant failed to meets its burden on invalidity because it did not compare the claims of the patent to the prior art and affirming invalidity of the patent based solely on patentee's assertion that an accused product infringed when it was later discovered that the accused product pre-dated the patent); *Evans Cooling Sys., Inc. v. General Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997) (same); *see also Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 139 (Fed. Cir. 1986) (finding no error when the district court compared a product embodying the invention to prior art to determine validity).
[40] *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988).
[41] *Id.* at 1392.

- 5 -

rebut Dell's claims of obviousness, Dell will need to review the Source Code to determine (i) if it

is an embodiment of the invention; and (ii) determine if there is a relationship between any

alleged commercial success and the patented invention.  In order to do that analysis, Dell will

need the assistance of its expert, Dr. Maggs.  Therefore, this Court should deny Adams's Motion.

**D.      The Federal Circuit Permits A Defendant To Review Embodiments Of An Invention To Determine If A Patent Is Invalid For Lack Of Enablement.**

Dell will be unduly prejudiced if it cannot use an embodiment of the Detector Patents to

prove that the Detector Patents are not enabled.  "If an inventor attempts but fails to enable his

invention in a commercial product that purports to be an embodiment of the patented invention,

[that would be] strong evidence that the patent specification lacks enablement."[42]  In *Ormco*, the

patentee argued, just like Adams here, that "the determination of enablement should focus only

on the specification of its patents rather than on its development work on its commercial . . .

software."[43]  There, the Federal Circuit and the district court both rejected the patentee's

argument.[44]  The Federal Circuit affirmed that the software was an attempt by the patentee to

follow the patents specification and that the software did not practice the claimed invention.[45]

Therefore, the Federal Circuit affirmed the district court's finding on summary judgment of

invalidity for lack of enablement based on the failed attempt to make a commercial embodiment

of the invention.[46]

Adams alleges that the Source Code is an embodiment of the Detector Patents that was

used commercially.  Dell is entitled to review the Source Code to determine if it is an enabling

---

[42] *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007).
[43] *Id.* at 1318.
[44] *Id.*
[45] *Id.* at 1319.
[46] *Id.* at 1319.

version of his invention.  If the Source Code does not work, does not practice the invention, or has additional features not disclosed in the Detector Patents that enable it to function, those would be, as the Federal Circuit held, strong evidence that the Detector Patents are invalid for lack of enablement.  Therefore, this Court should deny Adams' Motion.

  **E.**  **The Source Code May Reveal A Best Mode Of The Invention That Adams Failed To Disclose In His Patent Specification.**

  Dell's expert needs access to the Source Code to show that Adams hid a best mode of practicing his patents from the PTO.  Pursuant to 35 U.S.C. § 112, first paragraph, an applicant is required to disclose what he believes is the preferred or best embodiment for practicing the claimed invention.[47]  "The purpose of the best mode requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of the inventions they have in fact conceived."[48]  Failure to comply with the best mode requirement renders a patent invalid.[49]  To determine if an applicant satisfies the best mode requirement, the Federal Circuit applies a two part test where the fact-finder must determine:  (i) whether the applicant at the time he filed his patent application had a best mode and (ii) whether that best mode was disclosed in the specification.[50]  In *Old Town*, the Federal Circuit vacated the district court's granting of JMOL of no best mode, which reinstated the jury's finding that the patent was invalid for failure to disclose the best mode.[51]  In that case, there was evidence of the existence of a document prepared by the inventor describing his invention with more detail than what was

---

[47] *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1330 (Fed. Cir. 2002).
[48] *Id.* (citation omitted).
[49] *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1321 (Fed. Cir. 2006).
[50] *Id.*
[51] *Id.*

disclosed in his patent specification.[52]   The Federal Circuit held that "a reasonable juror could

find that the specification's failure to disclose that which was detailed in the document . . . was a

failure to disclose the best mode."[53]   As exemplified by *Old Town*, the best mode argument

cannot be limited to the patent specification, but instead requires a comparison of the

embodiments disclosed in the specification to embodiments *not* disclosed in the specification.

    The Source Code, an embodiment of the Detector Patents, predates the filing date of the

Detector Patents.  Moreover, Adams claims that the Source Code is still a trade secret and

confidential even though his Detector Patents have been published.  Therefore, there is a

question of fact as to whether the Source Code is the best mode for practicing his invention and

whether that mode was disclosed in Detector Patents.  The only way to perform this analysis is to

have a qualified expert, such as Dr. Maggs, review the Source Code.  Dr. Maggs will be able to

compare the Source Code to the specification of the Detector Patents to determine if Adams

failed to satisfy the best mode requirement.   Therefore, a review of the Source Code by Dell's

expert is relevant and necessary for determining whether the Detector Patents are invalid for

failing to satisfy the best mode requirement.

## III.   DELL'S EXPERT IS ENTITLED TO REVIEW THE SOURCE CODE BECAUSE THIS CASE ALSO INVOLVES TRADE SECRET ALLEGATIONS.

    The defendants are entitled to know Adams's theory of the case, and, in particular, what

part of the Source Code constitutes Adams's trade secret and what part of the Source Code

constitutes an embodiment of the Detector Patents.  A plaintiff in a trade secret case must

identify in detail the trade secret and confidential information alleged to be misappropriated

---

[52] *Id.*
[53] *Id.*

before any meaningful discovery can be taken on the trade secret allegations.[54]  Adams alleges that the Source Code is a trade secret.[55]  Adams also alleges that the Source Code embodies the patents-in-suit and that the Defendants infringe based on tests using object code derived from the Source Code.[56]  Defendants are entitled to know which part of the Source Code is the trade secret and which part is the embodiment of the Detector Patents.  If, for example, Adams's infringement contention is based on the trade secret part of the Source Code, its allegations of infringement may fail.  In order to show this, Dell (and the other defendants) will need the assistance of an expert to interpret the Source Code and compare it to the disclosure of the Detector Patents.

Likewise, Adams's allegations of misappropriation of trade secret would fail if the trade secret was published in a patent application before any alleged misappropriation.  Indeed, certain defendants[57] accused of trade secret misappropriation have argued as a defense that the Source Code does not do anything other than what is described in the Detector Patents, which was published prior to any alleged misappropriation.  In order to prove that defense, these defendants, through the use of an expert, will need to compare the Source Code to the Detector Patents (or conversely Adams will need to show what in the Source Code is different from the disclosure of the Detector Patents).

Therefore, this Court should deny Adams's Motion and allow Dr. Maggs access to the Source Code because it is relevant to trade secret allegations.

---

[54] *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974) (compelling Xerox to identify in detail all trade secrets and confidential information); (*see also* D.I. 154, Memorandum Decision and Order, at 7-8).
[55] Exh. E.
[56] Exh. B.
[57] Adams has not accused Dell of trade secret misappropriation.

Dated:  July 29, 2008                    Respectfully submitted,

                                         DELL, INC.

                                         /s/  Terry E. Welch

                                         Terry E. Welch
                                         PARR WADDOUPS BROWN GEE & LOVELESS
                                         185 S. State Street, Suite 1300
                                         Salt Lake City, Utah
                                         Telephone: (801) 532-7840

                                         Reginald J. Hill
                                         Joseph A. Saltiel
                                         Benjamin J. Bradford
                                         JENNER & BLOCK LLP
                                         330 North Wabash Avenue
                                         Chicago, IL 60611
                                         Telephone: (312) 222-9350

                                         Attorneys for Dell Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2008, I electronically filed DELL'S OPPOSITION TO ADAMS' MOTION TO PRECLUDE DELL FROM DISCLOSING THE ADAMS SOURCE CODE with the Court and served the same on counsel of record via email:

| Party | Counsel | Local Counsel |
|---|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C. | **Raymond P. Niro** rniro@nshn.com **Vasilios D. Dossas** dossas@nshn.com Niro, Scavone, Haller & Niro 181 West Madison Street, Suite 4600 Chicago, IL 60602 (312) 236-0733 | **Gregory D. Phillips** gdp@hpalaw.com **Kevin A. Howard** kah@hpalaw.com Howard, Phillips & Anderson 560 East 200 South, Suite 300 Salt Lake City, UT 84102 (801) 366-7471 |
| MPC COMPUTERS, LLC | **Michael S. Dowler** dowlerm@howrey.com **Henry A. Petri, Jr.** petrih@howrey.com Howrey LLP 1111 Louisiana, 25th Floor Houston, TX 77002-5242 (713) 787-1400 **Diana J. Huntsman** Diana@legalhelpllc.com Huntsman Evans & Lofgran, PLLC 3995 South 700 East, Suite 400 Salt Lake City, Utah 84107 Tel: (801) 747-0822 Fax: (801) 747-0826 | **Jeremy O. Evans** jevans@ddrs.net DDRS 12426 E. Explorer Drive, Suite 100 Boise, ID 83713 Tel: (208) 489-2669 |
| | | |

| | | |
|---|---|---|
| SONY ELECTRONICS INC. | **Kevin P.B. Johnson**<br>kevinjohnson@quinnemanuel.com<br>**Todd M. Briggs**<br>toddbriggs@quinnemanuel.com<br>**Michael Gray**<br>michaelgray@quinnemanuel.com<br>Quinn Emanuel Urquhart Oliver &<br>Hedges, LLP<br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, CA 94065-2139<br>(650) 801-5000 | **Rick B. Hoggard**<br>rhoggard@rqn.com<br>**Arthur B. Berger**<br>rberger@rqn.com<br>Ray Quinney & Nebeker<br>P.C.<br>36 South State Street, Suite<br>1400<br>P.O. Box 45385<br>Salt Lake City, UT 84145-<br>0385<br>(801) 532-1500 |
| FUJITSU COMPUTER SYSTEMS CORP. and FUJITSU LIMITED | **Michael A. Jacobs**<br>mjacobs@mofo.com<br>**Minn Chung**<br>mchung@mofo.com<br>**Parisa Jorjani**<br>pjorjani@mofo.com<br>Morrison & Foerster LLP<br>425 Market Street<br>San Francisco, CA 94102-2482<br>(415) 268-7000 | **Sterling A. Brennan**<br>sbrennan@wnlaw.com<br>**David R. Wright**<br>dwright@wnlaw.com<br>**Janna Lewis**<br>jlewis@wnlaw.com<br>Workman Nydegger<br>1000 Eagle Gate Tower<br>60 East South Temple<br>Salt Lake City, UT 84111<br>(801) 533-9800 |
| WINBOND ELECTRONICS CORP. | **Steven H. Morrissett**<br>morrissett@finnegan.com<br>**Gary C. Ma**<br>gary.ma@finnegan.com<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>3300 Hillview Avenue<br>Palo Alto, California 94304 | **Jennifer A. James**<br>jaj@clydesnow.com<br>**Neil A. Kaplan**<br>nak@clydesnow.com<br>Clyde Snow Sessions &<br>Swenson<br>One Utah Center 13th FL<br>201 S. Main Street<br>Salt Lake City, UT 84111-<br>2216<br>(801) 322-2516 |
| | | |
| | | |

| | | |
|---|---|---|
| ASUSTEK COMPUTER, INC., AND ASUS COMPUTER INTERNATIONAL | **R. Stephen Marshall**<br>smarshall@djplaw.com<br>**J. Mark Gibb**<br>utfedcourt@djplaw.com<br>**Erik A. Olson**<br>eolson@djplaw.com<br>Durham Jones & Pinegar<br>111 East Broadway, Suite 900<br>P.O. Box 4050<br>Salt Lake City, Utah 84110-4050<br>Telephone: (801) 415-3000<br>Facsimile: (801) 415-3500 | **Todd E. Zenger**<br>tzenger@kmclaw.com<br>**Dax D. Anderson**<br>danderson@kmclaw.com<br>Kirton & Mcconkie<br>1800 Eagle Gate Tower<br>60 East South Temple<br>Salt Lake City, Utah 84111<br>Tel: (801) 328-3600<br>Fax: (801) 321-4893 |
| NATIONAL SEMICONDUCTOR CORPORATION | **Brian E. Ferguson**<br>brian.ferguson@weil.com<br>**Sudip K. Kundu**<br>sudip.kundu@weil.com<br>Weil Gotshal & Manges LLP<br>1300 Eye Street, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 682-7195<br>Facsimile: (202) 857-0940 | **Charles L. Roberts**<br>croberts@wnlaw.com<br>**Matthew A. Barlow**<br>mbarlow@wnlaw.com<br>Workman Nydegger<br>1000 Eagle Gate Tower<br>60 East South Temple<br>Salt Lake City, UT 84111<br>(801) 533-9800 |
| QUANTA COMPUTER INC., QUANTA COMPUTER USA, INC., AND QUANTA MANUFACTURING, INC. | **Maxwell A. Fox**<br>maxwellfox@paulhastings.com<br>**Terry D. Garnett**<br>terrygarnett@paulhastings.com<br>**Katherine Murray**<br>Katherinemurray@paulhastings.com<br>**Daniel Prince**<br>danielprince@paulhastings.com<br>**Vincent K. Yip**<br>Vincentyip@paulhastings.com<br>**Hua Chen**<br>huachen@paulhastings.com<br>**Jay C. Chiu**<br>jaychiu@paulhastings.com<br>Paul, Hastings, Janofsky & Walker LLP<br>515 South Flower Street, 25th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 683-6000<br>Facsimile: (213) 627-0705 | **David O. Seeley**<br>david.seeley@hro.com<br>Holme, Roberts & Owen LLP<br>299 South Main Street, Suite 1800<br>Salt Lake City, UT 84111<br>Telephone: (801) 521-5800<br>Facsimile: (801) 521-9639 |

| | | |
|---|---|---|
| MICRO-STAR INTERNATIONAL CORPORATION, LTD. AND MSI COMPUTER CORPORATION | **Andy C. Lai**<br>alai@lailawus.com<br>Law Offices of Lai & Associates, P.C.<br>5800 Ranchester Drive, Suite 200<br>Houston, Texas 77036<br>Tel: (713) 988-5666<br>Fax: (713) 988-8846<br><br>**William L. LaFuze**<br>wlafuze@velaw.com<br>**Richard R. Ruble**<br>rruble@velaw.com<br>Vinson & Elkins, LLP<br>2500 First City Tower<br>1001 Fannin Street<br>Houston, TX 77002-6760<br>Tel: (713) 758-2595<br>Fax: (713) 615-5317 | **Brent O. Hatch** (5715)<br>bhatch@hjdlaw.com<br>**T. Parker Douglas** (8924)<br>pdouglas@hjdlaw.com<br>Hatch, James & Dodge, P.C.<br>10 West Broadway, Suite 400<br>Salt Lake City, Utah 84101<br>Tel: (801) 363-6363<br>Fax: (801) 363-6666 |

/s/  Terry E. Welch