IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>DELL INC., FUJITSU LIMITED, FUJITSU COMPUTER SYSTEMS CORP., MPC COMPUTERS, LLC, and SONY ELECTRONICS, INC.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**<br><br><br>Case No: 1:05-cv-64 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

Plaintiff Phillip M. Adams & Associates LLC ("Adams") moved[1] for a protective order to preclude Defendant Dell, Inc. ("Dell") from disclosing Adams' source code to Dell's independent expert. The Court has carefully reviewed the motions, memoranda, relevant legal authorities, and other materials submitted by the parties. For the reasons set forth below, Adams' motion is DENIED.

## I.   Introduction

In the late 1980s, Dr. Phillip Adams identified a defect in the NEC 765A floppy disk controller ("FDC") which was present in most personal computers.[2] Dr. Adams believed that the defect in the FDC could cause the random destruction or corruption of data without proper notification to the user that data has been destroyed, which potentially could lead to serious

---

[1] Adams' Motion to Preclude Dell from Disclosing the Adams Source Code (Motion to Preclude), docket no. 582, filed July 11, 2008.
[2] Second Amended Complaint at 3, docket no. 222, filed January 4, 2007.

consequences.[3]  Since his discovery of the defect, Dr. Adams has devoted substantial amounts of time and effort to developing various solutions for FDC defects.[4]  Dr. Adams decided to patent the computer technology resulting from his development efforts, with the first patent application being filed in 1992.[5]  To date, there have been at least five patents issued as the result of Dr. Adams' efforts.[6]  Each of those patents has been purportedly assigned to Phillip M. Adams & Associates LLC, the Plaintiff in this case.[7]

The FDC-related defects have given rise to multiple lawsuits over the past several years, one of which culminated with a $2.1 billion class-action settlement.  In the aftermath of that class-action settlement, interest in Adams' technology apparently increased.  Alleged misuse of that technology is what has given rise to Adams' instant lawsuit against Dell and a number of other companies in the computer industry (collectively "Defendants").  Notably for this decision, Adams previously filed a lawsuit against Gateway, Inc. ("Gateway") on related grounds.  That case was settled before trial.

## II. Nature of the Claims

Adams alleges that the Defendants have directly infringed various claims of each of the patents-in-suit.[8]  Adams further contends that Dell has both induced and contributed to

---

[3] Second Amended Complaint at 3, docket no. 222, filed January 4, 2007.
[4] Second Amended Complaint at 2, docket no. 222, filed January 4, 2007.
[5] U.S. Patent No. 5,379,414.
[6] Second Amended Complaint at 2, docket no. 222, filed January 4, 2007. The United States patents identified by Adams, *i.e.* the patents-in-suit, are as follows: 5,379,414 titled "Systems and Methods for FDC Error Detection and Prevention" ("the '414 patent"); 5,983,002 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '002 patent"); 6,401,222 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '222 patent"); 6,195,767 titled "Data Corruption Detection Apparatus and Method" ("the '767 patent"); and 6,687,858 entitled "Software-Hardware Welding System" ("the '858 patent").
[7] Second Amended Complaint at 3, docket no. 222, filed January 4, 2007.
[8] Second Amended Complaint at 6-7, docket no. 222, filed January 4, 2007.  Adams contends that infringement by Dell has occurred as to, at least, the following claims in Adams' patents:
   Claim 1 of the '414 patent
   Claims 1-6 and 8-15 of the '002 patent
   Claims 1-7, 9-16, and 18-20 of the '222 patent
   Claims 1 and 10-12 of the '767 patent

infringement of those same patent claims.[9] Finally, Adams asserts that Dell's infringement is willful.[10]

Dell denies infringing, either directly or indirectly, any valid and enforceable claim of Adams' patents.[11] Dell contends that each of the patents-in-suit are invalid and unenforceable for failing to comply with the statutory requirements for patentability under 35 U.S.C. §§ 102, 103, and/or 112.[12] Dell further contends that each of Adams' patents is unenforceable due to inequitable conduct during prosecution of the patents before the United State Patent and Trademark Office ("USPTO").[13]

## III. Discovery Dispute

During the course of discovery, Adams disclosed its source code to Dell's attorneys, designating the source code as CONFIDENTIAL – ATTORNEYS' EYES ONLY. Subsequently, Dell wanted to disclose Adams' confidential information to Dr. Maggs,[14] Dell's independent expert retained for the purpose of assisting Dell in this litigation.[15] Pursuant to the Protective Order in this case, Dell informed Adams of its intentions to disclose the information to Dr. Maggs.

---

  Claims 1 and 3-4 of the '858 patent
[9] Second Amended Complaint at 6-7, docket no. 222, filed January 4, 2007.
[10] Second Amended Complaint at 7-8, docket no. 222, filed January 4, 2007.
[11] Defendant Dell Inc.'s Answer to Plaintiff's Second Amended Complaint, Affirmative Defenses and Counterclaim (Dell's Answer) at 5, docket no. 234, filed January 22, 2007.
[12] Dell's Answer at 5. For a patent to be valid and enforceable, 35 U.S.C. §§ 102, 103, and 112 require that an invention not be anticipated by the prior art (§102), that an invention is not obvious to an ordinarily skilled artisan in the field (§103), and that the patent contains an adequate written description of the invention which enables the ordinarily skilled artisan to make and use the invention, as well as disclosing the inventor's best mode of making and using the invention (§112 first paragraph). Finally, the patent must contain definite claims that point out and distinctly claim the invention (§112 second paragraph).
[13] Dell's Answer at 5-7.
[14] Dell's Opposition at v. (Adams does not directly attack Dr. Maggs' status as a disinterested, independent expert in this case, instead Adams uses broad assertions that "[a]ny disclosure of the source code beyond the attorneys in this case is unnecessary and extremely risky.").
[15] Dell's Opposition at v.

Under the terms of the Protective Order,[16] a party may disclose confidential information to independent experts retained by a party to aid in this litigation.[17] A party desiring to disclose CONFIDENTIAL or CONFIDENTIAL – ATTORNEYS' EYES ONLY information to an independent expert must, however, provide written notice to the party whose information is to be disclosed. That party is then given an opportunity to object. The procedure for objecting is outline in the Protective Order:

> Any objection shall (i) be in writing, (ii) state in detail the basis for the objection, (iii) identify the objecting party's CONFIDENTIAL or CONFIDENTIAL – ATTORNEYS' EYES ONLY information that underlies the objection; (iv) identify how the party believes such information may be used to its harm; and (v) state why the objecting party believes the protections already afforded by this Protective Order would be inadequate to prevent the anticipated harm such that the objection is warranted.[18]

Furthermore, the Protective Order allocates the burden of proof placing it on the party objecting to the further disclosure of information to an independent expert.[19]

Dell contends that Adams has not met its burden of proof under the terms of the Protective Order.[20] More specifically, Dell argues that Adams' objection fails to identify how disclosure of the source code to Dell's expert will harm Adams and, also, that Adams did not state why it believes the protections already afforded by the Protective Order are inadequate.[21]

Dell further contends that it is reasonably necessary to disclose the source code to its expert in order to properly prepare its defense in this case.[22]

---

[16] Protective Order, docket no. 122, entered June 29, 2006.
[17] Protective Order at 7, docket no. 122, entered June 29, 2006.
[18] Protective Order at 8, docket no. 122.
[19] Protective Order at 8, docket no. 122, entered June 29, 2006 ("the objecting party shall bear the burden of proof.").
[20] Dell's Opposition to Adams' Motion to Preclude Dell from Disclosing the Adams Source Code (Dell's Opposition) at 1-2, docket no. 597, filed July 29, 2008.
[21] *Id.*
[22] Dell's Opposition at i.

Adams contends that the issue of whether or not Adams' source code can be disclosed to an independent expert has already been answered by this court and points to an order denying disclosure in the litigation between Adams and Gateway noted above.[23] Adams also contends that its source code is not relevant in the instant lawsuit against the Defendants.[24]

## IV. Discussion

Federal courts recognize a qualified evidentiary privilege for trade secrets and other confidential information.[25] In most cases the key issue is not whether relevant trade secret information will be disclosed but under what conditions.[26] On this point the trial court has broad discretion to determine what safeguards are appropriate under the circumstances of the particular case.[27] In this case, following Tenth Circuit precedent on the discoverability of trade secrets, the court finds that Adams' source code can be disclosed to Dell's independent expert and, also, that the protective order that the parties have wisely agreed to will sufficiently protected against improper use of the source code to permit examination by Dell's expert.

Additionally, to facilitate future discovery in this case, the court will address the Protective Order's burden-allocating clause with respect to information labeled as CONFIDENTIAL – ATTORNEYS' EYES ONLY. For the reasons set forth below, the court finds that Adams did not meet its burden under the Protective Order procedures to successfully deny disclosure to Dell's expert.

---

[23] Adams' Reply in Support of Its Motion to Preclude Dell from Disclosing the Adams Source Code (Adams' Reply), docket no. 602 at 2, filed August 11, 2008.
[24] Adams' Reply at 3-5.
[25] *See e.g.*, *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981).
[26] 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2043 (2d. ed. 1994 and Supp. 2008)(citing *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 n.24 (1979)).
[27] *E.I. Du Pont De Nemours Powder Co. v. Masland*, 244 U.S. 100, 103 (1917) (Justice Holmes stating: "It will be understood that if, in the opinion of the trial judge, it is or should become necessary to reveal the secrets to others, it will rest in the judge's discretion to determine whether, to whom, and under what precautions, the revelation should be made.").

### A.     *Discoverability of Adams' Source Code*

The Tenth Circuit has set forth the framework for analyzing whether and under what conditions trade secrets may be disclosed.[28]  First, the objecting party must "establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful."[29]  Once the objecting party establishes a specific potential harm which may result from the disclosure of its trade secret, the burden then shifts to the party seeking discovery to show both the relevancy and necessity of the information.[30]  Then the court must balance the need and potential harm, considering safeguards that may be used.

With respect to relevance, the Federal Rules of Civil Procedure allow a party to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[31]  The rule further provides that relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[32]  Thus the scope of discovery is broad.

Once relevance and need are established, the court must then balance the competing interests of the two parties; protection of trade secrets on the one hand, and full and fair presentation of the case on the other.[33]  This balancing should take into consideration all pertinent circumstances, including dangers of abuse, good faith, and availability of other means of proof.[34]

---

[28] *Centurion Indus.*, 665 F.2d at 325.
[29] *Id.*
[30] *Id.*
[31] Fed. R. Civ. P. 26 (b)(1)
[32] *Id.*
[33] *Id.*
[34] 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure § 2043* n.12 (2d. ed. 1994 and Supp. 2008) ("The matter was well put by the Advisory Committee on Rules of Evidence: 'The need for accommodation between protecting trade secrets, on the one hand, and eliciting facts required for full and fair presentation of a case, on the other hand, is apparent. Whether disclosure should be required depends upon a weighing of the competing interests involved against the background of the total situation, including consideration

The facts of a given case determine what protective measures will reasonably minimize the potential for harm to the party objecting to disclosure; however, the need for information is ordinarily held paramount. In complex patent litigation, such as this case, parties are often dependent on their expert witnesses to fully understand the intricacies of the technology at issue.

### 1.   *Adams' Interest in Precluding Disclosure to Dell's Expert*

Adams contends that source code in the computer industry is rarely disclosed;[35] that the source code is worth hundreds of millions of dollars and that its disclosure would be devastating[36] and "represent a major tragedy."[37] The court will assume that Adams' source code is protected as a trade secret and that there is some risk to Adams if it is improperly disclosed. It will be noted, however, that by not including the source code in the specification of the patents-in-suit, Adams represents that a programmer of ordinary skill could reproduce source code that embodies the functions disclosed in those patents without undue experimentation. Adams' statement that its source code is worth hundreds of millions of dollars is hard to reconcile with the fact that the patents owned by Adams are, at least in part, based on principles that can allegedly be embodied in source code by an ordinarily skilled programmer.

### 2.   *Relevancy of Adams' Source Code*

The *quid pro quo* for the limited monopoly given through grant of a patent right is a complete disclosure of the claimed invention.[38] The statute requires that the disclosure enable one of ordinary skill in the art, using the knowledge available to such person, to make and use

---

of such factors as the dangers of abuse, good faith, adequacy of protective measures, and the availability of other means of proof.'" Advisory Note to Rule 508 of proposed Federal Rules of Evidence, 46 F.R.D. 161 at 371 (1969). Rule 508 was not ultimately adopted. 26 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure §§ 5641 to 5652 (2d. ed. 1994 and Supp. 2008)*.

[35] Adams' Reply at 6 (referencing the Declaration of Plaintiff Phillip M. Adams Re Source Code filed Feb. 13, 2004).
[36] Adams' Reply at 6.
[37] Adams' Reply at 2.
[38] 3 Donald S. Chisum, *Chisum on Patents* §§ 7.01, 7.05 (2003); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150-51 (1989).

the claimed invention.[39]  The statute also requires that the disclosure contain the inventor's best mode of practicing the invention if one exists.[40]  As Adams has pointed out, the Federal Circuit has held that when disclosure of software is required, it is *generally* sufficient to satisfy the enablement and best mode requirement if the functions of the software are disclosed, it *usually* being the case that creation of the specific software is within the skill of the art.[41]  Those cases, however, do not deal with whether or not source code is discoverable; they deal with whether the lack of source code in the patents renders the patent invalid.

Adams' source code is relevant, within the scope of discovery, to whether or not the patent contains an enabling disclosure.  A patent may not be enabled, and thus may be invalid, if an ordinarily skilled programmer would have to undergo undue experimentation to practice the invention.[42]  The required amount of experimentation must be reasonable.[43]  In *White Consolidated*, the Federal Circuit found that "1 ½ to 2 man-years of effort [by a skilled programmer] is a clearly unreasonable requirement."[44]  A court must look to the facts of a specific case, however, to determine whether a program is enabled.  Notably, the test for undue experimentation "is not merely quantitative, since a considerable amount of experimentation is permissible, if it is merely routine, or if the specification in question provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed."[45]

Dell is reasonable in arguing that source code of such value as Adams claims, *i.e* hundreds of millions of dollars, arising from a fully disclosed invention, would require undue

---

[39] 35 U.S.C. 112, ¶ 1
[40] *Id.*
[41] *Robotic Vision v. View Eng'g*, 112 F.3d 1163, 1166 (Fed. Cir. 1997) (citing *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1549-50 (Fed. Cir. 1997); *In re Hayes,* 982 F.2d 1527, 1537-38 (Fed. Cir. 1992)) (emphasis added).
[42] *White Consol. Indus., Inc. v. Vega Servo-Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir .1983).
[43] *Id.*
[44] *Id.*
[45] *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360 (Fed.Cir.1998).

experimentation for an ordinary programmer to reproduce.  As stated previously, it is hard to reconcile the argument that the disclosure of Adams' source code in the patent specification is not necessary because creation of such code is well within the skill of the art with Adams' simultaneous claim that the source code is worth hundreds of millions of dollars.  If creation of the source code was well within the ability of the skilled artisan, why would someone pay hundreds of millions of dollars for Adams specific code?  If Adams' source code contains trade secrets above and beyond what is necessary to practice Adams' patented inventions, which gives the code this extraordinary value, Dell should not be denied the opportunity to fully prepare its case and have the full opinion of its expert witness after examining Adams' source code.

Adams' source code is also relevant to the issue of whether a best mode exists and was disclosed in Adams' patents.  "The purpose of the best mode requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of the inventions they have in fact conceived."[46]  Only the claimed invention, however, is subject to the best mode requirement.[47]  To apply the best mode standard, a court must first determine whether an inventor had a best mode of practicing the claimed invention.[48]  This determination turns on the inventor's own subjective beliefs.[49]  "[T]he second part of the analysis [asks] ... has the inventor 'concealed' his preferred mode from the 'public'?"[50]  Judge Mayer has stated the test as follows:

> [A] proper best mode analysis has two components.  The first is whether, at the time the inventor filed his patent application, he knew of a mode of practicing his claimed invention that he considered to be better than any other.  This part of the

---

[46] *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1330 (Fed. Cir. 2002)
[47] *Randomex, Inc. v. Scopus Corp.*, 849 F.2d 585, 588, (Fed.Cir.1988) ("It is concealment of the best mode of practicing the claimed invention that section 112 ¶ 1 is designed to prohibit."); *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001) ("[T]he extent of information that an inventor must disclose depends on the scope of the claimed invention.").
[48] *United States Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996).
[49] *Id.*
[50] *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 928 (Fed. Cir. 1990).

inquiry is wholly subjective, and resolves whether the inventor must disclose any facts in addition to those sufficient for enablement. If the inventor in fact contemplated such a preferred mode, the second part of the analysis compares what he knew with what he disclosed – is the disclosure adequate to enable one skilled in the art to practice the best mode or, in other words, has the inventor "concealed" his preferred mode from the 'public'? Assessing the adequacy of the disclosure, as opposed to its necessity, is largely an objective inquiry that depends upon the scope of the claimed invention and the level of skill in the art.[51]

Adams' source code that existed at the time Adams applied for its patents is obviously relevant to the issue of whether Dr. Adams subjectively knew of a mode of practicing his claimed inventions superior to the mode(s) disclosed in the patents in suit. An examination of the source code may reveal that Dr. Adams had a mode of practicing the claimed inventions that was not disclosed in his patents. The source code existing at the time of patenting is most likely to evidence what Dr. Adams actually believed was the best way to practice his claimed inventions.

### 3. *Dell's Need of Adams' Source Code*

Adams' first patent was filed in 1992. As both best mode and enablement are determined as of the date each patent application was filed, it is reasonable to believe that the passage of 16 years may limit the amount of reliable information in support of Dell's defense on these issues. Additionally, an expert's assistance becomes more important to explain the state of the technology at the time of application. Of course, Adams' source code is not the only evidence that can be used to build a case for nonenablement or lack of a best mode.

### 4. *Prior Rulings by this Court: The Gateway Case*

The foregoing analysis yields a result inconsistent with this court's past rulings in the litigation between Adams and Gateway concerning the same source code. In that case, the court

---

[51] *Id.*

rejected Gateway's assertion that Gateway's expert *must* examine the source code.[52] The court found under the facts of that case that the potential for abuse and lack of good faith on *Gateway's* part weighed against disclosure in that case. It was Gateway's conduct in that case that warranted the exceptional determination that relevant information not be disclosed.

In this case, however, the court does not have the same reasons to believe that the protective measures in place are inadequate to prevent improper use of Adams' source code if it is disclosed to Dell's expert under the safeguards of the Protective Order. This examination on these central issues is necessary.

### B. *Protective Order Places the Burden on the Objecting Party*

Finally, Dell contends that Adams has failed to follow the procedure that the Protective Order prescribes for successfully objecting under these circumstances. Specifically, Dell argues that Adams fails to specify the harm that may result from disclosure to Dell's independent expert and that, even if potential harms exist, Adams failed to state why the current protective order was not sufficient to protect against them.

Adams' argument for not following the Protective Order's procedures is that the source code is not relevant. However, Adams has produced the source code in discovery which seems to argue against the relevance objection. The procedure set forth in the stipulated Protective Order for objecting to disclosure to independent experts in these circumstances was not followed. There is no reason to allow Adams to bypass specifically stating the anticipated harm it expects from disclosure to Dell's independent expert and why it believes the current protective order is insufficient in this case. Reference to the Gateway case does not alleviate Adams of this obligation. Moreover, conclusory statements that disclosure would be "devastating" and

---

[52] Adams' Memorandum in Support of Motion to Preclude Dell from Disclosing the Adams Source Code (Memorandum in Support), docket no. 583 at Exhibit C, filed July 11, 2008. Adams disagreed with Gateway's contention that case precedent warranted a blanket rule of relevance *requiring* disclosure.

11

represent a "major tragedy" are not enough, especially in light of Adams admission that it does not make any commercial products.

## V.     ORDER

IT IS HEREBY ORDERED that the motion to preclude[53] Defendant Dell, Inc. from disclosing to its independent expert Adams' source code is DENIED as to the source code that existed at the time Adams' applied for its patents.

Dated this 19th day of November, 2008.

BY THE COURT

_____
Magistrate Judge David Nuffer

---

[53] Motion to Preclude, docket no. 582, filed July 11, 2008.