IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>    vs.<br><br>DELL INC., et al.<br><br>    Defendants.<br><br>SONY ELECTRIC INC., a Delaware corporation,<br><br>    Third-Party Plaintiff,<br><br>    vs.<br><br>WINBOND ELECTRONICS CORPORATION, et al.,<br><br>    Third-Party Defendants. | MEMORANDUM DECISION AND ORDER DENYING WINBOND'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br>Case No. 1:05-CV-64 TS |

Winbond Electronic Corporation (Winbond) moves for Partial Summary Judgment holding that, as a matter of law, no liability exists under 35 U.S.C. § 271(a), (b), (c), and (g) for its alleged infringement of Plaintiff's '002 and '222 patents[1] because (1) all of the activities alleged to constitute the infringement occurred outside of the United States; or (2) all of the alleged activities do not give rise to infringement under these sections.

Plaintiff contends that partial summary judgment should be denied because there are issues of fact. In addition, Plaintiff moves for a continuance to conduct additional discovery pursuant to Fed. R. Civ. P. 56(f).

The Court denied a similar motion by several of the other Defendants who raised many of the same arguments as Winbond.  However, unlike that prior Motion,[2] in the present Motion Winbond submits affidavits that set forth where it has tested some of its products in the relevant time frame and denying that *one* of its companies (Winbond Electronics Corporation Israel), tested *its* products for the particular error that the '002 and '222 patents address.[3]  Winbond also proffers as an uncontroverted material fact that it "never tested a product constituting or including a floppy diskette controller to determine the presence of an underrun error within the United States."[4]

---

[1] U.S. Patent Nos. 5,983,002 ('002 patent) and 6,401,222 ('222 patent).

[2] *See* Docket No. 337 (Def.s' Mot. for Partial Summary Judgment of Non-Infringement) and Docket No. 447 (Memorandum Decision denying same).

[3] *Compare* Winbond's Mem.'s Ex. A (Levy Decl.) *with* Ex. D (Chao-Huang Pai Decl.).

[4] Winbond's Mem. ¶ 5, at 8.  *Compare* Docket No. 477 (Memorandum Decision and Order Denying Motion for Partial Summary Judgment on the same issues raised herein and noting lack of proffered uncontested facts supporting Defendant's

Reviewing the Motion, it is readily apparent that Winbond's position that its alleged actions are not infringing is largely predicated on its version of the disputed claim construction issues. Similarly, Plaintiff's position that there are current facts, or facts to be discovered, that show Winbond's actions infringe the patents is dependent on Plaintiff's own version of claims construction.[5]

An example of how the parties' positions are partially dependent on the eventual claims construction is shown by the dispute over the Rule 56(f) Affidavit. Plaintiff's counsel recites that the fact discovery his client is seeking will "demonstrate that Winbond misappropriated Adams' patterns in the design, engineering, *manufacturing* and quality control of its products," and "that Winbond . . . pirated Adams' patented technology and *embedded* it in Winbond's FDC chips."[6] Winbond contends that this Affidavit does not show how the discovery will be relevant because Plaintiff's position regarding infringement based on Winbond having embedded the patent claims into the Super I/O chips is impossible because the claims can only relate to "testing" defective Floppy Disc controllers (FDCs), not to allegedly infringing but non-defective Winbond FDCs. However, under Plaintiff's interpretation of the claim terms, a redesigned FDC that incorporates the remedy could be covered by the patent.[7]

---

arguments).

[5]*E.g.*, Pl.'s Mem. at 2-4 (arguing Winbond's interpretation of the claims of the patents are incorrect).

[6]Docket No. 421, Rule 56(f) Decl. at ¶ 5(a) and (b) (emphasis added).

[7]*See* Special Master's Report at 31-33, 36 (discussing competing interpretations).

Winbond further argues that the processes claimed by the '002 and '222 patents are not part of the manufacturing process and, therefore, as a matter of law there is no liability under 35 U.S.C. § 271(g).[8]  This argument is also dependent on Winbond's position on claim construction.  In making its argument, Winbond relies on cases holding that information obtained from a patented process that is used only as a predicate to determine what product to manufacture is not used in the manufacture of the product itself as required for coverage by §271(g).[9]  Winbond argues that because Plaintiff's patented process only gathers information, it is not used to manufacture a physical "product" within the meaning of § 271(g), and therefore, there is no liability.

Plaintiff, however, argues that the product made by its patented process is a computer with data corruption-free FDC chips.  Plaintiff further argues that its process (method) claims are an integral part of the computer manufacturing process, because, among other reasons, they are an integral embedded part of the computer components.  Plaintiff also argues that testing, detecting, and verifying as those terms used in its patents

---

[8]Providing: "Whoever . . . imports into the United States or offers to sell, sells, or uses within the United States *a product* which is *made by* a process patented in the United States shall be liable as an infringer, . . ." (emphasis added).

[9]*E.g. Bayer AG v. Housey Pharmaceuticals, Inc.*, 340 F.3d 1367, 1377-78 (Fed. Cir. 2003) (holding that to be "made by a process patented in the United States," "the process must be used directly in the manufacture of the product, and not merely as a predicate process to identify the product to be manufactured.  A drug product, the characteristics of which were studied using the claimed research processes, therefore, is not a product 'made by' those claimed processes."); *Synaptic Pharmaceutical Corp. v. MDS Panlabs, Inc.*, 265 F. Supp. 2d 452, 457-62 (D. N.J. 2002) (holding that test results from patented assay tests performed outside the country are not a product which is made by a process patented in the United States).

4

are not limited to information gathering only.  Plaintiff's position is partly based on its interpretation, discussed above, that a non-defective FDC that incorporates Plaintiff's claimed solutions is covered by its patents.

It appears there are both issues of fact and issues of claim interpretation to be resolved before Winbond's argument of no liability as a matter of law can be addressed. For example, if the testing is performed as part of the manufacture of Winbond's non-defective FDCs, under Plaintiff's interpretation of the claim terms, the resulting product might be made by the patented process even if the process is not ultimately part of the physical product, namely a computer with data corruption-free FDC chips.[10]

Similarly, if the patent solution is embedded in Winbond's non-defective FDCs during their manufacture, under Plaintiff's interpretation of the claim terms, the resulting product may infringe.

Having reviewed all of Winbond's arguments, the Court finds that Plaintiff has shown that as to each argument raised by Winbond, there are either issues of fact regarding the alleged infringement of the '002 and '222 patents under 35 U.S.C. § 271(a), (b), (c), and (g) for its alleged infringement, or that  Plaintiff has met its burden under Rule 56(f) of showing the need for further discovery to establish the issues of fact, or the matter cannot be resolved until the final claims construction.  Accordingly, Plaintiff has shown it is entitled to the further discovery before it should have to respond to the present Motion.

---

[10]*Compare OKI America, Inc. v. Advanced Micro Devices, Inc.*, 2006 WL 2711555, at *13-14 (N.D. Cal. Sept. 21, 2006) (unpublished decision) (denying partial summary judgment on § 271(g) liability where the product is derived from a processing step).

Although resolution of Winbond's arguments for partial summary judgment are partially dependent on the upcoming resolution of claims construction, the Court will not continue to defer resolution of this Motion pending the final claims construction. The complexity of this case resulted in the unavoidable postponement of the entire claims construction process,[11] with the proceedings beginning before the Special Master in mid-2008. Although the parties submitted an unprecedented number of terms for construction, the Special Master conducted his proceedings and filed his Report a month ahead of the target date. The parties have now filed their Objections and Responses to the Special Master's Report and Recommendation, and the claims construction is ready for determination. At the same time, the Court finds that Plaintiff's request for additional discovery is properly supported with affidavits as required by Rule 56(f).[12]

The Court finds that the denial of the present Motion should be without prejudice to re-raising issues, if warranted, after the parties have the benefit of the final claims construction and the Rule 56(f) discovery. This will allow an opportunity to address the issues anew in the context of the final claims construction.[13] It is therefore

---

[11] *See* Docket No. 636 Report and Recommendation of Special Master Regarding Claim Construction (Special Master's Report), at 1-2.

[12] *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993) (explaining when affidavits properly support a Rule 56(f) motion)).

[13] The Order denying the other Defendants' Motion for Partial Summary on these same issues was without prejudice to re-visiting, if warranted, the issues when discovery on the underlying issues is complete.

ORDERED that the Plaintiff's Rule 56(f) request to permit additional discovery[14] is GRANTED.  It is further

ORDERED that Winbond's Motion for Partial Summary Judgment of Non-Infringement (Docket No. 408) is DENIED without prejudice

DATED   March 3, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[14]Docket No. 418, at 39-42.