# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>FUJITSU LIMITED, FUJITSU AMERICA, INC., MPC COMPUTERS, LLC, SONY ELECTRONICS INC., WINBOND ELECTRONICS CORP., ASUSTEK COMPUTER, INC., ASUS COMPUTER INTERNATIONAL, QUANTA COMPUTER, INC, QUANTA COMPUTER USA, INC., QUANTA MANUFACTURING, INC., MICRO-STAR INTERNATIONAL CORPORATION, LTD., MSI COMPUTER CORPORATION, NATIONAL SEMICONDUCTOR CORPORATION,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER:**<br>• **DENYING [870] HEWLETT-PACKARD COMPANY AND THI LA'S MOTION TO QUASH ASUSTEK'S DEPOSITION SUBPOENAS**<br>• **GRANTING HEWLETT-PACKARD COMPANY AND THI LA'S REQUEST TO SHIFT COSTS**<br>• **GRANTING ASUSTeK'S [903] MOTION TO COMPEL DEPOSITIONS AND PRODUCTION OF DOCUMENTS FROM HP AND THI LA**<br><br>Civil No. 1:05-CV-64 TS<br><br>The Honorable Ted Stewart<br>Magistrate Judge David Nuffer |
| And Related Third-Party Claims | |

This order resolves non-parties Hewlett-Packard Company (HP) and Thi La's Motion to Quash ASUSTeK Computer, Inc. and ASUS Computer International's (collectively, ASUSTeK) June 30, 2009 deposition subpoena to HP and July 8, 2009 deposition subpoena to Thi La.[1] HP and Thi La's motion is DENIED in that the subpoenas are not quashed. However, HP's request for cost-shifting[2] is granted. This order also grants ASUSTeK's Motion to Compel Depositions

---

[1] Non-Parties Hewlett-Packard Company and Thi La's Motion to Quash ASUSTeK's Deposition Subpoenas, docket no. 870, filed July 27, 2009.

[2] Memorandum of Supporting Authorities Re: Non-Parties Hewlett-Packard Company and Thi La's Motion to Quash Asustek's Deposition Subpoenas (HP Memorandum 871) at 17-18, docket no. 871, filed July 27, 2009.

and Production of Documents from HP and Thi La,[3] including the July 24, 2009 subpoena served on HP and Thi La.

## I. Introduction

In the late 1980s, Dr. Phillip Adams identified a defect in the NEC 765A floppy disk controller (FDC) which was present in most personal computers.[4] Dr. Adams believed that the defect in the FDC could cause the random destruction or corruption of data without proper notification to the user that data had been destroyed, which potentially could lead to serious consequences.[5] Since his discovery of the defect, Dr. Adams has devoted substantial amounts of time and effort to developing various solutions for FDC defects.[6] Dr. Adams decided to patent the computer technology resulting from his development efforts, filing the first patent application in 1992.[7] To date, at least five patents have been issued as the result of Dr. Adams' efforts.[8] Each of those patents has been purportedly assigned to Phillip M. Adams & Associates LLC (Adams), the Plaintiff in this case.[9]

The FDC-related defects have given rise to multiple lawsuits over the past several years, one of which culminated with a $2.1 billion class-action settlement. In the aftermath of that class-action settlement, interest in Adams' technology apparently increased. Alleged misuse of that technology has given rise to Adams' instant lawsuit against ASUSTeK and a number of other companies in the computer industry.

"HP and Compaq Computer Corporation (Compaq) were defendants in several lawsuits alleging that they sold computers containing defective floppy disk controller (FDC)

---

[3] ASUSTeK's Motion to Compel Discovery from Hewlett-Packard Company and Thi La and for Expedited Briefing and Treatment by the Court, docket no. 903, filed August 14, 2009.
[4] Second Amended Complaint at 3, docket no. 222, filed January 4, 2007.
[5] *Id.*
[6] *Id.* at 2.
[7] U.S. Patent No. 5,379,414
[8] Second Amended Complaint at 2, docket no. 222, filed January 4, 2007. The United States patents identified by Adams, *i.e.* the patents-in-suit, are as follows: 5,379,414 titled "Systems and Methods for FDC Error Detection and Prevention" ("the '414 patent"); 5,983,002 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '002 patent"); 6,401,222 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '222 patent"); 6,195,767 titled "Data Corruption Detection Apparatus and Method" ("the '767 patent"); and 6,687,858 entitled "Software-Hardware Welding System" ("the '858 patent").
[9] Second Amended Complaint at 3, docket no. 222, filed January 4, 2007.

technology."[10] "By an agreement dated May 1, 2000, HP licensed Adams' patented technology and retained Dr. Adams as a non-testifying, consulting expert in its FDC litigation."[11] "Between May 2000 and January 2001, HP worked with Adams to implement his fix for the alleged FDC error that was the subject of its FDC litigation. In August 2000, HP released its first free software fix for the alleged FDC error."[12] Compaq entered into a licensing agreement with Dr. Adams in October 2002.[13] In May 2008, an Oklahoma state court approved a global settlement releasing HP and Compaq of all FDC actions.[14]

## II. Nature of the Discovery Dispute

ASUSTeK manufactured motherboards that were used in HP products.[15] ASUSTeK says that Adams claims that ASUSTeK obtained copies of Adams' patented programs from HP.[16] ASUSTeK believes it sent programs to HP entitled iFdc.exe and w2sec.exe in January 2000, "long before HP had obtained any programs from Dr. Adams."[17] The time when these files were sent is important because Adams claims that "ASUSTeK stole and copied Dr. Adams' programs that he provided to HP."[18] If ASUSTeK sent the allegedly infringing files before Adams had provided these programs to HP then ASUSTeK could not have stolen the copy of the program Adams provided to HP. Adams asserts that ASUSTeK infringed Adams' patents two ways:

1. ASUSTeK imported allegedly infringing detectors, iFdc.exe/w2sec.exe/w4sec.exe, into the United States; and

---

[10] Non-Parties Hewlett-Packard Company and Compaq Computer Corporation's Opposition to Sony's Motion to Compel at 3, docket no. 834, filed under seal, June 29, 2009.
[11] *Id.*
[12] *Id.*
[13] *Id.* at 4.
[14] *Id.* at 3.
[15] Combined Memorandum (1) Supporting ASUSTeK'S Motion to Compel Discovery from Hewlett-Packard Company and Thi La; and (2) Opposing Hewlett-Packard Company's and Thi La's Motion to Quash Deposition Subpoenas (ASUSTeK Memorandum 904) at 7, docket no. 904, filed August 14, 2009.
[16] *Id.* at 2.
[17] *Id.*
[18] *Id.* at 7.

3

2. Sam Yang, an ex-employee of ASUSTeK, traveled to HP's Cupertino facility in March 2000 and induced HP to infringe Adams' patent by using ASUSTeK's infringing detectors on HP products.[19]

ASUSTeK requests that HP and Thi La, a former HP employee, "provide documents and testimony regarding communications between HP and ASUSTeK involving Adams, his patents, the Toshiba litigation which concerned the same FDC-related errors at issue in this case, and test programs or utilities used to address the last-byte FDC error."[20] ASUSTeK served HP with a subpoena for deposition on June 30, 2009[21] and a subpoena for document production on July 24, 2009.[22]

ASUSTeK served Thi La with a subpoena for deposition on July 8, 2009,[23] and a subpoena for document production on July 24, 2009.[24] The same information ASUSTeK seeks from HP, ASUSTeK also seeks from Thi La "in her individual capacity as well as more generally information Ms. La may possess about HP/ASUSTeK communications."[25] ASUSTeK believes "Thi La has knowledge of HP's interactions with ASUSTeK related to" Adams' claims against ASUSTeK.[26]

HP and Thi La move to quash the ASUSTeK subpoenas, asserting that ASUSTeK has already sent or received the information sought, and that HP and Thi La should not be responsible to locate and produce the information.[27]

---

[19] Adams' Notice of Preliminary Infringement Contentions and Claim Charts and Inability to Prepare Final Infringement Contentions and Claim Charts (Adams' Notice) at Exhibit A, page 9, docket no. 688, filed under seal, January 5, 2009.
[20] ASUSTeK Memorandum 904, at 6.
[21] HP Memorandum 871 at Exhibit A, page 2.
[22] *Id.* at Exhibit L, page 10.
[23] *Id.* at Exhibit C, page 2.
[24] *Id.* at Exhibit L, page 24.
[25] HP Memorandum 871, at 2.
[26] ASUSTeK Memorandum 904, at 3.
[27] HP Memorandum 871, at 1-2.

## III. Discussion

Fundamental principles regarding discovery apply to these motions. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[28]

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . [T]he court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.[29]

"Relevancy, under this rule has been broadly construed to encompass 'any possibility that the information sought may be relevant to the claim or defense of any party.'"[30] "When the discovery requested appears relevant, the burden is on the party objecting to show discovery is not relevant."[31]

HP and Ms. La argue that ASUSTeK has violated its duty under Fed. R. Civ. P. 45(c)(1) by "requir[ing] HP and Ms. La to assume the burden and expense of providing ASUSTeK with information it necessarily already obtained."[32] HP and Ms. La persuasively argue that "if a communication between HP and ASUSTeK occurred in the past, ASUSTeK necessarily already received or sent any such communication. Otherwise, there would be no such communication. Likewise, if ASUSTeK provided HP with a 'test program or utilit[y],' it must have already had the program."[33]

---

[28] Fed. R. Civ. P. 45(c)(1).
[29] Fed. R. Civ. P. 26(b)(1).
[30] *Combe v. Cinemark USA, Inc.*, 2009 WL 3584883, at *2 (D. Utah Oct. 26 2009) (*quoting EEOC v. Sheffield Financial LLC*, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007)).
[31] *Combe*, 2009 WL 3584883, at *2 (*citing EEOC v. Sheffield Financial LLC*, 2007 WL 1726560, at *3).
[32] Reply Memorandum in Support of Non-Parties Hewlett-Packard Company and Thi La's Motion to Quash Asustek's Deposition Subpoenas and Hewlett-Packard Company and Thi La's Opposition to Asustek's Motion to Compel Depositions and Production of Documents (HP Memorandum 922) at 2, docket no. 922, filed August 21, 2009.
[33] *Id.* at 4.

ASUSTeK argues the information sought "is unavailable because of the passage of almost ten years since the operative actions in this case."[34] This court has already determined that "ASUSTeK would be expected to have communications with its customers about the FDC error issue."[35] Both parties are aware of this court's opinion of ASUSTeK's data retention policies, or lack thereof.[36] It must be with extreme reluctance that ASUSTeK is now asking for information which it sent or received. ASUSTeK argues that the passage of time created its inability to collect these documents from within its own company.[37] But the same amount of time has passed for HP and Ms. La as for ASUSTeK. ASUSTeK correctly asserts that Adams's contentions put communications between ASUSTeK and HP/Ms. La at issue;[38] however, these are still communications to which ASUSTeK, at least at one point, had access. ASUSTeK also submits that "ASUSTeK has *not* obtained the information that it now seeks."[39] This assertion, that ASUSTeK has not obtained the information it seeks from HP and Ms. La, does not address the question of what happened to the information after ASUSTeK **originally sent or received** the requested information.

ASUSTeK argues that HP has access to this information. ASUSTeK also asserts that "counsel for HP indicated that HP produced documents in FDC related cases in the late 1990s and early 2000s and that all of these documents are indexed and in boxes in a warehouse" but HP "has failed to even look at the index for these boxes to see if they contain any information that would be responsive to ASUSTeK's subpoenas"[40] ASUSTeK believes it has provided HP with

---

[34] ASUSTeK Memorandum 904, at 1.
[35] Memorandum Decision and Order: Granting in Part [492] Motion for Terminating Sanctions Against ASUS Based Upon ASUS' Spoliation of Evidence of Its Piracy; Granting in Part [559] Motion to Strike; and Denying [604] Motion to Strike (Motion for Terminating Sanctions) at 22, docket no. 731, filed March 30, 2009.
[36] *See generally* Motion for Terminating Sanctions.
[37] ASUSTeK Memorandum 904, at 1.
[38] *Id.* at 6-7.
[39] *Id.* at 1 (emphasis in original).
[40] *Id.* at 4.

email communications between HP and ASUSTeK to help HP understand the types of information that ASUSTeK is seeking.[41] ASUSTeK also asserts that HP's counsel indicated that "HP has had contact with Thi La and that Thi La has knowledge of HP's interactions with ASUSTek related to alleged FDC errors in 1999 and 2000."[42]

The information sought in the subpoenas is relevant to ASUSTeK's claim, and is likely to lead to the discovery of admissible evidence. HP and Ms. La will be required to comply with the ASUSTeK subpoenas.

**IV.　Cost Shifting**

ASUSTeK has the responsibility to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[43] Because ASUSTeK's information retention policies have created the need for the disputed discovery, ASUSTeK has created undue burden or expense on HP and Thi La in the subpoenas. Rule 45 provides a way to mitigate the burden that ASUSTeK seeks to impose.

HP and Ms. La request ASUSTeK be required to pay all of HP's and Ms. La's costs.[44] A non-party required to produce documents or materials should be protected against significant expense resulting from involuntary assistance to the court.[45] "Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties."[46] "Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an

---

[41] *Id.* at 3-4.
[42] *Id.* at 3.
[43] Fed. R. Civ. P. 45(c)(1).
[44] HP Memorandum 871, at 17.
[45] Fed. R. Civ. P. 45(c) 1991 advisory committee's note. "The court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs. In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been produced, provided that the risk of uncertainty is fully disclosed to the discovering party." *Id.*
[46] *U.S. v. CBS, Inc.*, 666 F.2d 364, 371 (9th Cir. 1982).

unreasonable share of the costs of a litigation to which they are not a party."[47] The 1991 amendment to Rule 45 converted the court's pre-amendment discretionary authority of shifting costs to a mandatory obligation.[48]

"[W]hat constitutes an undue burden in a given instance is a case specific inquiry."[49] Leading authorities say factors considered in determination of undue burden on a nonparty may include relevance; the need of the party for the documents; the particularity with which the documents are described; the extent to which the producing party must separate responsive from privileged or irrelevant matter; the burden imposed; the possibility of decreasing the burden through an appropriate protective order; the financial resources of the nonparty; the interest, if any of the nonparty in the final outcome of the litigation; and the reasonableness of the expenses involved in making the production.[50] In addition, other factors might include any relationship of the nonparty to the parties; whether the requesting party at one point had the documents and failed to preserve or produce those documents; and any voluntary acts of the non-party which involve the non-party in the subject of the suit.

As explained above, the discovery requested could bear significantly on ASUSTeK's defense. To defend against Adams' assertion that ASUSTeK stole Adams' file from HP ASUSTeK is trying to prove it sent programs to HP entitled iFdc.exe and w2sec.exe in January 2000, "long before HP had obtained any programs from Dr. Adams."[51] ASUSTeK has great need for the subpoenaed information. Further, ASUSTeK describes the requested information with sufficient particularity to lessen the burden on HP and Thi La. ASUSTeK asserts that HP's

---

[47] *Id.*
[48] *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (stating that a non-party must "be 'protect[ed] . . . from significant expense in producing the requested documents.") (alteration in original).
[49] *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (*citing* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2449, at 48 & nn. 32-33 (2d ed. 1995)).
[50] The Sedona Principles Best Practices Recommendations & Principles for Addressing Electronic Document Production 119-20 (Jonathan M. Redgrave et al. eds., Pike & Fisher 2005 Annotated Version).
[51] ASUSTeK Memorandum 904 at 2.

counsel has already suggested that it has documents filed in boxes that relate to the information ASUSTeK is now seeking.[52]

On the other hand, giving ASUSTeK access to information it should already possess is burdensome to both HP and Thi La. HP may have some residual interest in this litigation because some of the claims involve HP's license with Adams, but Thi La has no interest in the final outcome of this litigation. ASUSTeK's failure to retain should not justify passing the cost of production of that information to third parties.

Nonparty HP and Ms. La should be reimbursed for the costs of producing the subpoenaed information. HP and Ms. La must, however, use the most efficient method for completing production. Attorneys should not do the work that can just as easily be done by a legal assistant, or clerical workers supervised by a legal assistant.

The court will require HP and Ms. La to make a good faith estimate of the cost of the production within 14 days of the date of this order and provide that estimate to counsel for ASUSTeK. Within 14 days thereafter, ASUSTeK may reduce the scope of the request if it desires. HP and Ms. La are ordered to comply with the subpoena, as modified by any further reductions by ASUSTeK, within twenty-eight days after the deadline for ASUSTeK to provide any modifications. HP and Thi La, after production, may present their claimed final actual cost to the court and file a motion for determination of cost shifting. This order does not determine the extent of cost-shifting.

---

[52] *Id.* at 4.

# ORDER

IT IS HEREBY ORDERED that non-party HP and Ms. La's motion[53] to quash ASUSTeK's subpoena is DENIED.

IT IS FURTHER ORDERED that HP and Thi La's request to shift costs is GRANTED.

IT IS FURTHER ORDERED that ASUSTeK's motion[54] to compel discovery pursuant to the July 24, 2009 subpoena, the June 30, 2009 (HP) subpoena, and the July 8, 2009 (Thi La) subpoena is GRANTED.

March 17, 2010.

_____
Magistrate Judge David Nuffer

---

[53] Non-Parties Hewlett-Packard Company and Thi La's Motion to Quash ASUSTeK's Deposition Subpoenas, docket no. 870, filed July 27, 2009.
[54] ASUSTeK's Motion to Compel Discovery from Hewlett-Packard Company and Thi La and for Expedited Briefing and Treatment by the Court, docket no. 903, filed August14, 2009.