IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>FUJITSU LIMITED, FUJITSU AMERICA, INC., MPC COMPUTERS, LLC, SONY ELECTRONICS INC., WINBOND ELECTRONICS CORP., ASUSTEK COMPUTER, INC., ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORPORATION, LTD., MSI COMPUTER CORPORATION, NATIONAL SEMICONDUCTOR CORPORATION,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART SONY ELECTRONICS INC.'S MOTION TO COMPEL ADAMS' INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS**<br><br>Case No. 1:05-CV-64 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

Defendant's Sony Electronics Inc.'s (Sony) Motion to Compel Adams' Interrogatory Responses and Production of Documents[1] is referred to the magistrate judge. After carefully considering the filings, Sony's Motion is GRANTED IN PART as provided herein.

## BACKGROUND

In the late 1980s, Dr. Phillip Adams identified a defect in the NEC 765A floppy disk controller (FDC) which was present in most personal computers.[2] Dr. Adams believed that the defect in the FDC could cause the random destruction or corruption of data without proper notification to the user that data had been destroyed, which potentially could lead to serious

---

[1] Sony Electronics Inc.'s Motion to Compel Adams' Interrogatory Responses and Production of Documents, docket no. 802, filed, June 11, 2009.

[2] Second Amended Complaint at 3, docket no. 222, filed January 4, 2007.

consequences.³ Since his discovery of the defect, Dr. Adams has devoted substantial amounts of time and effort to developing various solutions for FDC defects.⁴ Dr. Adams decided to patent the computer technology resulting from his development efforts, with the first patent application being filed in 1992.⁵ To date, there have been at least five patents issued as the result of Dr. Adams' efforts.⁶ Each of those patents has been purportedly assigned to Phillip M. Adams & Associates L.L.C. (Adams), the Plaintiff in this case.⁷

The FDC-related defects have given rise to multiple lawsuits over the past several years, one of which culminated with a $2.1 billion class-action settlement. In the aftermath of that class-action settlement, interest in Adams' technology apparently increased. Alleged misuse of that technology has given rise to Adams's instant lawsuit against a number of companies in the computer industry.

Sony Electronics Inc. served Adams with its First Set of Interrogatories on January 24, 2006, and its Second Set of Interrogatories on July 13, 2006.⁸ Adams responded to the first set on March 15, 2006 and the second set on August 25, 2006.⁹ Sony was not satisfied with Adams's responses and the parties have met in an attempt to reach an agreement about the

---

³ *Id*.

⁴ *Id.* at 2.

⁵ U.S. Patent No. 5,379,414

⁶ Second Amended Complaint at 2, docket no. 222, filed January 4, 2007. The United States patents identified by Adams, *i.e.* the patents-in-suit, are as follows: 5,379,414 titled "Systems and Methods for FDC Error Detection and Prevention" ("the '414 patent"); 5,983,002 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '002 patent"); 6,401,222 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '222 patent"); 6,195,767 titled "Data Corruption Detection Apparatus and Method" ("the '767 patent"); and 6,687,858 entitled "Software-Hardware Welding System" ("the '858 patent").

⁷ *Id.* at 3.

⁸ Memorandum in Support of Sony Electronics Inc.'s Motion to Compel Adams' Interrogatory Responses and Production of Documents (Memorandum in Support) at 2, docket no. 819, filed under seal, June 11, 2009.

⁹ *Id.* at 3.

disputed discovery requests.[10] Sony has also sent two letters to Adams describing what Sony believes to be the inadequacies of Adams's responses.[11] Sony filed this motion to compel the production of information and documents Sony believes are central to the development of evidence.

## DISCUSSION

### Interrogatories

<u>No. 4</u>

Interrogatory No. 4 states:

For each claim [asserted against Sony], specifically IDENTIFY the date(s) of conception, diligence and reduction to practice, each PERSON involved in such conception, diligence and reduction to practice, the location and circumstances of the conception, diligence and reduction to practice, and all DOCUMENTS tending to establish or refute or tending to IDENTIFY the dates, locations, individuals or circumstances sought in this interrogatory.[12]

Adams responded that "Adams has provided all the specificity presently available . . . in the narrative of previous responses."[13] Sony believes this response is inadequate, and that Adams's "cut and pasted" response from the prior *Gateway* litigation is inadequate because during the *Gateway* case "two of the five patents-in-suit were not even at issue."[14] Sony requests "specific dates of conception for each asserted claim" and believes Adams has failed to provide

---

[10] *Id.*

[11] *Id.* Ex. P-Q attached to the Memorandum in Support.

[12] *Id.* at 6-7.

[13] Adams' Response to Sony Electronics Inc.'s Motion to Compel Adams' Interrogatory Responses and Production of Documents (Opposition Memorandum) at vii, docket no. 832, June 29, 2009.

[14] Memorandum in Support at 7.

such information.[15] This interrogatory "seeks information [Sony says is] critical to assessing the validity of Adams' patents under 35 U.S.C. § 102."[16]

Adams objects that interrogatory No. 4 requests information for 40 patent claims, and thus includes 40 subparts.[17] If it does, that is not a definitive basis for objection in this case. The information is central to the case and is far more likely to be efficiently obtained by interrogatory than by any other means.

Adams answered Sony's interrogatory with a history of the research and development of each patent[18] and told Sony that the patents-in-suit have a "continuum of research and development that started . . . approximately 1991, and continued without interruption to the filing of the patents-in-suit."[19] Adams also says the type of information that Sony seeks is unavailable because the activities in question do not start and stop on exact days.[20] Also, because nearly two years had passed since Adams's "last meaningful supplementation" of interrogatory No. 4, Adams believed that Sony was satisfied with Adams's responses until Sony filed this motion.[21]

Sony cites case law to support its position, arguing that Sony is similarly entitled to "the *actual* dates that (Adams) is claiming for conception, as well as definitively state a date that it claims it 'constructively reduced to practice the claimed invention.'"[22] Sony is concerned that Adams current response to Sony's interrogatory No. 4 would allow Adams "to argue whatever

---

[15] *Id.*

[16] *Id*.

[17] Opposition Memorandum at vii.

[18] *Id.* viii; Ex. B attached to Opposition Memorandum.

[19] Opposition Memorandum at viii.

[20] *Id.* at 2.

[21] *Id.* at viii.

[22] Sony's Reply in Support of Sony Electronics Inc.'s Motion to Compel Adams' Interrogatory Responses and Production of Documents (Reply Memorandum) at 2, docket no. 857, filed under seal, July 15, 2009 (quoting *Nazomi Commc'ns Inc. v. Arm Holdings PLC*, No. C 02-02521-JF (RS), 2003 WL 24054504, at *2 (N.D. Cal. Sept. 3, 2003)).

date of conception and reduction of practice suits it depending on the particular issue before the court."[23] A case ruling provides a solution for this dilemma. A magistrate judge ruled that a party responding to an interrogatory similar to interrogatory No. 4 in the present case "need not state specific dates if it in good faith believes it cannot do so, but it shall serve a further response stating with clarity (1) whether it intends to rely on a date or dates of actual reduction to practice that precede the constructive date, and if so, then (2) the approximate date or dates of actual reduction to practice it intends to assert."[24] Adams will be required to do the same as well as supplement its answer to provide a complete response to interrogatory No. 4.

No. 5

Interrogatory No. 5 states:

Explain in detail all reasons why YOU believe [Sony] has willfully infringed each of the patents-in-suit.[25]

Sony desires to know Adams's factual contentions and reasoning for claiming Sony willfully infringed Adams's patents.[26] The Federal Circuit has held that "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness" and that "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[27] Adams's response to interrogatory No. 5 refers to meetings Adams had with Sony in 2001 and 2002, and states that Adams "corresponded with Sony about Sony licensing (Adams's) patented technology," that "Sony was well aware of (Adams's) patents

---

[23] Reply Memorandum at 3.

[24] *Boston Scientific Corp. v. Micrus Corp.* No. C 04-04072 JW (RS), 2007 WL 174475, at *2 (N. D. Cal. Jan. 22, 2007).

[25] Memorandum in Support at 7.

[26] *Id.* at 8.

[27] *In re Seagate Tech. Inc.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

and patented technology" and "Sony chose to infringe."[28] Adams asserts that the evidence uncovered shows that "Sony [is] more than a willful infringer" because Sony "cooperated with its suppliers and induced its suppliers to infringe Adams' patents."[29]

Adams has indicated that it will supplement its response when Sony produces documents that it says Sony is currently withholding based on "frivolous claims of privilege."[30] Sony, however, wants to know what Rule 11 basis Adams had for making a willful infringement claim at the time Adams originally made this claim—not after Adams is able to gather evidence against Sony.

Adams's fourth supplemental response to interrogatory No. 5 cites to a number of papers filed in this lawsuit.[31] Sony believes that such a response is insufficient.[32] "[A] party may not answer an interrogatory be [sic] generally referring to pleadings filed in the case or depositions taken in this or other cases."[33] Also, in *Williams v. Sprint/United Management Co.*, the magistrate judge ruled that "Plaintiffs are not permitted to answer interrogatories by generically referring to the pleadings filed in this case (which currently number in excess of 3700) . . . with no articulation of where this information may be found. Plaintiffs must indicate with specificity where the information can be found."[34]

---

[28] Opposition Memorandum at ix.

[29] *Id.*

[30] *Id*.

[31] *Id.*

[32] Memorandum in Support at 8.

[33] *Lipari v. U.S. Bancorp, N.A.*, No. 07-2146-CM-DJW, 2008 WL 2704473, at *1, (D. Kan. July 8, 2008).

[34] *Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 501 (D. Kan. 2006).

Adams believes it specifically explained its basis for its belief that Sony willfully infringed some of Adams's patents in Adams's initial response to interrogatory No. 5 without generally citing to pleadings.[35]

This case is different than *Williams* because in Adams's supplemental response, Adams did not "generally" or "generically" refer Sony to the pleadings, but *specifically* referred Sony to eleven pleadings that "indicate with specificity where the information can be found."[36] It is possible that Adams's original response sufficiently answers Sony's interrogatory as to the patents that existed at the time of the mentioned meetings.[37] However, Adams does not specify which patents it thinks Sony willfully infringed based on these 2001 and 2002 meetings. Sony argues that some of the patents-in-suit had not even issued by 2002 and that the "string of docket entries referenced by Adams do not even mention two of the five patents-in-suit."[38] Sony wants Adams to answer, "with specificity as to each asserted claim," Adams's contention that Sony has willfully infringed.[39] Sony is entitled to this information, and Adams will be required to specify on a patent-by-patent basis its contention of willful infringement for each of the five patents-in-suit.

No. 7

Interrogatory No. 7 states:

> IDENTIFY separately for the PATENTS-IN-SUIT and all RELATED PATENT(S)/APPLICATION(S) all PRIOR ART, the earliest date of which ADAMS first learned of such PRIOR ART and all PERSONS aware of, including the PERSON(S) who first learned of, each such item of PRIOR ART.[40]

---

[35] Opposition Memorandum at 2-3.

[36] *Williams*, 235 F.R.D. at 501.

[37] Opposition Memorandum at ix.

[38] Reply Memorandum at 3-4.

[39] *Id. at 4*.

[40] Memorandum in Support at 9.

Adams's response to this interrogatory pointed Sony to Adams's patent application for U.S. Patent No. 5,379,414 (the '414 patent).[41] He stated "prior art appears under the heading 'OTHER PUBLICATIONS' in U.S. Patent No. 5,379,414."[42] Sony believes Adams's response to No. 7 to be deficient because that patent publications list would only identify prior art for one of the five patents-in-suit and did not identify the earliest date or person involved in gaining knowledge of this prior art.[43] Also, in Dr. Adams's most recent deposition testimony, he was asked if he believed the 1990 NEC detector to be prior art.[44] Dr. Adams responded that he thinks "many things are prior art"[45] and that "since [he] didn't have [the 1990 NEC detector] at the time, [he] would assume it's prior art."[46] Adams's answer to interrogatory No. 7 to date is therefore not thorough or definitive.

Adams argues that by asking him what he believes is prior art, the interrogatory attempts to relieve Sony of its burden of proving by clear and convincing evidence that something is prior art.[47] The ultimate decision of what is prior art will be made by the trier of fact. Sony desires to identify actual and potential prior art before the close of discovery and is entitled to ask Adams about his views.

Sony defined "PRIOR ART" in its First Set of Interrogatories as "any DOCUMENT, action, or information that actually *or potentially* satisfies any of the prior art provisions of 35

---

[41] Opposition Memorandum at x.

[42] *Id.* at xi.

[43] Reply Memorandum at 5.

[44] Ex. A to Reply Memorandum at 148:18-19.

[45] *Id.* at 149:13

[46] *Id.* at 149:15-16.

[47] Opposition Memorandum at 3-4. See *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996) (accused infringer bore the burden of proving art was prior art by clear and convincing evidence).

U.S.C. §100, et seq., §§ 102 and 103."[48] Sony points out that Adams did not object to this definition.[49] Sony's memorandum, however, claims that "PRIOR ART" is a term defined by Sony to include "(1) NEC's Data Corruption Detector; (2) IBM's detectors and solutions; (3) ErrorNot detector software; (4) IBM's 1984 Diagnostic for Forcing Overrun/Underrun Diskette Checks; (5) IBM's detector for the 765A Defect Detection process; (6) Intel's fix to its floppy diskette controller; (7) NEC's fix to its floppy diskette controller; and (8) National Semiconductor's fix to its floppy diskette controller."[50] But this definition was not in the interrogatory as proposed. Adams asserts that with this list "Sony has identified certain references as prior art and [by this interrogatory] now wants Adams to admit that those references are prior art."[51] Because Sony did not originally include its list of specific items it believes are prior art in its interrogatory Adams is not required to respond as to the date Adams was first aware and who was first aware of those items.

It is clear that Adams and Sony disagree on what is prior or potential prior art. Sony admits that Adams's answer using the agreed definition of "prior art" would not equate to an admission from Adams as to what is or is not prior art.[52] Adams is free to indicate in its supplemental response where it disagrees with Sony's *interrogatory definition* of prior art. But Adams will be required to supplement its answer to this interrogatory by identifying all "PRIOR ART" as Sony defines the term in the interrogatories for each patent-in-suit. Adams's answer should identify the earliest date and person involved in gaining knowledge on Adams's

---

[48] Reply Memorandum at 4. (emphasis in original).

[49] *Id*.

[50] Opposition Memorandum at 3. See also Memorandum in Support at 10-11.

[51] Opposition Memorandum at xi.

[52] Reply Memorandum at 4.

behalf of all "PRIOR ART" of each patent-in-suit. Adams's answer need not identify "PRIOR ART" for any related patent(s)/application(s) as requested in interrogatory No. 7.

No. 12

Interrogatory No. 12 states:

For each claim [asserted against Sony], IDENTIFY the apparatus, product, device, process, method, act or other instrumentality that constituted the first embodiment of each claimed invention and IDENTIFY when it was first described in a printed publication, in public use, offered for sale, or sold, including, without limitation, the date of such printed publication, public use, offer to sell, or sale and identity of the PERSON(S) with knowledge of such printed publication, public use, offer to sell, or sale.[53]

This interrogatory is pertinent because a person is not entitled to a patent if "the invention was . . . on sale in this country, more than one year prior to the date of the application for patent."[54] Failure to mark a patented article with the corresponding patent number may also limit the damages a patentee may recover for alleged patent infringement.[55] Interrogatory No. 12 seeks information on any embodiments Adams has previously used so Sony may determine when these embodiments existed, if they were sold to the public, and if they were marked with Adams's patent numbers.[56]

Adams objects that No. 12 requests multiple pieces of information on multiple patents and as such, includes at least 40 subparts.[57] Again the complexity of the case justifies such an interrogatory. Adams's response does state that the first publication of each patent-in-suit is the publication of the patent itself.[58] Adams also provides the dates for the first offer for license of

---

[53] Memorandum in Support at 11.

[54] 35 U.S.C. § 102(b).

[55] 35 U.S.C. § 287(a).

[56] Memorandum in Support at 11.

[57] Opposition Memorandum at xi.

[58] *Id.* at xii.

each invention.[59] For example, Adams answers that "[t]he first offer for license of the inventions of the '414 and '002 patents was in the presentation to Symantec in 1999."[60] Adams has given similar responses for the other patents-in-suit.[61] However, these answers only partially respond to Sony's interrogatory No. 12 because the response does not specifically state if these offers to license were the first time these patents *were in public use*, offered for sale, or *sold*. Adams has also failed to identify the first embodiment of each of the patents-in-suit. Adams will be required to fully answer Sony's interrogatory No. 12 by providing Sony with the first embodiment of each patent-in-suit and when each invention was first in public use, offered for sale, or sold.

No. 24

Interrogatory No. 24 states:

For any opinions that Dr. Adams may provide at trial including any opinions under Rules 701, 702, 703, or 705 of the Federal Rules of Evidence, provide the following information: (i) a complete statement of all opinions Dr Adams will express and the basis and reasons for them; (ii) the data or other information considered by Dr. Adams in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) a list of all other cases in which, during the previous 4 years, Dr. Adams testified as an expert at trial or by deposition; and (v) Dr. Adams' qualifications, including a list of all publications authored in the previous 10 years.[62]

Adams did not respond to this interrogatory, but objected on grounds that Dr. Adams was not required to provide an expert report because Dr. Adams is not "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."[63] The requested information in interrogatory No. 24

---

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.* at xiii.

[63] *Id. See also* Fed. R. Civ. P. 26(a)(2)(B).

11

seeks the information that is required in an expert report when an expert report is required.[64] The court has already decided that Dr. Adams is not required to provide an expert report.[65] Sony may not use an interrogatory to overcome the lack of a requirement in Rule 26 for Dr. Adams to produce an expert report.

No. 25

Interrogatory No. 25 states:

For each computer readable file relevant to the claims or defenses in this action in Plaintiff's or Phillip M. Adams' possession, custody or control including but not limited to every file named or described during the 30(b)(6) deposition of Plaintiff and any deposition of Phillip M. Adams, identify the name of the file, the version of the file, the creation date of the file, the size of the file, the type of file (*e.g.*, .c, .h, .exe., .pdf), the date(s) the file was produced in this action, to whom it was produced, and the Production number of the file in chart form as shown below. Computer readable files include but are not limited to source code files, object code files, executable files and any associated files such as make files, batch files, script files that are used to build the executable files from the source and/or object files and any prior version of those files. If multiple versions of a file exist that have the same file name, each version shall be separately identified. If a computer file has not been produced, state "Not Produced" in the "Date(s) of Production In This Action" column.[66]

Adams objects stating that "Sony has greatly exceeded the 50 interrogatory limit" because in his deposition, Dr. Adams provided responsive information on approximately four hundred and fifty files.[67] Adams's response to interrogatory No. 25 first identifies four discs that were previously produced and lists the files that are found on these disks.[68] Regarding these four disks, Adams includes the names, types, and production numbers of the files, as well as the dates

---

[64] *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(v).

[65] Memorandum Decision and Order Granting in Part Defendants' Motion to Compel Expert Discovery From Dr. Adams, docket no. 1234, filed March 22, 2010.

[66] Memorandum in Support at 14.

[67] Opposition Memorandum at xiv.

[68] Ex. C to Opposition Memorandum.

the files were produced.[69] Adams identifies to whom the disk was produced for one of these four disks. For the files found on these four disks Adams does not identify the version, creation date, or size of the files.[70] In further response to interrogatory No. 25, Adams provides a list of files from Adams's Deposition Exhibit in the *Gateway* litigation and another list of files produced to Gateway. These two additional responses identify the name, size, and type of the file. They also identify the date the files were produced in the *Gateway* litigation, to whom the files were produced, and the *Gateway* production numbers. But these two responses do not identify version or creation date of each file.

Sony cites to Dr. Adams's deposition testimony in which Dr. Adams admitted that he "produced a copy of the detector . . . that was used specifically to test the Sony products" but that he does not "know which one it was. And so out of completeness, [he] provided everything."[71] Sony hopes to be able to identify the detector Adams used to test Sony computers and believes Sony "could likely show that other Sony computers accused of infringement do not infringe."[72] Providing all of the information requested in this interrogatory "will help Sony identify the detector or detectors used on the forty-nine Sony computers by identifying when certain detectors were created."[73] Knowing the creation date and size of each file will help Sony narrow what files are relevant. Adams will be required to provide this additional information for the files Adams identified.

---

[69] *Id.*

[70] *Id.*

[71] Ex. C to Reply Memorandum at 56:6-15.

[72] Reply Memorandum at 8.

[73] *Id.*

No. 26

>   Interrogatory No. 26 states:
>
>   For each executable file identified in response to Interrogatory No. 25, identify all source files, software tools, executables, binaries, make files, batch files, and script files and instructions necessary to recreate the exact executable files in chart form as shown below.[74]

Adams objects to this interrogatory because he says it contains four hundred and fifty subparts.[75] Adams's answer to this interrogatory refers Sony to Adams's response to interrogatory No. 25.[76] Adams argues that this interrogatory seeks irrelevant information,[77] and that Sony "has provided no reason or justification for this kind of indiscriminate sweep."[78]

Sony has failed to explain how "source files, software tools, executables, binaries, make files, batch files, and script files and instructions necessary to recreate the exact executable files" will assist in this litigation. Sony only says it needs this information to identify the detectors Dr. Adams used on Sony computers so that Sony can show that other Sony computers are non-infringing, and to "enable Sony to determine whether these detectors were in fact produced to Sony in this case or whether they have been spoliated."[79] Sony should be able to accomplish these objectives from Adams's responses to interrogatory No. 25. The burden interrogatory No. 26 would impose on Adams does not justify any incremental value of the information that would be gained by Sony. Adams is not required to provide further response to No. 26.

---

[74] Memorandum in Support at 15.

[75] Opposition Memorandum at xiv.

[76] *Id.* at xv.

[77] *Id*.

[78] *Id.* at 6 ( quoting *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997)).

[79] Reply Memorandum at 8.

No. 28

Interrogatory No. 28 states:

For each contention on pages 28 through 31 of Plaintiff's Preliminary Infringement Contentions dated January 2, 2009, identify in the chart format below every document, including by production number, referred to in the statement "Documents indicate that SONY" and the specific contention to which that document relates and any other facts, documents or witnesses on which Plaintiff intends to rely for each contention and the specific contention to which it or they relate.[80]

Sony desires Adams to identify the documents that Adams used to support its infringement contentions against Sony.[81] In Adams's Preliminary Infringement Contentions, Adams made nineteen infringement contentions against Sony.[82] "Each contention stated that certain unidentified 'Documents indicate' that Sony engaged in allegedly infringing conduct."[83] Sony believes "Adams did not comply with Rule 11 of the Federal Rules of Civil Procedure" because Adams "threw everything but the kitchen sink in its contentions" whether or not Adams had a basis to make these contentions.[84] To ensure Adams complied with its Rule 11 obligation, Sony wants to know what documents Adams relied on to support each "Documents indicate" claim rather than allowing Adams to substantiate its claims after receiving documents from defendants.[85]

Adams's response objects to this interrogatory as duplicative, overly broad, and unduly burdensome.[86] "When Adams and its counsel prepared the infringement contentions, they did

---

[80] Memorandum in Support at 15-16.

[81] Reply Memorandum at 8.

[82] Notice of Preliminary Infringement Contentions and Claim Charts and Inability to Prepare Final Infringement Contentions and Claim Charts, docket no. 688, filed under seal, Jan. 5, 2009.

[83] Reply Memorandum at 9.

[84] *Id.* at 8-9.

[85] *Id.* at 9.

[86] Opposition Memorandum at xv.

15

not note document identifications of the contentions and there is no requirement for such citations . . . . Adams will provide final contentions when it receives the discovery it has requested from the defendants."[87] Adams's states it is "not refusing to provide citations to documents for its infringement contentions" and that "Adams will provide citations to documents in its final contentions."[88] This procedure will provide, at the appropriate time, the information needed.

**Request for Production**

No. 124

Request for Production No. 124 seeks:

Copies of Sue Ann Adams' tax returns for the years 1998 to 2008, including federal, Utah state returns, Nevada state returns, international tax returns, and any other tax returns.[89]

Adams argues that this request "is not sufficiently limited or reasonably calculated to lead to the discovery of admissible evidence and is overly broad and unduly burdensome."[90] Adams also believes that the request is irrelevant to this lawsuit and also duplicative because Dr. Adams has already produced his tax returns to Sony.[91] Sony requests productions of Mrs. Adams's tax records because "this Court previously ruled in the *Adams v. Gateway* case that . . . Dr. Adams' tax returns were both relevant and discoverable because of particular terms of agreements between Adams and Hewlett-Packard Co." and that just because Mrs. Adams "did not perform any consulting work for [Hewlett-Packard] . . . does not mean that her personal tax returns do not

---

[87] *Id.*

[88] *Id.* at 7.

[89] *Id.* at xvi.

[90] *Id.*

[91] *Id.*

16

reflect an amount received for licensing fees or royalties."[92]  The argument is not compelling because Sony fails to provide any support for this speculation that Hewlett-Packard revenues have leaked into Mrs. Adams's tax returns.

"[C]ourts have been reluctant to order [the production of tax returns] [because of] the private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns."[93]  To help encourage honest filings, "a more stringent standard for discovery of tax returns applies than the general standard of relevance for discovery in Fed. R. Civ. P. 26(b)(1)."[94]  Some courts have established a two-part test for a requesting party to prevail on a motion to compel production of tax returns: "(1) the tax returns must be relevant to the subject matter of the action, and (2) a compelling need must exist because the information is not readily obtainable from a less intrusive source."[95]  "The requesting party bears the burden of establishing both relevancy and a compelling need for the tax returns."[96]

The relevance of Mrs. Adams's tax returns to the subject matter of this action is speculative.  Sony has admitted that Mrs. Adams "did not perform any consulting work for HP or Compaq and is not personally a party to either agreement."[97]  Also, Sony has not established the existence of a compelling need because the information is not readily obtainable from a less intrusive source.  Sony wants to know if Mrs. Adams's tax returns show that she was paid

---

[92] Reply Memorandum at 9-10

[93] *Smith v. Bader*, 83 F.R.D. 437, 438 (D.C.N.Y. 1979).

[94] *Gates v. Wilkinson*, No. 03-CV-763 GLS/DRH, 2005 WL 758793, at *1 (N.D.N.Y. April 5, 2005).

[95] *Sadofsky v. Fiesta Prods., LLC,* 252 F.R.D. 143, 149 (E.D.N.Y. 2008).

[96] *Id.*

[97] Reply Memorandum at 10.

licensing fees or royalties.[98] Sony could have asked Adams if she did. Adams is not required to produce Mrs. Adams's personal tax returns.

## ORDER

IT IS HEREBY ORDERED that Sony's motion[99] to compel interrogatory responses and production of documents is DENIED IN PART and GRANTED IN PART. On or before April 30, 2010, Adams will supplement its responses to interrogatories Nos. 4, 5, 7, 12, and 25. Adams will not be required to supplement its responses to interrogatories Nos. 24, 26, and 28. Adams will not be required to produce documents requested in request for production No. 124.

Dated this 29th day of March, 2010.

BY THE COURT

_____
Magistrate Judge David Nuffer

**Note:** For the convenience of the reader this document contains hyperlinks to electronic research resources. No endorsement of any product is implied by such links.

---

[98] *Id*.

[99] Sony Electronics Inc.'s Motion to Compel Adams' Interrogatory Responses and Production of Documents, docket no. 802, filed, June 11, 2009.