## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>FUJITSU LIMITED, FUJITSU AMERICA, INC., MPC COMPUTERS, LLC, SONY ELECTRONICS INC., WINBOND ELECTRONICS CORP., ASUSTEK COMPUTER, INC., ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORPORATION, LTD., MSI COMPUTER CORPORATION, NATIONAL SEMICONDUCTOR CORPORATION,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART WINBOND ELECTRONICS CORPORATION'S MOTION TO COMPEL DISCOVERY FROM PLAINTIFF**<br><br>Case No. 1:05-CV-64<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |

Winbond Electronics Corporation's (Winbond) Motion to Compel Discovery from Plaintiff[1] is referred to the magistrate judge. After carefully considering the filings, Winbond's motion is GRANTED IN PART as provided herein.

## BACKGROUND

In the late 1980s, Dr. Phillip Adams identified a defect in the NEC 765A floppy disk controller (FDC) which was present in most personal computers.[2] Dr. Adams believed that the defect in the FDC could cause the random destruction or corruption of data without proper notification to the user that data had been destroyed, which could potentially lead to serious

---

[1] Winbond Electronics Corporation's Motion to Compel Discovery From Plaintiff, docket no. 864, filed July 22, 2009.

[2] Second Amended Complaint at 3, docket no. 222, filed January 4, 2007.

consequences.[3]  Since his discovery of the defect, Dr. Adams has devoted substantial time and effort to developing various solutions for FDC defects.[4]  Dr. Adams decided to patent the computer technology resulting from his development efforts, with the first patent application being filed in 1992.[5]  To date, there have been at least five patents issued as the result of Dr. Adams's efforts.[6]  Each of those patents has been purportedly assigned to Phillip M. Adams & Associates L.L.C. (Adams), the Plaintiff in this case.[7]

The FDC-related defects have given rise to multiple lawsuits over the past several years, one of which culminated with a $2.1 billion class-action settlement.  In the aftermath of that class-action settlement, interest in Adams' technology apparently increased.  Alleged misuse of that technology has given rise to Adams' instant lawsuit against a number of companies in the computer industry (collectively Defendants).

Winbond believes that Adams's production of documents and electronically stored information did not comply with the Federal Rules of Civil Procedure.  Winbond also requests that Adams answer Winbond's interrogatories.  Adams asserts that its production complied with the Federal Rules of Civil Procedure and that Winbond's interrogatories are either unduly burdensome or exceed the court allowance of 50 interrogatories because some of the interrogatories contain multiple subparts.

---

[3] *Id.*

[4] *Id.* at 2.

[5] U.S. Patent No. 5,379,414.

[6] Second Amended Complaint at 2, docket no. <u>222</u>, filed January 4, 2007. The United States patents identified by Adams, *i.e.* the patents-in-suit, are as follows: 5,379,414 titled "Systems and Methods for FDC Error Detection and Prevention" ("the '414 patent"); 5,983,002 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '002 patent"); 6,401,222 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '222 patent"); 6,195,767 titled "Data Corruption Detection Apparatus and Method" ("the '767 patent"); and 6,687,858 entitled "Software-Hardware Welding System" ("the '858 patent").

[7] *Id.* at 3.

**Discussion**

In the current motion Winbond requests that the court compel Adams to:

(1) produce all documents and things that disclose or embody Adams' asserted patents and alleged trade secrets . . . in native format, organized as they are kept on [Dr. Adams'] computer, and maintaining the metadata and file trees found on his computer;

(2) produce emails and other documents as ordinarily kept, with Bates numbers and provide an index for those documents, or in the alternative, produce documents . . . pursuant to Fed. R. Civ. P. 34(b)(2)(E);

(3) search and produce or log all documents from prior litigations [sic] responsive to Winbond's and other defendants' document requests; and

(4) fully answer Winbond's interrogatories 14-46, without objection.[8]

### I. Discovery of asserted patents and alleged trade secrets in native format, organized as they are kept on Dr. Adams's computer

Winbond submitted its third set of requests for production (RFP) to Adams on April 17, 2009.[9] Winbond claims that RFP Nos. 37 and 40, "requested all of [Adams's] programs, including source code, in their native format as kept by Dr. Adams:"[10]

No. 37:
All documents constituting or containing source code, executable code, code portions, description of code, plans, designs, or architecture of hardware or software that Dr. Adams has either created or has in his possession, custody, or control relating to any of the ADAMS patents, ADAMS technology, or ADAMS trade secrets. All such documents, including code, must be produced in their original, native format.[11]

---

[8] Winbond Electronics Corporation's Memorandum in Support of Its Motion to Compel Discovery from Plaintiff (Memorandum in Support) at 3, docket no. 865, filed July 22, 2009 (formatting altered).

[9] Winbond Electronics Corporation's Third Set of Requests for Production of Documents (Third Set of Requests for Production) at 13, attached as Ex. C to Memorandum in Support.

[10] Memorandum in Support at 4.

[11] Third Set of Requests for Production at 12.

<u>No. 40:</u>
Documents sufficient to show all of the directories and files related to such requests, the relationship of the directories and files within the directories, and the names and hierarchies of the directories and files, for each of Dr. Adams' or Plaintiff's computers containing, storing, or with information related to documents requested in Requests for Production Nos. 13 through 39 above.[12]

Winbond correctly asserts that it specified the form in which Adams was to produce the documents requested in RFP No. 37. However, Winbond does not specify the form in which Adams is to produce the documents requested in RFP No. 40. Winbond believes that if Adams produces computer files as they are kept in Dr. Adams's computers, Winbond will be able to see creation dates of the programs and files as well as the organization and relationship between all files.[13] Winbond believes that the files currently produced in hard copy are difficult or impossible to effectively review and analyze.[14] Winbond states that "computer code in paper or non-native form can be time consuming to review at best and useless, at worst."[15] Winbond also claims that Adams has not produced important files that would help Winbond understand and analyze Adams's technology claims, such as the "load" files and "make" files.[16]

The facts about Dr. Adams's file maintenance are not clear. According to Winbond, "Dr. Adams has testified that he maintains the relevant software programs and source code on his computer and that those files are organized in file trees and folders that include information such as each program's date of creation."[17] However, the testimony that Winbond cites to as its basis for this claim does not support Winbond's argument. During deposition, Dr. Adams admitted

---

[12] *Id.* at 13.

[13] Winbond Electronics Corporation's Reply in Support of Its Motion to Compel Discovery from Plaintiff (Reply Memorandum) at 3, docket no. <u>929</u>, filed August 24, 2009.

[14] Memorandum in Support at 4.

[15] Reply Memorandum at 4.

[16] *Id.* at 2.

[17] Memorandum in Support at 4.

that "in the case of the HP deliverables [he has] a tree that has folders that represent dates."[18]

However, when Dr. Adams was later asked if he maintains file trees for other files that indicate

dates of creation, Dr. Adams answered "I do not believe I do. . . . it's not federally regulated.  I

do not need to from any legal standpoint.  I chose not to."[19]

Adams believes its document production is sufficient because "Adams never agreed to a

wholesale production of the documents at issue in their native format."[20]  Winbond cites to an

email to show that Adams "agreed to exchange certain documents, such as source code, in

electronic format."[21]  But Winbond misstates the content of the cited email.  In the email,[22]

Winbond is asking Adams to agree to certain restrictions on how Adams may use and view

Winbond's information.  Never in the cited email does Adams agree to send its source code in

electronic format.

Adams explains that throughout this litigation multiple parties, including IBM and Dell,

have taken the "lead in inspecting and collecting documents from Adams."[23]  During this

production defendants collected Adams's software "including Adams' source code and hundreds

of computer files with executables or programs."[24]  Adams also asserts that it has "produced [to

defendants] the most important element of [its] software development, [its] source code, in

native format."[25]

---

[18] Phillip M. Adams' deposition  at 201:25-202:2, Ex. F to Memorandum in Support, docket no. 868, filed under seal, July 22, 2009.

[19] *Id.* at 203:1-5.

[20] Adams' Response to Winbond Electronics Corp.'s Motion to Compel Discovery from Plaintiff (Opposition Memorandum) at 3, docket no. 894, filed August 10, 2009.

[21] Reply Memorandum at 4.

[22] Email dated Oct. 31, 2008 from Vasilios Dossas to Gary Ma attached as Ex. Y to Reply Memorandum.

[23] Opposition Memorandum at vii.

[24] *Id*.

[25]*Id.* at ix-x.

A party, in its discovery request, "may specify the form or forms in which electronically stored information is to be produced."[26]  Winbond's RFP No. 37 specifies that Adams was to produce all code in its original, native format.[27]  In *Lawson v. Sun Microsystems, Inc.*, because "Defendant ha[d] not indicated to the Court that it objected to Plaintiff's format request . . . Defendant [] [was required to] produce to Plaintiff all electronically stored information in electronic format."[28]  Adams provides no evidence that it objected to Winbond's request for production and will therefore be required to produce what is requested in No. 37 in the form that Winbond requested.  Although Adams has provided this information in other forms to other parties in the past, Winbond is an individual party to this suit and is entitled to request the form or forms in which Adams should produce electronically stored information.  Adams will be required to produce the information requested in RFP No. 37 in the form requested by Winbond.

RFP No. 40 does not specify any form or forms in which Adams is to produce the information.  If Adams has previously produced the requested documents relating to RFP No. 40, then Adams will not be required to supplement its production of RFP No. 40.  Adams may select the form of production.

Winbond also believes Dr. Adams's old computers could have other relevant files that Adams has not previously produced, and believes Adams should be required to search these computers.[29]  Adams argues it would take Adams hundreds of hours to locate and search all the

---

[26] Fed. R. Civ. P. 34(b)(1)(C).

[27] Opposition Memorandum at ix.

[28] *Lawson v. Sun Microsystems, Inc.*, No. 1:07-cv-0196-RLY-TAB, 2007 WL 2572170, at *5 (S.D. Ind. Sept. 4, 2007).

[29] Reply Memorandum at 2.

computers Dr. Adams has used since the late 1980s.[30]  Adams claims it "used each of those computers to produce archives (backups) from which Adams made its production."[31]

The broad discovery rules permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[32]  A court must limit the extent of discovery allowed under this Rule if "the burden or expense of the proposed discovery outweighs its likely benefit."[33]  Specifically as to computer data, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."[34]

The court is unable to determine whether the burden of making Adams search all of Dr. Adams's old computers will outweigh the likely benefit.  The parties draw opposite conclusions on whether Adams has sufficiently searched, archived, and produced information on Dr. Adams's old computers.  Adams has asserted that it has archived and produced the relevant information from Dr. Adams's old computers.[35]  Winbond, and other defendants, feel Adams has either withheld or not produced important and discoverable documents.[36]  For example, Adams did not produce a spreadsheet that showed results of tests Dr. Adams had conducted on Sony computers until Sony submitted a motion to compel the production of such spreadsheet.[37]  Winbond also claims Adams only recently provided a similar spreadsheet that showed results

---

[30] Opposition Memorandum at x.

[31] *Id.* at 3.

[32] Fed. R. Civ. P. 26(b)(1).

[33] Fed. R. Civ. P. 26(b)(2)(C)(iii).

[34] Fed. R. Civ. P. 26(b)(2)(B).

[35] Opposition Memorandum at 3.

[36] Memorandum in Support at 7.

[37] *Id*.

from tests Adams ran on Winbond products.[38]  Winbond, justifiably, wants to know what other information could be on Dr. Adams's old computers.

The 2006 amendment to Rule 34 expressly permits testing and sampling of electronically stored information.[39]  "The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances."[40]  To determine if the archives Adams has created for Dr. Adams's old computers are adequate, and to test Winbond's assertion that more useful data may be available, Adams will be required to produce an inventory of Dr. Adams's previous computers which contained data described in RFP No. 37.  The inventory shall include the computer make and model; serial number; storage devices and capacity of the storage devices associated with the computer; dates the computer was in service; by whom it was used; a general description of the uses of the computer; any archive or backup related to the computer; a summary of the type of data on the computer; and the current location and custodian of the computer.  If the number of computers on the inventory list is less than ten, Winbond may then make a selection of one computer, or Winbond may select two computers if the number of computers on the inventory list is ten or greater.  Adams will then be required to produce the directories and file structure contained on the selected computer(s).  After the sampling, Winbond may move the court for further discovery if Winbond feels the sampling yields something significant.

---

[38] *Id.* at 8.

[39] Fed. R. Civ. P. 34(a)(1) 2006 advisory committee's note.

[40] *Id.*

## II. Production of Documents in Compliance with Fed. R. Civ. P. 34(b)(2)(E)(i) and with Bates Numbers

Winbond is not satisfied with the way Adams produced its documents because "[t]he vast bulk of Adams' documents were only 'made available for inspection'" and because Adams did not provide Bates numbers for its documents.[41]  Winbond also does not think that Adams produced its documents as they are kept in the ordinary course of business[42] and believes it has the same right as the other defendants "to an organized and complete production from Adams."[43] Winbond claims it will "never fully know what documents Adams has produced until documents are produced in an organized manner"[44] and desires Adams to organize and label its production to correspond to the categories in Winbond's requests.[45]

Adams asserts that it "has produced the documents at issue as it keeps them in the ordinary course of business, and such a production does not require Bates numbers, an index, or organization and labeling to correspond with document request categories."[46]  Adams also points out that it has produced over 100,000 pages of documents with Bates numbers.[47]  Adams further asserts that Winbond "briefly attended" only one of the multiple document productions, and that the parties that attended the document productions "had absolutely no problem with how Adams produced its documents."[48]

---

[41] Memorandum in Support at 6.

[42] *Id.* at 9-10.

[43] Reply Memorandum at 7.

[44] Memorandum in Support at 10.

[45] *Id.* at 9.

[46] Opposition Memorandum at 5.

[47] *Id.*

[48] *Id.* at 5-6.

"A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."[49]  At issue is whether Adams produced its documents as they are kept in the usual course of business.  If it did not, then Adams would be required to organize and label the production to correspond to the categories in Winbond's request.  Adams says it has produced its documents as they are kept in the ordinary course of business.  The parties that attended the document production seem to be sufficiently satisfied with the organization of Adams's production.  Winbond is apparently the only dissatisfied party.  To require Adams to go back and reproduce voluminous documents is a burden that likely will outweigh the anticipated benefit.  Adams is therefore not required to organize and label its production to correspond to the categories in Winbond's requests.

## III.     Production of Documents Related to Prior FDC Litigation

Winbond requests that Adams produce documents related to prior FDC litigation. Winbond asserts that "Adams has made at least the *Toshiba* class action lawsuit and the *Gateway* case relevant by constantly referring to the 'Toshiba settlement' and events in the *Gateway* case in pleadings and interrogatory responses."[50]  Winbond, for example, believes discovery from previous FDC litigation will enable Winbond to challenge Adams's damages expert's assumptions and conclusions.[51]  Adams claims that it is logging all documents it has withheld on the basis of privilege, and that the information from these lawsuits has no legitimate connection to the current suit and "will not lead to any admissible evidence."[52]

---

[49] Fed. R. Civ. P. 34(b)(2)(E)(i).

[50] Memorandum in Support at 12.

[51] Reply Memorandum at 7.

[52] Opposition Memorandum at 8.

If Adams is withholding otherwise discoverable information on the grounds of privilege, Adams is required to disclose that information in a privilege log.  Federal Rules of Civil Procedure 26(b)(5)(A) states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must:
>
> (i)     expressly make the claim; and
>
> (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim.

Adams will not be required to produce a privilege log for prior FDC litigation.  The voluminous documents related to prior FDC litigation are highly likely to be privileged, and therefore, would not be "otherwise discoverable."  However, Adams will be required to conduct a search of prior FDC litigation, and produce any document that is not privileged but that is responsive to Winbond's requests for production.

## IV.    Compelling Adams to Answer Winbond's Interrogatories 14-46

Interrogatories Nos. 14-30

On November 25, 2008, this Court ordered Adams to provide Final Infringement Contentions by January 2, 2009.[53]  In those contentions, Adams indicated that there are documents that show Winbond infringed Adams's patents.[54]  Adams has not identified the documents that prove its contentions and Winbond believes Adams contentions were filed in bad faith.[55]

Adams asserts that "[w]hile the contentions are extremely detailed and complete, they are preliminary, and they do not include citations" because "counsel did not note which

---

[53] Memorandum in Support at 13.

[54] *Id.*

[55] *Id.* at 13-14.

particular piece of evidence supported each contention." [56]  Adams has explained that it will specify which documents support its claims in its expert reports and final claim charts. [57]  This procedure will provide, at the appropriate time, the information needed.  Adams is not required to answer interrogatories Nos. 14-30.

Interrogatories Nos. 31-46

Adams objects to interrogatories Nos. 31-46 on the grounds that Winbond exceeded its allotment of interrogatories. [58]  Interrogatories 31-33 all seek "the reasons why Adams denies requests for admissions that ask Adams to admit that the documents it produced to other defendants are true and accurate copies of documents in its possession." [59]  Winbond desires to know whether documents which Adams directed Winbond to obtain from other defendants, came from Adams's files or somewhere else. [60]

Adams admits that "[s]ome of the documents that Adams produced came from sources other than Adams, including from defendants' own websites and publicly available documents, and Adams has no ability to vouch for the authenticity of these documents." [61]  Winbond has not requested that Adams vouch for the authenticity of documents but instead wants to know if documents marked with certain Bates numbers are "true and accurate copies of documents [in] ADAMS' possession, custody, or control and produced or made available in discovery by ADAMS during this litigation." [62]

---

[56] Opposition Memorandum at v.

[57] *Id.*

[58] *Id.* at xii.

[59]  Memorandum in Support at 15.

[60] *Id.* at 16.

[61] Opposition Memorandum at xi.

[62] Reply Memorandum at 9.

Interrogatory No. 31 refers to over 100 documents and Adams therefore believes that it includes at least 100 subparts.[63]  Interrogatories Nos. 32 and 33 ask for similar admissions on documents produced and expand the number of documents from hundreds to thousands.[64]  Adams also believes that "interrogatory, No. 34, on its face has 91 subparts."[65]  Because Adams believed Winbond's interrogatory No. 31 had multiple subparts, Adams objected to answering interrogatories Nos. 31-46 on the grounds that Winbond had exceeded its interrogatory limit.[66]  Despite this belief, Adams selectively provided answers for interrogatories Nos. 37, 38, 44, 45, and 46.[67]

If interrogatories Nos. 31-34 each have subparts, that is an insufficient basis for objection in this case. The information is central to the case and is far more likely to be efficiently obtained by interrogatory than any other means.  The complexity of the case justifies such an interrogatory.  Also, answers to interrogatories Nos. 31-34 could help Winbond organize the production that Winbond has already received and believes to be disorganized.  Interrogatories Nos. 35 and 36 relate to Adams's patent infringement claim and trade secret misappropriation claim, respectively.[68]  Winbond only provides the text of interrogatories Nos. 14-36 and fails to provide the text of interrogatories Nos. 37-46.  Adams may not object to answering interrogatories Nos. 31-46 on the grounds that Winbond has exceeded its limit because of subparts in Nos. 31-34.  Adams has already provided answers to interrogatories Nos. 37, 38, and

---

[63] Opposition Memorandum at xii.

[64] *Id*.

[65] *Id.* at xiii.

[66] *Id.*

[67] *Id.*

[68] Adams' Response to Winbond Electronics Corporation's Third Set of Interrogatories (Nos. 14-36) attached as Ex. X to Memorandum in Support at 18-19.

44-46.[69]  Winbond believes Adams's answers to Nos. 37, 38, and 44-46 to be deficient; however, Winbond offers no argument as to why Adams's responses are deficient.[70]  Adams is required to fully answer interrogatories Nos. 31-46.  If Adams objects to any of these interrogatories it must be on grounds other than the subparts Adams believes to be in Nos. 31-34.

## ORDER

IT IS HEREBY ORDERED that Winbond's motion[71] to compel discovery from Plaintiff is DENIED IN PART and GRANTED IN PART.  On or before April 11, 2010, Adams will be required to produce the information requested in RFP No. 37 in the form requested by Winbond and RFP No. 40 in the form selected by Adams, to provide Winbond with an inventory of Dr. Adams's old computers, and to respond to interrogatories Nos. 31-46.  Adams will also be required to conduct a search of prior FDC litigation, and produce any document that is not privileged but that is responsive to Winbond's requests for production.  Adams will not be required to organize and label its production to correspond to the categories in Winbond's requests and will not be required to respond to interrogatories Nos. 14-30.

Dated this 8th day of May, 2010.

BY THE COURT

_____

Magistrate Judge David Nuffer

---

[69] Opposition Memorandum at xiii.

[70] Memorandum in Support at 16.

[71] Winbond Electronics Corporation's Motion to Compel Discovery from Plaintiff, docket no. 864, filed July 22, 2009.