IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>SONY ELECTRONICS INC., WINBOND ELECTRONICS CORP., ASUSTEK COMPUTER, INC., ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORPORATION, LTD., MSI COMPUTER CORPORATION, MPC COMPUTERS, LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING ADAMS'S MOTION FOR TERMINATIONG SANCTIONS AGAINST MSI, MOTION TO AMEND COMPLAINT, AND OTHER RELIEF**<br><br>Civil No. 1:05-CV-64 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |
| And Related Third-Party Claims | |

Plaintiff Phillip M Adams & Associates (Adams) brings this motion[1] to add claims against defendants Micro-Star International Corporations, Ltd. and MSI Computer Corporation (collectively MSI). After carefully reviewing the parties' memoranda, Adams's motion is DENIED.

## BACKGROUND

In the late 1980s, Dr. Phillip Adams identified a defect in the NEC 765A floppy disk controller (FDC) which was present in most personal computers.[2] Dr. Adams believed that the defect in the FDC could cause the random destruction or corruption of data without proper

---

[1] Adams' Motion for Terminating Sanctions Against MSI, Motion to Amend Complaint, and Other Relief, docket no. 836, filed June 30, 2009.
[2] Second Amended Complaint at 3, docket no. 222, filed January 4, 2007.

notification to the user that data had been destroyed, which could potentially lead to serious consequences.[3] Since his discovery of the defect, Dr. Adams has devoted substantial time and effort to developing various solutions for FDC defects.[4] Dr. Adams decided to patent the computer technology resulting from his development efforts, with the first patent application being filed in 1992.[5] To date, there have been at least five patents issued as the result of Dr. Adams's efforts.[6] Each of those patents has been purportedly assigned to Phillip M. Adams & Associates L.L.C. (Adams), the Plaintiff in this case.[7]

The FDC-related defects have given rise to multiple lawsuits over the past several years, one in 1999 which culminated with a $2.1 billion class-action settlement. In the aftermath of that class-action settlement, interest in Adams's technology apparently increased. Alleged misuse of that technology has given rise to Adams's instant lawsuit against a number of companies in the computer industry.

MSI manufactures and supplies motherboards for computer manufacturers such as Gateway. Adams believes that information it has acquired from a January 2009 deposition of a Gateway employee Salah Din (Din deposition) and a May 2009 deposition of MSI's founder and 30(b)(6) witness Jeans Huang (Huang deposition) made Adams aware that MSI misappropriated Adams's trade secrets.[8]

---

[3] *Id*.
[4] *Id.* at 2.
[5] U.S. Patent No. 5,379,414.
[6] Second Amended Complaint at 2, docket no. 222, filed January 4, 2007. The United States patents identified by Adams, *i.e.* the patents-in-suit, are as follows: 5,379,414 titled "Systems and Methods for FDC Error Detection and Prevention" ("the '414 patent"); 5,983,002 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '002 patent"); 6,401,222 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '222 patent"); 6,195,767 titled "Data Corruption Detection Apparatus and Method" ("the '767 patent"); and 6,687,858 entitled "Software-Hardware Welding System" ("the '858 patent").
[7] *Id.* at 3.
[8] Plaintiff's Memorandum in Support of Its Motion for (1) Leave to Amend, and (2) Terminating Sanctions Against MSI and Other Relief (Memorandum in Support) at vi-vii, docket no. 837, filed June 30, 2009.

Adams believes that MSI had a duty to preserve FDC-related documents because of the large class-action settlement and because Gateway alerted MSI of the potential for litigation in a letter sent by Gateway to MSI in July 2000.[9] Adams also believes MSI destroyed evidence of MSI's trade secret misappropriation.[10]

### Relief Requested on this Motion

Adams requests leave to amend its complaint to include the following:

- [I]n at least 2000, MSI was using Adams' Detector program to test for defective FDCs.

- The Detector Program was clearly labeled as the property of Adams, and MSI understood it to be so. MSI also knew or had reason to know that the detector program was acquired by improper means.

- Prior to such use, MSI had been warned about the potential for litigation. MSI's President also received two of Dr. Adams' patents.

- MSI destroyed everything associated with its use of the Detector program: the test software, test results, emails and Adams' patents.

- MSI's conduct violated the [Utah Uniform Trade Secrets Act].[11]

Adams further requests that the court grant terminating sanctions in the form of a judgment against MSI, or at a minimum, a strong adverse inference against MSI.[12]

### DISCUSSION

"The court should freely give leave [to amend] when justice so requires."[13] Courts generally will refuse a leave to amend if the amendment is brought after an "undue delay" or will cause the opposing party "undue prejudice."[14] MSI believes that Adams's amendment is brought after an undue delay, and that if Adams is allowed to amend its complaint the amendment will

---

[9] *Id.* at ix.
[10] *Id.* at iii.
[11] Adams' Proposed Amended Complaint ¶¶ 27-31, attached as Ex. A to Adams's motion, docket no. 836.
[12] Memorandum in Support at 9.
[13] Fed. R. Civ. P. 15(a)(2).
[14] *Duncan v. Manager, Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

cause MSI undue prejudice.[15] "Untimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay."[16] Also, waiting to raise an issue until the "eve of trial" has been deemed a basis to deny a motion to amend.[17] MSI argues that Adams should not be able to amend its complaint more than nine months after the deadline for amending pleadings has passed.[18]

### Timeliness

Adams believes its delay in bringing this claim should be excused because, Adams says, it became aware that MSI misappropriated Adams's trade secrets only after the Din and Huang depositions. Gateway's Mr. Din, who MSI asserts is *not* a FDC expert, was asked:

> Q. Were you aware of any test utility other than Dr. Adams' test utility or ASUS's test utility that could detect the error on [the motherboard]?
>
> A. No, I'm not aware of any such utility.[19]

MSI's Mr. Huang, in his deposition, was asked about the "Winbond utility."

> Q. Was the Winbond utility Dr. Adams' utility, sir?
>
> A. I'm sorry, I do not know.[20]

---

[15] MSI's Opposition to Adams' Motion for Terminating Sanctions Against MSI, Motion to Amend Complaint and Other Relief (Opposition Memorandum) at 1, docket no. 860, filed July 20, 2009.
[16] *Id.* (quoting *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1495 (10th Cir. 1995)).
[17] *Id.* at 2 (citing *Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 903 (10th Cir. 1995)).
[18] *Id.* at iii.
[19] Videotaped Deposition of Salah Din at 110, attached as Ex. D to docket no. 840, filed under seal, June 30, 2009 (objection omitted).
[20] Videotape Deposition upon Oral Examination of Jeans Huang at 47, attached as Ex. G to docket no. 840, filed under seal, June 30, 2009 (objections omitted).

MSI believes that Adams had sufficient evidence prior to the Din and Huang depositionsto bring a trade secret misappropriation claim, and that Adams is only using the depositions as an excuse for its failure to bring this new claim at the appropriate time. For example, after the $2.1 billion class-action settlement, on July 26, 2000 Gateway alerted MSI to the FDC error in a letter sent by Gateway to MSI (Gateway Letter). MSI asserts, and Adams does not refute, that Gateway produced this letter to Adams in previous litigation between Adams and Gateway many years ago.[21] The letter stated:

> We have been alerted to a potentially significant defect which may be contained in the products you are scheduled to supply to Gateway for launch in the immediate future. . . . [F]ormer IBM engineer Phillips Adams has developed and patented techniques for detecting and fixing (the error). . . . For your convenience, we have enclosed copies of his patents.[22]

MSI believes that the Gateway Letter makes Adams aware that MSI knew "of only one person" who developed methods for fixing the FDC problem: "Dr. Adams."[23] Also, the Gateway Letter shows that Gateway sent a copy of Adams's patents to MSI.[24]

MSI also believes that an email chain between Gateway and MSI (Gateway Email) gives Adams notice of a claim that MSI misappropriated Adams's trade secrets. This email chain is a compilation of emails that were exchanged between Gateway and MSI around August 1, 2000. The chain was produced to Adams by Gateway by no later than March 2005.[25] The Gateway Email discusses MSI's use of a "Winbond utility" to test for the FDC error on products that were

---

[21] Opposition Memorandum at vii.
[22] July 26, 2000 Letter from Gateway's Angel Mendez to MSI's Joseph Hsu attached as Ex. A to Memorandum in Support (emphasis omitted and paragraphs collapsed).
[23] Opposition Memorandum at vii (quoting Memorandum in Support at 6).
[24] July 26, 2000 Letter from Gateway's Angel Mendez to MSI's Joseph Hsu attached as Ex. A to Memorandum in Support.
[25] Opposition Memorandum at v.

to be shipped to Gateway.[26] The Gateway Email mentions that the "Winbond utility" ran "6000 cycles" to detect errors on the tested product.[27] MSI says the Gateway Email alerts Adams to a potential misappropriation claim against MSI because, according to Adams, "the **only** programs which counted the number of test cycles were those created by Dr. Adams."[28] Even Adams argues that the "Winbond utility" mentioned in the Gateway Email – which Adams had by 2005 – is really Adams's program.[29] MSI correctly argues that if Adams believes that Adams's technology is the only program which counted cycles, the Gateway Email should have been enough evidence to alert Adams to a misappropriation claim as early as 2005.[30]

Adams argues that another reason it did not bring a trade secret misappropriation claim earlier is because Gateway and MSI deceptively labeled the utility used by MSI as the "Winbond utility" to prevent Adams from discovering that MSI was actually using Adams's technology.[31] However, in a previous motion, Adams claimed that ASUS misappropriated Adams's trade secret when ASUS reverse-engineered Adams's test program and then gave this test program to Winbond.[32] Thus, MSI believes that a program being labeled as the "Winbond utility" should have made Adams "more concerned, not less concerned, that Winbond may have given ASUS' [infringing] program to MSI."[33]

MSI points out that the two pieces of evidence that Adams uses to support this new claim are the Gateway Letter and Gateway Email, and that this evidence has "been in plaintiff's

---

[26] Email chain between Gateway and MSI at GW006385, attached as Ex. C to docket no. 840, filed under seal, June 30, 2009.
[27] *Id.*
[28] Memorandum in Support at vii (emphasis in original).
[29] *Id*.
[30] Opposition Memorandum at v.
[31] Memorandum in Support at 1.
[32] Adams' Memorandum in Support of Its Motion for Terminating Sanctions Against ASUS Based upon ASUS' Spoliation of Evidence of Its Piracy at v, docket no. 493, filed April 17, 2008.
[33] Opposition Memorandum at vi.

6

possession for many years."[34] Based on Adams's reliance on the Gateway Letter and Gateway Email, MSI asserts that Adams, at least by March 2005, had "strong evidence that MSI engaged in trade secrets misappropriation."[35] MSI states that the recent depositions in 2009 of Mr. Din and Mr. Huang "did not advance or clarify plaintiff's theory of misappropriation in any way."[36] MSI asserts that Adams's "claimed reliance on the [Din and Huang] deposition testimony is a thinly veiled excuse for [its] unexplained delay to assert this claim."[37] MSI feels Adams is drawing unwarranted conclusions from the deposition testimony.[38] MSI argues Mr. Huang and Mr. Din do not state that MSI used Adams's program.[39]

### Undue Prejudice

MSI believes that adding this claim will cause MSI undue prejudice. Up to this point in this lawsuit, MSI has obtained only limited discoverable information because MSI believed that Adams's counts against MSI would allow Adams to recover only limited damages from MSI.[40] MSI asserts that nearly all of the MSI parts that incorporate components accused of infringement are supplied by co-defendants, and that a resolution of the issue between Adams and the co-defendants "will effectively resolve the entire case against MSI as well."[41]

To defend against the amended complaint, MSI believes it would have to engage in substantial, additional discovery.[42] MSI argues that because discovery is closed in this matter "MSI would be precluded from reasonable and necessary fact and expert discovery."[43] MSI asserts it would need to take discovery from at least Gateway and Winbond particularly to

---

[34] *Id*. at iii.
[35] *Id.* at viii.
[36] *Id*. at iii.
[37] *Id*.
[38] *Id.* at xi.
[39] *Id*. at xi-xii.
[40] *Id.* at 3.
[41] *Id*.
[42] *Id.* at 3-4.
[43] *Id.* at viii.

7

defend against Adams's claim that "MSI was using Adams' Detector program to test for defective FDCs."[44] Adams has claimed that its utility was the only utility that could count cycles.[45] To defend against this claim, MSI believes it would need to take expert discovery to test Adams's theory of misappropriation, and find out if Adams's utility truly is the only technology that can count cycles.[46] MSI argues that this discovery would include depositions, an investigation concerning the "Winbond utility," and discovery regarding the nature and extent of testing done by other parties.[47]

So far in this litigation Adams has not hesitated to bring a thorough list of plausible claims against each defendant. The evidence that Adams primarily relies upon and had in its possession for many years was sufficient for Adams to assert a trade secret misappropriation claim against MSI. The Gateway Letter alerts Adams that Gateway notified MSI of Adams's technology, and that Gateway even sent copies of Adams's patents to MSI. The Gateway Email alerts Adams to the fact that the "Winbond utility" counted cycles. Adams believes his program is the only program that counts cycles. Also, Adams believes ASUS gave an illegal copy of Adams's program to Winbond. This should have made Adams aware that the "Winbond utility" could have been Adams's program. Adams chose not to assert a trade secret misappropriation claim against MSI until 2009. The Gateway Letter and Gateway Email, both of which have been in Adams's possession for many years prior to that date, provide stronger evidence of a trade secret misappropriation claim than the inconclusive statements Adams claims to rely upon in the Din and Huang depositions.

---

[44] *Id.* (quoting Adams' Proposed Amended Complaint ¶ 27, attached as Ex. A to Adams's motion, docket no. 836).
[45] Memorandum in Support at vii.
[46] Opposition Memorandum at x.
[47] *Id.* at 3-4.

Although a court "should freely give leave to amend when justice so requires," Adams's delay in bringing this claim, combined with the prejudice the amendment will cause MSI at this late stage in the case, does not permit Adams to amend its complaint. Because the sanctions Adams has sought are contingent on allowing Adams to amend its complaint, no discussion of the requested sanctions is necessary.

## ORDER

IT IS HEREBY ORDERED that Plaintiff's motion[48] to amend its complaint and for terminating sanctions and other relief is DENIED as provided herein. IT IS FURTHER ORDERED that MSI's motion[49] to file a sur-reply is MOOT. IT IS FURTHER ORDERED that MSI's motion[50] for extension of time to complete discovery is MOOT.

May 26, 2010.

Magistrate Judge David Nuffer

---

[48] Adams' Motion for Terminating Sanctions Against MSI, Motion to Amend Complaint, and Other Relief, docket no. 836, filed June 30, 2009.
[49] MSI's Motion to File Sur-Reply to Adams' Reply in Support of Its Motion for (1) Leave to Amend, and (2) Terminating Sanctions Against MSI and Other Relief and Sur-Reply, docket no. 897, filed August 12, 2009.
[50] MSI's Motion to Extend Discovery as to Adams' Trade Secrets Misappropriation Claim Against MSI, docket no 997, filed September 25, 2009.