IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah Limited Liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WINBOND, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON *IN CAMERA* INSPECTION OF PLAINTIFF'S PRIVILEGE LOG<br><br><br><br>Case No. 1:05-CV-64 TS |

I. Introduction

In granting Winbond's request for *in camera* review of documents on Plaintiff's privilege log, the Court ordered "that Plaintiff shall serve on Winbond an amended privilege log" and that Plaintiff submit certain specified documents "for *in camera* review together with a copy of the amended privilege log."[1] The Court also ordered that Plaintiff "may

---

[1]Docket No. 1241 at 3.

1

submit an optional proffer letter and declaration(s) with its materials for *in camera* review."[2] Plaintiff responded by delivering to the Court the specified materials for *in camera* review, plus an amended privilege log that covered only those documents the Court ordered produced. Plaintiff's proffer letter contains a chart "establishing the identity and relationship of the persons listed therein" as requested by the Court.

## II. Issues

Plaintiff's proffer letter argues that the documents on its privilege log "generally" include communications between Dr. Adams and attorneys that represented Dr. Adams and "various government agencies that cooperated with Dr. Adams to bring Qui Tam actions against various companies"[3] and various matters such as "possible foreign actions addressing defective computers made and sold in foreign countries, and [Dr.] Adams' search for counsel to address possible patent infringement by companies that may have infringed the Adams' patents."[4] Plaintiff argues that the Qui Tam actions, all of which predate the filing of complaint herein, are not related to this patent infringement action because if the computers in those cases were defective, they did not infringe the patents in suit. He also argues that some of the Qui Tam suits did not involve alleged defective floppy disc controllers (FDC's); and that for those that did, the detectors were used to merely screen computers for the various Qui Tam actions to determine if they were

---

[2]*Id.*

[3]Proffer Letter at 1.

[4]*Id.* at 4.

defective. When the detectors were used, Plaintiff alleges that the test was run by inserting a disc in various computers, that running the detector programs did not generate documentation or data, and that Plaintiff was not required to keep any documentation because the detector tests were fully repeatable tests that did not require any documentation.

Winbond argues that the amended privilege log fails to comply with the Court's order because it contains only the documents for *in camera* review, thereby excluding approximately two-thirds of the documents on the original privilege log. Winbond argues that the privilege log fails to adequately state a basis for the claim of privilege or work product and further argues that because Plaintiff failed to submit evidence in support of its claim of privilege or work product, it has failed to meet its burden of proof. Winbond argues that the asserted joint prosecution privilege for some documents relating to several Qui Tam actions is improper. Finally, Winbond disputes Plaintiff's position that the documents related to the Qui Tam action(s) are not relevant to this case. Winbond argues that turnover of all of the documents is appropriate for what it perceives as Plaintiff's failure to support its claim of privilege or work product for the documents.

To begin with, the Court notes that Winbond does not dispute the information on the proffer letter's chart "establishing the identity and relationship of the persons listed" in the privilege log. Therefore, the Court considers that information established.

### III. Incomplete Amended Privilege Log

The Court finds that Plaintiff's submission of an amended privilege log covering only the documents to be submitted for *in camera* review appears to be disingenuous.

3

However, reviewing its prior Order, the Court finds that it may not have been entirely clear that an amended privilege log covering all documents was meant. As a result, sanctions will not be imposed at this time. The present Order is more specific and, in light of the short time remaining before trial, the Court will conduct an *in camera* review of all of the remaining documents on the Amended Privilege Log, thereby eliminating another round of briefing on this issue. Plaintiff, however, is cautioned that any further foot-dragging in complying with Court orders to provide information may result in sanctions.[5]

IV. Law of Privileges and Work Product

Plaintiff asserts the work product doctrine and attorney-client privilege. The applicable law of work product, also called the trial preparation doctrine, and attorney-client privilege is explained in an opinion from the *Gateway*[6] case,

> Attorney-client privilege protects communications to and from attorneys in furtherance of obtaining legal advice. It protects opinions, advice, and direct communications to facilitate opinions and advice.
> Work product privilege protects an attorney's subjective analysis and substantive efforts in, or in anticipation of, litigation from use by the adverse party. It protects trial preparation efforts on behalf of a client.
> Neither privilege is intended to protect underlying or independent facts.[7]

The attorney-client privilege applies where the following elements are met:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the

---

[5] The Court notes that the counsel submitting the amended privilege log has now withdrawn from this case. *See* Docket No. 1320.

[6] *Adams v. Gateway, Inc.*, 2003 WL 23787856 (D. Utah Dec. 30, 2003).

[7] *Id*. at *8.

4

communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.[8]

The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."[9] However, as the Supreme Court has explained:

> The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:
>
>> "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[10]

The "work product privilege is governed . . . by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)."[11] That Rule provides:

> (3) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative

---

[8] *Id.* (quoting 8 John Henry Wigmore, Evidence, § 2292 (McNaughton rev. 1961)).

[9] *Upjohn Co. v. United States,* 449 U.S. 383, 390 (1981).

[10] *Id.* at 395-96 (emphasis in original) (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (D. Pa. 1962)).

[11] *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.* 136 F.3d 695, 702 n. 10 (10th Cir. 1998) (quoting *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)).

5

(including the other party's attorney, consultant . . . or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.[12]

The material at issue in Winbond's request for an *in camera* review is generally factual. As the Federal Circuit has explained:

The work product doctrine is "designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute." Unlike the attorney-client privilege, which provides absolute protection from disclosure, work product protection is qualified and may be overcome by need and undue hardship. However, the level of need and hardship required for discovery depends on whether the work product is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not. Whereas factual work product can be discovered solely upon a showing of substantial need and undue hardship, mental process work product is afforded even greater, nearly absolute, protection.[13]

Discussing the work product privilege, the Supreme Court has explained:

The doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that

---

[12] FED. R. CIV. P. 26(b)(3).

[13] *In re Seagate Tech., LLC,* 497 F.3d 1360, 1375 (Fed. Cir. 2007) (quoting *In re Martin Marietta Corp.*, 856 F.2d 619, 624 (4th Cir.1988)) (internal citations omitted). *Seagate's* discussion of privilege and waiver arose in the context of an issue, advice of counsel, that is not at issue in the present motions. *Accord Frontier Ref.*, 136 F.3d at 704 n. 12 (holding that the "substantial need/undue burden test applies only to fact work product").

6

the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.[14]

[W]ork product protection [is] available only if "the primary motivating purpose behind the creation of the [materials was] to assist in pending or impending litigation." This test restrains the work product privilege to its intended area—the attorney's workplace, in litigation preparation and strategy. It is consistent with the limitations on the privilege recognized in *Hickman*, and the paradigm that the "scope of the privilege should be 'strictly confined within the narrowest possible limits.'"[15]

For a document to be protected under the work product privilege, it must be within the province protected in *Hickman*; it must reflect the thinking of the attorney by being an expression from her, or, if a communication to her, it must reflect back her inquiry. If there is an independent sound reason for the document's creation—a business purpose—and the document does not reflect the assembly and sifting of information by counsel, or preparation and legal strategy, then there should be no "work product" protection.[16]

Even though some of the materials on amended privilege log were created in connection with the Qui Tam cases the "work product doctrine does indeed extend to subsequent litigation."[17]

"The party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable."[18] "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent

---

[14] *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

[15] *Gateway*, 2003 WL 23787856, at *9 (quoting *McEwen v. Digitran Sys. Inc.*, 155 F.R.D. 678, 682 (D. Utah 1994) and citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).

[16] *Id*. at *10.

[17] *Frontier Refining*, 136 F.3d at 704.

[18] *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).

7

law."[19] If the particular material does not relate to an issue of substantive patent law, the Court looks to the law of the Tenth Circuit regarding privilege.[20] In the absence of Tenth Circuit law directly on point regarding work product privilege, the Court looks generally to persuasive case law from other jurisdictions, including the Federal Circuit.

> "The mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice or strategy sought by the client.[21]

Further, as noted above, the "protection extends only to the communications themselves and not to underlying factual information."[22]

"[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion."[23] Thus, work product protection may be waived by the conduct of a party. Applying this fairness doctrine, courts, such as the Second Circuit, have:

---

[19] *In re Seagate Tech.,* 497 F.3d at 1375 (quoting *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001)).

[20] *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006).

[21] *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir.1995)); *see also Southern Utah Wilderness Alliance v. Automated Geographic Reference Ctr. Div. of Info.Tech.*, 200 P.3d 643, 655 (Utah 2008) (holding that under Utah law to "rely on the attorney-client privilege, a party must establish: (1) an attorney-client relationship, (2) the transfer of confidential information, and (3) the purpose of the transfer was to obtain legal advice").

[22] *Upjohn*, 449 U.S. at 395-96.

[23] *Frontier Refining*, 136 F.3d at 704.

recognized that implied waiver may be found where the privilege holder asserts a claim that *in fairness* requires examination of protected communications. Fairness considerations arise when the party attempts to use the privilege both as "a shield and a sword." In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.[24]

In such cases, "unfairness and distortion of process" justifying a finding that the privilege has been waived under the fairness doctrine can arise "when one party advanced a contention to a decisionmaker, such as a court or jury, while denying its adversary access to privileged materials which might have been used to rebut the privilege holder's contention."[25]

Courts applying this "fairness doctrine" have found that, for example, where a party selectively discloses certain privileged or work product material, but withholds similar (potentially less favorable) material, principles of fairness may require a more complete disclosure. What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances.[26]

Rule 26(b)(5) explains the duty of the person withholding information under a claim of privilege:

---

[24]*In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)) (emphasis in original; quotations marks and alteration omitted).

[25]*John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003) (discussing trial court's analysis of *In re von Bulow*, 828 F.2d 94 (2d Cir.1987)).

[26]*William A. Gross Const., Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 361 (S.D. N.Y. 2009) (quoting *RLS Assocs., LLC v. United Bank of Kuwait, PLC,* 2003 WL 1563330, at *2 (S.D. N.Y. Mar. 26, 2003) and *United States v. Nobles*, 422 U.S. 225, 239-40 n. 14 (1975)) (internal quotation marks partially omitted).

(A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

    (i) expressly make the claim; and

    (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.[27]

It does not appear that the Tenth Circuit has had an opportunity to consider the joint prosecution privilege. It has, however, recognized the common interest doctrine in *Frontier Refining*:

That doctrine normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party.[28]

In *Westinghouse Electric Corp. v. Republic of Phillippines*,[29] it was noted that "Courts have also held that the client may disclose communications to co-defendants or co-litigants without waiving the privilege."[30]

In the absence of case law from the Tenth Circuit, this court finds persuasive a case from this district recognizing common interest in a Qui Tam action.[31]

---

[27] FED. R. CIV. P. 26(b)(5)(A).

[28] *Frontier Refining*, 136 F.3d at 705.

[29] 951 F.2d 1414 (10th Cir. 1991).

[30] *Id.* at 1424 (citation omitted).

[31] *United States v. [Redacted]*, 209 F.R.D. 475, 479 (D. Utah 2001).

V. Application to the Present Case

A. Plaintiff has established work product, attorney-client and/or joint prosecution privilege

Plaintiff's obligation under Fed.R.Civ.P. 26(b)(5)(A) is to describe the nature of the things in a manner that protects the information but also enables other parties to assess the claim.[32] In this case Plaintiff has generally met that obligation. The information on the documents aligns with the information disclosed on the amended privilege log. The Court holds that a privilege log is sufficient if it substantially complies with Rule 26(b)(5) and minor omissions and errors will not result in sanctions or the waiver of a privilege or work product doctrine. Thus, the minor error for Document No. 21, that it fails to list one of the attorney recipients of this communication, will not result in its production. Plaintiff, however, shall correct the error in its second amended privilege log.

The Court finds that the documents are, as claimed, work product, attorney-client and/or joint prosecution for which the common interest doctrine should apply. The Court has reviewed the documents claimed as joint prosecution privilege and finds they are privileged.

Many of the documents were work product that was subsequently communicated to counsel in furtherance of obtaining legal advice. Winbond argues that the descriptions in the privilege log do not assert that the documents are for the purpose of obtaining legal advice. Regardless, the Court finds that the descriptions are accurate and that the documents themselves show they are work product or privileged. As to Document No. 2,

---

[32] *Id.*

the description of which Winbond specifically objected to, the Court finds that the document itself, even its title, establishes that it was for the purpose of obtaining legal advice. Many of the other documents were for the purpose of obtaining counsel or about possible legal actions, matters beyond dispute covered by attorney-client privilege. Some of the other documents contain Dr. Adams' personal legal affairs, which the Court finds have no relevance whatsoever to this case.

The Court finds that none of the documents show information disclosed *to* Dr. Adams in connection with this case. Some information is work product disclosed to him by another person, but the disclosure was well before this case was filed in 2005. It appears from the proffer letter that the testing disclosed to him was in connection with the Qui Tam suits. Regardless, it was in August 2000, well before this case was filed in 2005. It is work product which was then communicated to counsel in an attorney-client communication. Dr. Adams individually, not Plaintiff, was the client. Thus, it is not the type of information that Defendants argue elsewhere that Dr. Adams must disclose pursuant to his role as an expert in the present case because it was not communicated to him in connection with this case.

However, some documents, themselves privileged or work product, refer to attached factual matters that are not communications, such as articles. As discussed above, the "protection extends only to the communications themselves and not to underlying factual information."[33] Therefore, if they have not already been produced, Plaintiff shall produce

---

[33] *Upjohn*, 449 U.S. at 395-96.

12

those items of underlying factual information, specifically from Documents Nos. 240, 259, 274, 375, and 376.

Generally, the Court finds that documents regarding the Qui Tam actions are not relevant to this case. However, Winbond, the other Defendants, and Plaintiff all agree that Dr. Adams says he did not keep documentation or data about his tests of computers for the alleged defects except in spreadsheet fashion. Thus, Defendants argue that they do not have any other information on his prior testing and the FDC's defects, or lack of defects, in various computers. They also argue that such information is not available from any other source and is not repeatable by them.

As discussed above, Fed. R. Civ. P. 26(b)(3) provides for the production of otherwise discoverable items that are work product if the party shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[34]

While most of the Qui Tam-related items in the *in camera* documents are not relevant to the present case, some may have some relevance. Those matters consist of some documentation or evidence of the testing in one of two forms. One, the model numbers of the computers tested by or on behalf of Dr. Adams. Two, the actual purchase of an allegedly defective computer. The Court considers that purchasing a computer because it was determined to have an alleged defect is tangible evidence of the testing for such a defect.

---

[34] FED. R. CIV. P. 26(b)(3).

Because the testing using the detector in the Qui Tam cases may be marginally relevant to Dr. Adams' testimony in the present case or to the issue of damages, such information is discoverable under Rule 26(b)(1). Winbond argues in a related matter, and Defendants argue elsewhere,[35] that they have no other source of information about testing because Dr. Adams kept no other notes or records of his testing and analysis of computer and FDCs, they cannot obtain any information about those subjects elsewhere, and they need such information to prepare their cross-examination of Dr. Adams and/or Plaintiff's damages expert. The Court finds that Winbond has shown that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain it elsewhere.

Accordingly, to the extent that they are not already listed on spreadsheets or other information previously produced, Plaintiff shall disclose the model and serial number of the computers tested as listed in the withheld documents. The disclosure need not tie the model and serial number to any particular document listed on the amended privilege log, and instead need only produce the following information in summary form: the date of the test, the model number, and the serial number (if known). If there was tangible evidence of the testing, including the purchase of the computer tested, it shall also be listed.

In addition, the Court will order that Plaintiff will submit for *in camera* review any documents related to the information stated in the third sentence of Document No. 295.

---

[35]Docket No. 1254, at 8.

VI. Conclusions and Order

With a public trial so close, counsel should give serious consideration to the amount of documents still being filed under seal. It appears that many items now filed under seal will be central to trial and the subject of testimony at trial. Under these circumstances, it would be helpful if counsel would reevaluate the number of items that need to remain under seal at this time.

This Order will be filed under seal for 7 days and served only on counsel for Winbond and Plaintiff during that time. If Winbond or Plaintiff seek to have anything herein redacted from the form of this Order that will appear on the public docket, they shall file a notice within those 7 days. The notice shall specify any requested redactions and briefly state the reason. If information appears elsewhere on the public docket it will not be redacted from the public form of this order.

Accordingly, it is therefore

ORDERED that this Order was filed under seal for 7 days and served only on counsel for Winbond and Plaintiff during that time. Winbond or Plaintiff were afforded those seven days to file a notice of any material they wished to redact. Neither filed such a notice and this order may now be placed on the public docket. It is further

ORDERED that within 7 days of the entry of this Order, Plaintiff shall serve on Winbond the items listed above including the underlying factual attachments to Documents Nos. 240, 259, 274, 375, and 376, if not previously produced; and the list of tested computers if not already produced in a spreadsheet form and the list of any allegedly defective computer model purchased as set forth above. It is further

ORDERED that within 7 days of the entry of this Order Plaintiff will submit for *in camera* review, any documents related to the information stated in the third sentence of Document No. 295. It is further

ORDERED that within 7 days of the entry of this Order, Plaintiff shall serve on Winbond and the Court a second amended privilege log listing all of the documents it claims as privileged or work product. Such second amended privilege log shall also include all of the documents from the first amended privilege log. It is further

ORDERED that within 7 days of the entry of this Order, Plaintiff shall submit for *in camera* review all documents listed on the second amended privilege log which have not been previously submitted for *in camera* review. It is further

ORDERED that Winbond may file an optional response within 7 days following its receipt of the second amended privilege log. It is further

ORDERED that Plaintiff's second amended privilege log and *in camera* materials as well as any optional response by Winbond shall be served by hand-delivery to the undersigned's chambers, 350 South Main Street, Rm. 148, Salt Lake City, Utah, clearly marked as SEALED FOR *IN CAMERA* REVIEW. Delivery of the *in camera* documents and any response shall be within business hours unless prior arrangements are made for chambers staff to accept delivery after business hours.

DATED   July 26, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge