IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>WINBOND ELECTRONICS CORPORATION, ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORP., LTD, AND MSI COMPUTER CORP., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING WINBOND'S MOTION FOR SANCTIONS AGAINST PLAINTIFF FOR SPOLIATION AND DENYING PLAINTIFF'S MOTION TO STRIKE AND FOR SANCTIONS<br><br><br>Case No. 1:05-CV-64 TS |

I. INTRODUCTION

Winbond moves for sanctions against Plaintiff for spoliation of evidence. Plaintiff argues it has not spoliated evidence, moves to strike the Motion for failure to comply with this district's meet and confer rule, and seeks sanctions against Winbond's counsel. The Court finds no evidence of spoliation, finds that Winbond's counsel did fail to meet and

1

confer, but finds that sanctions are not appropriate at this time. Accordingly, the Court will deny the Motions.

## II. WINBOND'S MOTION FOR SANCTIONS AGAINST PLAINTIFF

Winbond argues that Plaintiff failed to preserve evidence or spoliated evidence. In particular, it argues that it is prejudiced by the lack of emails between Dr. Adams and Hewlett Packard (HP) during the time frame alleged in Plaintiff's trade secret claims. Many of Winbond's arguments reiterate its positions in its prior discovery Motions before the Magistrate Judge;[1] its Objections to the Magistrate Judge's Order on Winbond's Motions; and prior *in camera* proceedings before this Court. The Court will not revisit those previous rulings and, therefore, will only address those matters herein as required for clarity.

Winbond argues that Plaintiff failed to preserve evidence because it has not produced certain information. Several of those issues can be quickly resolved. The Court finds that there is no evidence of spoliation regarding any of the following, all of which have been produced:[2] test jigs; test programs and other computer files in paper, electronic, and original native format; spreadsheets, including the Compaq spreadsheet with metadata as stored on Dr. Adams' computer; specific emails; testing records; and a computer inventory. Aside from such evidence which has, contrary to Winbond's position, already been produced, Winbond's arguments on spoliation boil down to the following: Plaintiff had no official document retention policy and, therefore, production of emails and documents as

---

[1]*E.g.* Winbond reiterates its complaints regarding the form of Plaintiff's production of its business documents. Pl.'s Mot. at 5-6 and Reply at 8-9. The Magistrate Judge ruled against Winbond on that issue, Docket No. 1275, at 9-10. Winbond did not object to that ruling. Docket No. 1316 (Winbond's Partial Objection).

[2]Winbond has chosen not to attend some of the evidence productions.

preserved by Plaintiff's business manager and attorney evidences spoliation; Plaintiff did not produce all information stored on all of his computers; and Plaintiff has not produced his travel records.

In support of its position that Plaintiff did not have a document retention system, Winbond relies on the following: First, Dr. Adams' remark in a 2001 sealed action in California. That remark was that he "always deletes his emails."[3]  Second, Winbond relies on statements by Plaintiff's managers, Mr. and Ms. Ong,[4] that they were unaware of any email destruction practices or document retention policy.

As to Dr. Adams' emails, Winbond's allegation of spoliation is partly based on the number of HP emails produced—Winbond feels there are too few produced. In Dr. Adams' declaration[5] he explains that he copied either Mr. Ong or his counsel on each email sent to HP (except for some personal ones exchanged with a HP employee) and "similarly, HP would copy either" Mr. Ong or his counsel.[6]  He also explains that the relatively small number of emails exchanged with HP was the result of HP's policy, not Plaintiff's policy:

> When I was working with both HP and Compaq in implementing my technology to fix their defective computers, both HP and Compaq requested that I not communicate with them by email or in writing because they were involved in litigation involving defective FDC's and did not want to have to produce any such correspondence in discovery. Thus, there is limited

---

[3] Pl.'s Ex. 18, at 303-04.

[4] During the times in question, the Ongs were personal friends of Dr. Adams as well as managers of Plaintiff Phillip M. Adams & Associates, L.L.C. Mr. and Ms. Ong no longer work for Plaintiff.

[5] Pl.'s Ex. E. This declaration was also submitted in connection with Sony's Motion for Sanctions, an issue since resolved.

[6] *Id.* at ¶ 5.

3

correspondence with HP, Compaq, and me. As I testified in my deposition, whenever there was any issue about the technology, I would fly to HP and Compaq to resolve those issues or have telephone conferences with their technical people.[7]

In the 2001 California case deposition, Dr. Adams provided the same information—that his technical discussions with HP were over the phone or he flew to California to conduct the discussions on HP's premises.[8] Further, in the California case, Dr. Adams testified that while he deleted emails, he also had already produced therein "the substantial amount" of emails that he had access to.[9]

Winbond also relies on a stray remark by HP's attorney in a deposition during the *Gateway* case in support of its argument that Plaintiff spoliated HP emails. In that 2005 deposition, HP's counsel exchanged remarks with Gateway's counsel during their two-page "disagreement" at the close of a HP's corporate designee's deposition. The remark from HP's counsel was that "you"—meaning Gateway's counsel—"have about 3 inches of emails between HP and Adams which discuss the detector and the solution."[10] This type of hyperbole exchanged between counsel[11] during deposition disagreements is not evidence of the existence of undisclosed emails.

---

[7]*Id*. at ¶ 6.

[8]Winbond's Ex. 18 at 303-04.

[9]*Id*.

[10]Winbond's Ex. 4 at 107-08.

[11]Dr. Adams and Plaintiff's counsel attended the deposition, but did not participate in the disagreement or exchange.

4

As to the Ongs, contrary to Winbond's representation, they did not "testif[y] that Dr. Adams made no effort to preserve or track data."[12] Instead, Ms. Ong testified that while she was not "aware of a document retention" practice or policy,[13] she also testified as follows: she was only vaguely aware of Plaintiff's various lawsuits;[14] her job responsibilities involved preparing taxes;[15] she saved emails related to those tax responsibilities; her practice regarding tax-related emails was to print them out or retain them in her hard drive;[16] her computer hard drives were backed up; and she retains those backup tapes/cartridges,[17] although she did not keep the various drives used to retrieve the material from those drives.[18]

Similarly, while Mr. Ong testified that he was not "aware of a document retention" practice or policy at the company;[19] he also testified that the document retention procedure used by Plaintiff was that Dr. Adams expected him (Mr. Ong) to find the documents when needed and that during the years in question he functioned as Plaintiff's "document

---

[12] Winbond's Mem. in Support of Mot. at 13.

[13] Winbond's Ex. 31 at 26-27 (C. Ong Dep.); *see also* page 33 (testifying that she was "not aware" of any email destruction practices used by plaintiff).

[14] *Id*. at 28 (testifying she was not aware "in particular" of the *Gateway* lawsuit and that she knew Plaintiff received money from Compaq but didn't know it was specifically from a lawsuit).

[15] *Id*. at 27.

[16] *Id*. at 34.

[17] *Id*. at 181-822.

[18] *Id*. at 182.

[19] Winbond's Ex. 30 at 101 (L. Ong Dep.).

5

management system."[20] He further testified that Plaintiff's actual routine policy was as follows:

> Q.[21]  Sir, you are saying that while you were a manager at plaintiff, Dr. Adams expected that all the documents would be retained and organized by you?
>
> A.  He never said that to me, but he had them copy me on everything, and he expected me to help them when they could not find documents.
>
> Q.  So as a manager of plaintiff, one of the four managers of plaintiff, *was it your role to be the central document collection point*?
>
> A.  Nobody ever said that to me, *but it happened*.[22]

In response to Dr. Adams' expectation, Mr. Ong printed off "*every E-mail*" that he "*ever* received that was related to" Plaintiff's business.[23] In addition to emails, he also printed out the other documents he received about Plaintiff's business, saved those printed copies, and deleted the electronic versions.[24]

There is nothing in this case from which the Court could infer that there were HP/Plaintiff emails or documents that were not produced by Plaintiff. As the Court previously noted, in order to prevent the distraction of another round of briefing on the issue of items on Plaintiff's Amended Privilege Log,[25] the Court conducted an *in camera*

---

[20]Ex. 30 at 102 (transcript of deposition indicating that witness responded to the question, "Did you have a document management system?" by pointing to his head).

[21]The questioner is Sony's counsel.

[22]*Id*. at 102 (emphasis added).

[23]*Id.* at 97 (emphasis added).

[24]*Id.* at 194.

[25]Docket No. 1429, at 4. Winbond sought *in camera* review in Docket No. 877.

review of the entire log. The *in camera* review of Plaintiff's privilege log contained nothing that would contradict Plaintiff's evidence of its policy. Winbond misunderstands Plaintiff's citation of privilege log documents to show that copies of emails were sent to Mr. Ong and Mr. Phillips.[26] As Plaintiff correctly pointed out, the cited underlying Dr. Adams/HP emails have already been produced;[27] it is only the separate attorney-client communications made during the process of forwarding the underlying emails that were not produced as privileged.[28]

A "spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."[29] The requirement that the party preserve evidence because it knew or should have known that litigation was imminent requires that evidence such as emails be preserved, it does not require that it be preserved in any particular form. What is an adequate method of document retention for information such as emails must necessarily be fact specific. It is not the role of the courts to dictate a single method of document retention for all possible future litigants.[30] Contrary to

---

[26] Winbond's Reply Mem. at 4 (arguing the Dr. Adams/HP documents could not be privileged).

[27] Pl.'s Opp. Mem. at 18.

[28] The Court found those communications to be subject to attorney-client privilege.

[29] *Burlington Northern and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (quoting *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006)).

[30] The Rules of Civil Procedure do not require electronic storage of information, they only address circumstances where information has been electronically stored. *See*

Winbond's position, an adequate document retention system does not require that business-related emails be preserved indefinitely on the computers used by each individual employee at the time the email was sent and/or received. Such a requirement would make it impossible for businesses to have a central data storage, to update equipment regularly, or to accommodate business concerns such as employee efficiency. Nor would it be logical to always require production of routinely preserved emails or documents[31] directly from each individual employee, such as Dr. Adams, rather than from the company's central data collection source.

In the present case the record shows that Plaintiff is a small business with defined roles for each employee. The record also shows that Plaintiff's employee Dr. Adams routinely preserved his business emails and documents by copying them to Plaintiff's business managers, one of whom, Mr. Ong, was also Dr. Adams' personal attorney, and also copying many to the attorney (Mr. Phillips) who represented Plaintiff in litigation. Dr. Adams also required that HP copy Plaintiff's business manager and/or attorney with the communications/documents. Mr. Ong, as a business manager, then routinely printed out and preserved copies of the business emails and documents. Plaintiff's attorney also preserved the emails. The Court finds that it was adequate to preserve evidence to have the business emails and documents preserved by Plaintiff's business manager in the form

---

Fed. R. Civ. P. 26(b)(2)(B) ("Specific Limitations on Electronically Stored Information") and 37(e) (safe harbor provision added by 2006 Amendment for "failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system").

[31]Documents such as the test jigs were preserved by Mr. Ong or Mr. Phillips and were produced.
8

Mr. Ong found efficient—printed copies. Because the information in the form of the emails and documents was adequately preserved, it has been produced. The fact that Plaintiff's employees did not formally label this effective practice of routinely preserving information a "document retention policy" does not lessen the import of the evidence that the company's practice was, in actual fact, an effective document retention policy. As Mr. Ong explained when asked if it was his "role to be the central document collection point:" "Nobody ever said that to me, *but it happened*."[32] Thus, production by either Mr. Ong or the attorney who routinely received and preserved Plaintiff's business emails and documents is, on the facts of this case, adequate production on behalf of Plaintiff.

Nonetheless, Winbond argues that there should be more emails from the period. However, the Magistrate Judge found that Plaintiff need not produce emails relating to certain prior cases[33] and this Court overruled Winbond's objection on that issue because Winbond had not shown the relevance of those actions and the issue was mooted by Plaintiff's production of a privilege log containing many emails from those other cases.[34]

Winbond next argues that Plaintiff failed to search all of the computers listed on the inventory provided to Defendants for documents. This was an issue that was decided by the Magistrate Judge,[35] and need not be revisited herein. Although Dr. Adams has been

---

[32] Ex. 30 at 102 (emphasis added).

[33] Docket No. 1275, at 10-11.

[34] Docket No. 1362 at 3-6. Pursuant to its *in camera* review of the entire privilege log, the Court found those emails to be privileged and/or work product. Docket No. 1428, at 3.

[35] Docket No. 1275, at 6-8 (ordering production of sampling and further providing that "Winbond may move the court for further discovery if Winbond feels the sampling

working with computers his entire career, Winbond did not seek production of all of Plaintiff's computers. Winbond has received a detailed inventory of all of Plaintiff's computers. The inventory shows which computers were tested. The Court finds there is nothing to show that Plaintiff's computers or computer files have been spoliated.

Finally, Winbond argues that Plaintiff failed to produce its travel records. However, there is nothing to show that Winbond ever requested such records. As noted above,[36] as early as Sony's Motion filed on June 9, 2009, Winbond knew that, at HP's request, Dr. Adams traveled to HP's premises to work on technical matters rather than discussing them in email.[37] This was early enough that Winbond could have moved for production of travel records during one of the subsequent extensions of the fact discovery period. Winbond could also have inquired as to Dr. Adams' travel history in his deposition taken the same week that Winbond filed the present Motion. In the absence of a request for such records, there is nothing to show Plaintiff should be sanctioned for failing to produce them.

In conclusion, the Court finds that Plaintiff had a document retention system that enabled it to produce information relating to the issues in this case. Winbond has shown no evidence of evidence spoliation, and its Motion will be denied.

### III. Plaintiff's Motion to Strike and for Sanctions

Winbond's failure to meet and confer was in violation of the local rule and has resulted in wasted time and effort prior to trial. It certainly has not benefitted Winbond as

---

yields something significant").

[36] *Supra* at n.5 (discussing Pl.'s Ex. E).

[37] Winbond may have known of this information even earlier, via the California case deposition discussed above and used as Winbond's Ex. 18.

it delays rulings on other matters involving Winbond. The decision to dispense with the meet and confer requirement in favor of filing a Motion for sanctions an hour before the status conference appears to have been part of the personalization by counsel that formerly marked this case. The Court has already instructed all counsel on that issue.[38] The Court finds that sanctions are not appropriate at this time.

IV. ORDER

Based on the foregoing, it is

ORDERED that Winbond's Motion for Sanctions Against Plaintiff for Spoliation of Evidence (Docket No. 1364) is DENIED. It is further

ORDERED that Plaintiff's Motion to Strike and Request for Sanctions (Docket No. 1394) is DENIED.

DATED August 17, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[38] Docket No. 1506, at 7.