IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>WINBOND ELECTRONICS CORPORATION, ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORP., LTD, AND MSI COMPUTER CORP., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING WINBOND'S MOTION FOR SUMMARY JUDGMENT ON COUNT II<br><br><br>Case No. 1:05-CV-64 TS |

Winbond seeks partial summary judgment of Plaintiff's cross-claim for trade secret violation on two grounds, including statute of limitations, arguing that the limitations period began to run no later than March 4, 2004. Plaintiff disputes both grounds and argues that the period began to run no earlier than Winbond's November 4, 2005 production of documents in a related case. The Court finds the statute of limitations bars the claim and will grant the Motion.[1]

---

[1] This order was originally filed under seal. Docket No. 1605. Pursuant to the stipulation of the parties, it is now unsealed.

1

The standard for summary judgment is well known and need not be repeated here.[2] Although all reasonable inferences must be resolved in Plaintiff's favor, summary judgment is appropriate if "there is no genuine dispute regarding facts that establish that [a plaintiff's] claims are time-barred."[3]

Several background facts are necessary to understand the parties' arguments. First, Plaintiff previously brought infringement claims for two of the remaining patents-in-suit against a computer manufacturer named Gateway and, in 2003, amended the complaint in that case to allege misappropriation of trade secrets.[4] Winbond was not a party to the *Gateway* case, but Plaintiff made discovery requests to Winbond during that case, and Winbond was eventually required to provide information. Second, Dr. Philip Adams, a principal of Plaintiff and the inventor of the patents-in-suit and the alleged trade secrets, was, at one time, an IBM employee. Thus, Plaintiff understood the computer industry's references to such things as an IBM engineer and an IBM consulting firm to refer to Dr. Adams, even though Dr. Adams had not been working for IBM for several years.

Winbond argues that Plaintiff knew the facts underlying the trade secret claims against Winbond as early as February 5, 2002, when Plaintiff amended the complaint in

---

[2] *See* Fed. R. Civ. P. 56 (standard for summary judgment) and *Grynberg v. Total, S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) (stating standard for a grant of summary judgment).

[3] *Grynberg*, 538 F.3d at 1346.

[4] *Adams v. Gateway*, 2:02-CV-106 TS, filed February 5, 2002 (hereinafter the *Gateway* case). The *Gateway* case's claims were infringement of the '414, '002, and '222 patents and for theft of trade secrets and breach of non-disclosure and confidentiality agreements. *Gateway* case Docket No. 39 (April 17, 2003 Second Amended Complaint).

2

the *Gateway* case to allege trade secret misappropriation against Gateway. Winbond argues Plaintiff knew that Gateway used Winbond chips in the allegedly infringing computers and would, therefore, have been part of any trade secret misappropriation. Winbond also argues that various documents such as answers to interrogatories in the *Gateway* case and emails from Plaintiff's counsel to Winbond's counsel as early as August 1, 2003, show Plaintiff had sufficient information to trigger the statute of limitations. Finally, Winbond argues that the limitations period began to run no later than March 4, 2004, based on an email from Plaintiff's attorney to Winbond, which, it argues, shows that Plaintiff had sufficient information to trigger the statute of limitations.

The March 4, 2004 email reads as follows:

I am writing to bring several matters to your attention.

\* \* \*

Second, we discovered this past week that Gateway somehow obtained an unauthorized copy of Dr. Adams' Detector from Quanta in 2000-2001. <u>We believe that Winbond also obtained or had possession of a copy of Dr. Adams' Detector and related programs</u>. Please advise us immediately if Winbond obtained, ever had possession, or is currently in possession of a copy of Dr. Adams' Detector and related programs.

Third, we have also learned that Gateway claims that Winbond's detector (test utility) was actually obtained from ASUS, who developed the test utility from an IBM supplied design. These two files, . . ., constitute the Winbond test utility. Due to the <u>legal ramifications</u> and <u>potential theft involved</u>, we would appreciate a copy of these files immediately so that we can exonerate your client.

Thank you for your immediate attention to this matter.

We have not forgotten your request for a claims chart. But due to the shocking information that we are finally extracting from Gateway, we have

been busy pursuing these other matters.[5]

Plaintiff argues that the March 4, 2004 email does not show that it had information on Winbond's alleged trade secret violations and points out that Winbond never responded to the email's requests for information. Similarly, Plaintiff argues that none of the other documents and communications cited by Winbond mentioned trade secrets. Plaintiff references the long and arduous process required to obtain any documents from Winbond in the *Gateway* case and argues that sufficient information to trigger the statute of limitations was not produced until November 4, 2005.[6] Plaintiff argues that the March 4, 2004 email was insufficient to trigger the statute of limitations as to Winbond because it dos not mention trade secrets or allege that the Winbond "test utility" embodied Plaintiff's trade secrets. Plaintiff cites to the many documents it received after 2005 that arguably support its trade secret claim.

Utah's Trade Secrets Act is subject to a three-year statute of limitations which does not begin running until "the misappropriation is discovered or, by the exercise of reasonable diligence, should have been discovered."[7] As explained by the Tenth Circuit, construing the discovery rule for a similar Colorado statute:

> [T]he statute of limitations on trade secret misappropriation claims begins to run not when a plaintiff can positively and directly prove misappropriation rather than independent development, but simply when the plaintiff has knowledge of sufficient facts from which a reasonable jury could infer

---

[5]Docket No. 991 (Ma Dec.'l in Support of Mem. in Supp. of Mot. (Ma Dec.'l), Ex. 9 (emphasis added).

[6]Docket No. 1127, Ex. P. (letter from Winbond's counsel transmitting information).

[7]Utah Code Ann. §13-24-7.

4

misappropriation.[8]

Accrual does not wait "until a plaintiff is in a position to present evidence which will (regardless of what evidence the defense musters) establish facts which make liability a legal certainty." Courts have rejected the notion that the "statute of limitations begins running only when a plaintiff can unassailably establish a legal claim for trade secret misappropriation, [as that] would effectively eviscerate the statute of limitations in all cases in which the plaintiff never discovers 'smoking gun' evidence of misappropriation."[9]

Plaintiff argues that it did not have actual evidence of all of the elements of its claim, including that Winbond was not in "rightful possession"[10] of the information, until September 2004. However, as explained in *Cypress Semiconductor:*

> The proper focus, for purposes of the running of the statute of limitations, is not upon the defendant's actual state of mind *but upon the plaintiff's suspicions*. Indeed, a defendant's bad faith is often something a plaintiff cannot prove directly. In many cases a plaintiff must allege the defendant's tortious state of mind on information and belief. Certainly that plaintiff should not be expected to wait until he or she has direct proof of the defendant's mental state before filing the lawsuit. The plaintiff's subsequent inability to prove the requisite mental state means that the plaintiff cannot prevail on the merits of the claim but it does not retroactively affect the running of the statute of limitations.[11]

Plaintiff also argues that it had no information at the time of the March 4, 2004 email

---

[8] *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1218 (10th Cir. 2000).

[9] *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585-86 (Cal. Ct. App. 2008) (quoting *Intermedics v. Ventritex, Inc.*, 822 F.Supp. 634, 641 (N.D. Cal.1993) and *Chasteen*, 216 F.3d at 1218).

[10] *See id.* (holding that because "misappropriation of trade secrets is an intentional tort . . . a person is liable for misappropriation of trade secret information only if the person knows or has reason to know that he or she is not in rightful possession of the information").

[11] *Id.* at 587.

that Winbond had actually used the programs or the details of ASUS's test software.[12]

The Court finds the March 4, 2004 email shows that the Plaintiff had either actual knowledge, or an extremely powerful suspicion, that Winbond had obtained or had possession of a copy of Dr. Adams' Detector and related programs. There is no other explanation for Plaintiff's allegations characterizing the situation as a "potential theft." It also believed that the materials constituted Winbond's "test utility" and that Winbond had obtained the materials as files from ASUS. Plaintiff had earlier alleged that Winbond was using the test utility.[13] Thus, as in *Chasteen*, this is not a case where there was no information that "the defendant *had used* the plaintiff's trade secrets."[14] The information shown in the March 4, 2004 email was sufficient to show Plaintiff knew or reasonably should have known of the misappropriation of its trade secrets. Accordingly, the three-year statute of limitations began to run no later than March 4, 2004 and, therefore, the present claim for misappropriation of trade secrets is untimely.

The Court finds that there is no genuine dispute regarding the facts that establish that Plaintiff's claims against Winbond for trade secret misappropriation are time-barred.[15] Because the Court finds that the trade secret claim is barred by the statute of limitations,

---

[12] *See* Utah Code Ann. § 13-24-2(2)(a) (misappropriation by acquisition) and (b) (misappropriation by disclosure or use).

[13] Ma Decl. Ex. 6.

[14] 216 F.3d 1220-21 (distinguishing facts in *Intermedics, Inc. v. Ventriex*, 822 F.Supp. 634, 641 (N.D. Cal. 1993) (emphasis added in *Chasteen*) because in *Chasteen* (1) plaintiff had good reason to know defendant had already used the trade secrets; and (2) it was "inherently implausible" that plaintiff had no reason to know the trade secrets were used to develop the competing product).

[15] *See Grynberg*, 538 F.3d at 1346.

the Court need not address Winbond's second ground for seeking summary judgment on the trade secret claim. It is therefore

ORDERED that Winbond's Motion for Summary Judgment on Count II (Docket No. 990) is GRANTED and judgment shall be entered in favor of Winbond and against Plaintiff on Count II.

DATED August 26, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge