IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, LLC, a Utah Limited Liability Company,<br><br>    Plaintiff,<br><br>vs.<br><br>WINBOND ELECTRONICS CORPORATION, ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORP., LTD, AND MSI COMPUTER CORP., et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING ASUS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S MISAPPROPRIATION OF TRADE SECRETS CLAIM (Count II)<br><br>Case No. 1:05-CV-64 TS |

ASUS[1] seeks partial summary judgment of Plaintiff's cross-claim for trade secret violation on five grounds. The Court finds the first ground, statute of limitations, to be dispositive and will grant the Motion.[2]

---

[1] Asustek Computer and Asus Computer Intl.

[2] This order was originally filed under seal. Docket No. 1601. Pursuant to the stipulation of the parties, it is now unsealed.

ASUS argues that a March 4, 2004 email shows that Plaintiff had sufficient information to trigger the statute of limitations for a claim of misappropriation of trade secrets at least by that date and, therefore, Plaintiff's September 11, 2007 assertion of a trade secret claim under Utah law is barred by Utah's three-year statute of limitations. The email at issue was from Plaintiff's counsel to Winbond's counsel during the pendency of the *Gateway* case in this district.[3] The *Gateway* case involved claims for infringement of the '002 and '222 patents, two of the three remaining patents-in-suit. However, Winbond was not a party to the *Gateway* case.

Relevant to the parties' respective positions on the trigger date is the fact that Dr. Philip Adams, the inventor of the patents-in-suit and the alleged trade secrets, was, at one time, an IBM employee. Plaintiff understood computer industry references to such things as an IBM engineer and an IBM consulting firm to refer to Dr. Adams, even though he was no longer working for IBM by 1999.[4]

The March 4, 2004 email reads as follows:

I am writing to bring several matters to your attention.

* * *

Second, we discovered this past week that Gateway somehow obtained an unauthorized copy of Dr. Adams' Detector from Quanta in 2000-2001. We believe that Winbond also obtained or had possession of a copy of Dr. Adams' Detector <u>and related programs</u>. Please advise us immediately if

---

[3]*Adams v. Gateway*, 2:02-CV-106 TS, filed February 5, 2002 (hereinafter the *Gateway* case). The *Gateway* case's claims were infringement of the '414, '002, and '222 patents and for theft of trade secrets and breach of non-disclosure and confidentiality agreements. *Gateway* case Docket No. 39 (April 17, 2003 Second Amended Complaint).

[4]*E.g.* Pl.'s Mem. in Opp. at xxviii.

> Winbond obtained, ever had possession of a copy of Dr. Adams' Detector and <u>related programs</u>.
>
> Third, we have also learned that Gateway claims that Winbond's detector (test utility) <u>was actually obtained from ASUS, who developed the test utility from an IBM supplied design</u>. These two files, ifdc.exe and w2sec.exe, constitute the Winbond test utility. Due to the legal ramifications and <u>potential theft involved</u>, we would appreciate a copy of these files immediately so that we can exonerate your client.
>
> Thank you for your immediate attention to this matter.
>
> We have not forgotten your request for a claims chart. But due to the shocking information that we are finally extracting from Gateway, we have been busy pursuing these other matters.[5]

Plaintiff argues that the March 4, 2004 email was insufficient to trigger the statute of limitations as to ASUS because, at that time, Plaintiff did not know and should not reasonably have known, that ASUS was not in rightful possession of the information. Instead, Plaintiff argues that it was not until shortly after the September 14, 2004 Order[6] in the *Gateway* case that it began to receive documents from which it first knew or should have known that ASUS was not in rightful possession of the information. In support, Plaintiff cites a document first released after September 2004, as an example of the first information from which it knew or reasonably should have known facts that would trigger the statute of limitations. The document, commonly referred to by the parties as the Woon Report, is a report issued by Gateway employee Y.C. Woon about testing on July 31, 2000, regarding the defect addressed by the patents/trade secrets:

- Origin of test utility

---

[5] ASUS' Ex. 29 (emphasis added).

[6] Docket No. 268 in the *Gateway* case, affirming Magistrate's Order regarding production of such documents.

Apparently the utility's algorithm originated from one of IBM's consulting firm. Asus wrote software using the same algorithm and use[d] to test the board in ASUS. As this is a proprietary software, and also due to [its] patented algorithm, the software could not be released to be used outside of ASUS. Winbond apparently got hold of the software through ASUS as they bought the same Winbond chip from them.[7]

Utah's Trade Secrets Act is subject to a three-year statute of limitations which does not begin running until "the misappropriation is discovered or, by the exercise of reasonable diligence, should have been discovered."[8] As explained by the Tenth Circuit district construing the discovery rule for a similar Colorado statute:

> [T]he statute of limitations on trade secret misappropriation claims begins to run not when a plaintiff can positively and directly prove misappropriation rather than independent development, but simply when the plaintiff has knowledge of sufficient facts from which a reasonable jury could infer misappropriation.[9]
>
> Accrual does not wait "until a plaintiff is in a position to present evidence which will (regardless of what evidence the defense musters) establish facts which make liability a legal certainty." Courts have rejected the notion that the "statute of limitations begins running only when a plaintiff can unassailably establish a legal claim for trade secret misappropriation, [as that] would effectively eviscerate the statute of limitations in all cases in which the plaintiff never discovers 'smoking gun' evidence of misappropriation."[10]

Plaintiff argues that it did not have actual evidence of all of the elements of its claim,

---

[7]Pl.'s Ex. 2 (Woon Report) at 1.

[8]Utah Code Ann. §13-24-7.

[9]*Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1218 (10th Cir. 2000).

[10]*Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585-86 (Cal. Ct. App. 2008) (quoting (*Intermedics v. Ventritex, Inc.*, 822 F.Supp. 634, 641 (N.D. Cal.1993) and *Chasteen*, 216 F.3d at 1218.)

4

including that ASUS was not in "rightful possession"[11] of the information, until September 2004. However, as explained in *Cypress Semiconductor:*

> The proper focus, for purposes of the running of the statute of limitations, is not upon the defendant's actual state of mind *but upon the plaintiff's suspicions*. Indeed, a defendant's bad faith is often something a plaintiff cannot prove directly. In many cases a plaintiff must allege the defendant's tortious state of mind on information and belief. Certainly that plaintiff should not be expected to wait until he or she has direct proof of the defendant's mental state before filing the lawsuit. The plaintiff's subsequent inability to prove the requisite mental state means that the plaintiff cannot prevail on the merits of the claim but it does not retroactively affect the running of the statute of limitations.[12]

Plaintiff relies on an Order in the *Gateway* case for the proposition that "reliance on third-hand information is inappropriate" regarding possession of the detector.[13] However, that Order did not involve application of the discovery rule to the statute of limitations for Utah's Trade Secrets Act. Instead, it related to Gateway's burden on establishing evidence in opposition to a sanctions motion.

In the present case, the Court finds the March 4, 2004 email shows that the Plaintiff had actual knowledge that ASUS had developed a utility that was a "potential theft" of what Plaintiff claims to be trade secrets. Accordingly, the three-year statute of limitations began to run no later than March 4, 2004, and the present claim for misappropriation of trade secrets is untimely. Because the Court finds that the trade secret claim is barred by the

---

[11] *See id.* (holding that because "misappropriation of trade secrets is an intentional tort . . . a person is liable for misappropriation of trade secret information only if the person knows or has reason to know that he or she is not in rightful possession of the information").

[12] *Id.* at 587.

[13] *Gateway* case Docket No. 245 at 7.

statute of limitations, the Court need not address ASUS' five other grounds for seeking summary judgment on the trade secret claim. It is therefore

ORDERED that ASUS's Motion for Partial Summary Judgment on Plaintiff's Misappropriation of Trade Secrets Claim (Count II) of Amended Cross-Complaint Against ASUS (Docket NO. 1073) is GRANTED and judgment shall be entered in favor of ASUS and against Plaintiff on such claim.

DATED August 25, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge