IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, LLC, a Utah Limited Liability Company, <br><br> Plaintiff, | MEMORANDUM DECISION AND ORDER DENYING ITE'S MOTION TO SET ASIDE THE CLERK'S ENTRIES OF DEFAULT AS TO ITE AND TO DISMISS PLAINTIFF'S CLAIMS AGAINST ITE, DENYING ITE'S MOTIONS TO STRIKE, AND GRANTING PLAINTIFF'S MOTION FOR DISCOVERY ON PERSONAL JURISDICTION |
| vs. | |
| WINBOND ELECTRONICS CORPORATION, ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORP., LTD, AND MSI COMPUTER CORP., ITE TECH. INC., INTEGRATED TECHNOLOGY EXPRESS, INC., <br><br> Defendants. | Case No. 1:05-CV-64 TS |

## I. INTRODUCTION

ITE Tech., Inc. (ITE) moves to set aside two of the three defaults entered against it for lack of proper service and also to dismiss Plaintiff's claims for lack of personal jurisdiction.[1] Plaintiff opposes setting aside the defaults, argues there is personal jurisdiction over ITE and, in the alternative, seeks discovery to establish personal jurisdiction.

The Court finds Plaintiff correctly served ITE under Rule 5, that the defaults should not be set aside, and that ITE's argument regarding a lack of personal jurisdiction may be raised in opposition to an entry of default judgment. Because ITE will raise its position on personal jurisdiction in the bifurcated proceedings relating to the ITE chips, Plaintiff will be allowed to conduct discovery on the personal jurisdiction issue.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case was filed by Plaintiff on May 12, 2005. On January 12, 2007, Defendant Sony filed an Amended Third-Party Complaint for Indemnification and Contribution against ITE[2] and others.[3] Sony sent its Third-Party Complaint to ITE, together with a Notice of Lawsuit and Request for Waiver of Service for Summons. That Notice and Request for Waiver fully complied with FED. R. CIV. P. 4(e). On March 26, 2007, Sony filed the Waiver of Service of Summons, signed by Lawrence Liu, ITE's Vice President.[4]

---

[1]Docket No. 1329.
[2]Docket No. 226 (Amended Third-Party Complaint for Indemnification and Contribution).
[3]A full procedural background and the status of the third-party defendants interpleaded by Sony is found at Docket No. 1375 at 2-4.
[4]Docket No. 264 (ITE's Waiver of Service of Summons).

On March 28, 2007, ITE, acting through Mr. Liu, submitted a letter to Sony and to the court styled as a Venue Objection Letter,[5] which explained that ITE objected to venue and jurisdiction, and opposed the merits of the claims, but that despite these defenses, it seemed the "better way" for ITE to sign the Waiver as requested by Sony, "which should not be deemed that ITE [has] agree[d] to the Jurisidiction and Venue."[6]

Pursuant to ITE's waiver, ITE had until April 26, 2007, to answer or otherwise respond to Sony's Third-Party Complaint.[7]

On May 2, 2007, Plaintiff filed its cross-complaint against ITE.[8]  Plaintiff's cross-complaint contained a cross-claim for patent infringement against ITE and others.[9] Plaintiff sent a copy of its cross-complaint directly to Mr. Liu, as Vice President of ITE by Federal Express together with a cover letter that identified the case, identified the pleading, and further informed ITE of the deadline to respond and the consequences of a failure to respond.

> ITE has until May 29, 2007 to respond to the cross-claim.  If ITE fails to respond, the Court will enter a default judgment against ITE.[10]

Despite signing Sony's Waiver and acknowledging the deadline for it to file an Answer or a Motion under Rule 12,  ITE failed to file an answer or a Rule 12 motion

---

[5]Docket No. 265.

[6]*Id.*

[7]Docket No. 264, at 2 and 3 (Waiver signed by Mr. Liu as Vice President of ITE Tech, Inc., acknowledging that ITE understands that judgment may be entered against ITE if an answer or motion under FED. R. CIV. P. 12 is not served on Sony within ninety days of January 26, 2007).

[8]Docket No. 277.

[9]*Id.* at 8-9.

[10]Docket No. 1257, Ex. 2

challenging personal jurisdiction regarding Sony's Third-Party Complaint. On May 22, 2007, Sony moved for entry of default against ITE, noting the Venue Objection Letter lodged in the file.[11] Sony's Motion for Default was based on the failure to answer or respond. On May 30, 2007, the Clerk of Court entered a default under Rule 55(a) on Sony's claims against ITE because ITE "failed to file an answer or otherwise respond to Sony's Amended Third-Party Complaint . . . despite being required by law to so by April 26, 2007."[12]

Similarly, despite Plaintiff's counsel's letter providing a deadline for an answer or response, and emphasizing the need to answer Plaintiff's cross-complaint, ITE did not file an answer or otherwise respond to Plaintiff's cross-complaint.[13]

On June 11, 2007, Plaintiff moved for entry of default against ITE, on the basis that "ITE has failed to answer or otherwise plead to Plaintiff's Cross Complaint against ITE."[14] The supporting affidavit of counsel noted that ITE had waived service pursuant to Rule 4 of the Federal Rules of Civil Procedure, but had not answered Sony's Amended Third-Party Complaint.[15] Plaintiff's counsel explained that "since no one had entered an appearance for ITE at the time of filing of Adams' cross-complaint, Adams' counsel sent a copy of the cross-complaint directly to Lawrence Liu, Vice President of ITE and the

---

[11]Docket No. 283 at 2 n.2 and Ex. 1 at ¶ 15-16 (Gray Aff.).
[12]Docket No. 291 (Default). Two years later, Sony joined ASUS and Winbond in stipulating to the bifurcation of the indemnity claims.
[13]See Docket No. 1371-2 (FedEx Express Shipment Detail attached as Ex. 1 to Weeks Decl. showing delivery date and name of individual who signed for its receipt).
[14]Docket No. 294 at 1 (Pl.'s Mot. for Clerk's Entry of Default Against Third-Party Defendant ITE Tech Inc.).
[15]Docket No 295 at ¶ 1 (Decl. of Pl.'s counsel).

individual who had waived service of" Sony's Third-Party Complaint and cited Sony's Motion for entry of default.[16]   On June 14, 2007, the Clerk of Court entered a default against ITE with respect to Plaintiff's Cross-Complaint stating that ITE had "failed to file an answer or otherwise respond . . . despite being required by law to do so."[17]

Plaintiff filed an Amended Cross-Complaint against ITE on January 29, 2008.[18]  The Amended Cross-Complaint added a claim for misappropriation of trade secrets, which was served electronically on all parties but ITE.  Plaintiff served ITE by sending a copy of its amended cross-complaint to Mr. Liu on November 18, 2008, via Federal Express.[19]  The copy of the Amended Cross-Complaint was accompanied by a letter from counsel.  The cover letter accompanying the Amended Cross-Complaint referenced and attached the two defaults already entered against ITE.[20]  After ITE failed to respond to Plaintiff's amended cross-complaint, Plaintiff filed a motion for an entry of default against ITE on October 28, 2009.[21]  In support its Motion, Plaintiff submitted a Declaration of its counsel stating, among other things: "Since no one had entered an appearance for ITE at the time of the filing of Plaintiff's cross-complaint, Plaintiff's counsel sent the original cross-complaint directly to" Mr. Liu, "the individual who had waived service of Sony's Amended Third-Party Complaint

---

[16]*Id*. at ¶ 3.
[17]Docket No. 296  at 1-2 (Clerk's Entry of Default Against Third-Party Defendant ITE on Plaintiff Cross-Complaint).
[18]Docket No. 445.
[19]*See* Docket No. 1371-2 (FedEx Express Shipment Detail attached as Ex. 3 to Weeks Decl.).
[20]Docket No. 1125-1, at 1 (letter from Plaintiff's counsel V. Dossas).
[21]Docket No. 1125 (Pl.'s Mot. for a Second Clerk's Entry of Default Against Third-Party Defendant ITE).

against ITE."[22]  On February 11, 2010, the Clerk entered a default certificate against ITE stating that ITE had "failed to appear and answer the amended cross complaint on file" and entered default "pursuant to Rule 55(a) of the Federal Rules of Civil Procedure."[23]

On April 9, 2010, Plaintiff filed a Motion for a Default Judgment against ITE.[24]  Like the prior Motions, it was served on Mr. Liu as Vice President of ITE by Federal Express.[25]  Mr. Liu responded with a letter to Plaintiff's counsel, copied to the Court, and the letter was lodged in the file on May 14, 2010.[26]  On May 17, 2010, ITE moved through counsel to make a limited appearance to oppose a default judgment.[27]  Pursuant to the parties' stipulation, ITE withdrew that motion and substituted a motion to set aside the default, and the parties stipulated to a briefing schedule.[28]  The issues are now fully briefed.

## III.  DISCUSSION

### A.  Service of Cross-Complaints

FED. R. CIV. P. 55(c) provides that the court "may set aside an entry of default for good cause."[29]  ITE argues that Plaintiff's improper service and this court's lack of personal jurisdiction over ITE establish good cause to set aside the default entries.

The parties' dispute over service requires the Court to determine whether service of Plaintiff's cross-complaint and amended cross-complaint were adequately served by

---

[22]Docket No. 1125-2 (G. Phillips Declaration).
[23]Docket No. 1217, at 1 (Default Certificate Re: Amended Cross Complaint).
[24]Docket No. 1265.
[25]*Id*. at 5 (Certificate of Service).
[26]Docket No. 1284 (lodged letter).
[27]Docket No. 1289.
[28]Docket Nos. 1324 and 1344.
[29]FED. R. CIV. P. 55(c).

service under FED. R. CIV. P. 5 (Rule 5), or if service was required under Fed. R. Civ. P. 4 (Rule 4). Rule 5 generally governs service of "papers," such as "pleadings filed after the original complaint,"[30] and require that they "be served on every party."[31] Fed. R. Civ. P. 5 (b)(2)(C) provides that service of a paper may be made by "mailing it to the person's last known address." However, subsection (a)(2) of Rule 5 provides:

> No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.[32]

ITE asserts that its waiver of service of summons was specific to Sony's Amended Third-Party Complaint and was not intended to waive service of summons by parties other than Sony. ITE further asserts that this court lacks personal jurisdiction over ITE and, therefore, a default judgment and the default entries are improper. ITE argues that because ITE was "arguably" in default for failing to appear and because Plaintiff asserted a new claim for relief in Plaintiff's cross-complaint and again in its amended cross-complaint, FED. R. CIV. P. 5(a)(2) also required Plaintiff to serve ITE under FED. R. CIV. P. 4.[33] ITE argues Plaintiff's service was improper under Rule 4, because it did not include a summons as required by Rule 4 when Plaintiff served its cross-complaint and amended cross-complaint.[34]

---

[30] FED.R.CIV.P. 5(a)(1)(B).
[31] *Id*. at 5(a)(1).
[32] *Id*. 5(a)(2).
[33] Docket No. 1330 (ITE's Mem. in Opp., at 11).
[34] *Id*. at 6.

Plaintiff argues that ITE's waiver of service of summons was not confined to only Sony but instead waived service of summons to all parties in this case.[35]   Therefore, Plaintiff believes it properly served ITE under FED. R. CIV. P. 5.[36]  Plaintiff asserts that FED. R. CIV. P. 5(a)(2) does not apply to ITE because ITE was not "in default for failing to appear."[37]   Plaintiff also believes it has established its *prima facie* basis for the Court's personal jurisdiction over ITE.[38]

ITE's argument that its waiver of service of summons was specific only to Sony is inconsistent with the language of the waiver.  The waiver states that ITE waives "service of a summons in the case of Phillip M. Plaintiff & Associates LLC v. Dell, et al., case number 1:05-CV-64."[39]   The waiver further states that ITE "will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court *except for objections based on a defect in the summons or in the service of the summons.*"[40]

Plaintiff apparently made service on ITE by mail based on its understanding that the waiver was not specific to Sony.   However, the Court need not determine the issue of whether ITE's waiver is specific as to only Sony because ITE had made an appearance in the case by its Venue Objection Letter.

ITE argues that even if service were appropriate under Rule 5, it was arguably in default for failure to appear and, therefore, under Rule 5(a)(2) Plaintiff should have served

---

[35]Docket No. 1371 (Pl.'s Reply at 3).
[36]*Id.*
[37]*Id.* at 5.
[38]*Id.* at 10.
[39]Docket No. 264 (Waiver of Service of Summons by ITE).
[40]*Id.* (emphasis added).

ITE under Rule 4 rather than Rule 5. Plaintiff argues that ITE's venue objection letter satisfies the requirements of an appearance and that, therefore, Fed. R. Civ. P. 5(a)(2) does not apply to ITE because ITE was not a party in default for failing to appear.[41]

"An appearance is an 'overt act by which a party comes into court and submits [itself] to its jurisdiction. It is an affirmative act requiring knowledge of the suit and an intention to appear.'"[42] In the present case, ITE submitted a paper on the record.[43] ITE's paper was an affirmative act evidencing knowledge and an accurate understanding of the suit and, carefully reserving its rights to contest venue and jurisdiction, announced ITE's intention to defend. As such it is an affirmative act made with an intention to appear.

ITE argues that Plaintiff cites case law construing appearance under Fed. R. Civ. P. 55(b), rather than Rule 5. However, it appears that such case law is equally applicable to Rule 5.[44] Under that case law, such as *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*,"[45] courts have refused to require a party to file documents on the record in order to have "appeared." In *Sun Bank*, the clerk of court refused to accept a deficient motion to dismiss filed by the defendant, but the Fifth Circuit, found the plaintiff knew, from

---

[41]Pl.'s Opp. Mem. at 7.
[42]1 J. Moore, Moore's Federal Practice ¶ 5.03[1] (2d ed. 1988) (hereinafter Moore's) (quoting *Anderson v. Taylorcraft Inc.*, 197 F.Supp. 872, 874 (W.D. Pa. 1961) (construing appearance under Fed. R. Civ. P. 55(b)).
[43]Docket No. 265.
[44]*See* 1 Moore's at ¶ 5.03[1] (citing cases construing appearance under Rule 55 for appearance required to establish entitlement to service); 4B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 1144, p. 428-29 (3d ed. 2002) (hereinafter Wright & Miller) (same and noting that "by appearing in the action the party also may become vulnerable to service of claims for new or additional relief under the relatively informal methods set out under Rule 5(b)").
[45]874 F.2d 274 (5th Cir. 1989).

correspondence from the Defendant's counsel, that Defendant had a clear purpose to defend the suit, which was construed as an appearance.[46]  In *United States v. McCoy*,[47] another Rule 55(b) case, the Fifth Circuit noted that it had not limited "the concept of an 'appearance' to those instances in which the party has made a physical appearance in court or has filed a document in the record.  Rather, we have required only that the party against whom the default judgment is sought indicate in some way an intent to pursue a defense."[48]  In this case, as in *McCoy*, the defendant made its appearance when it filed a paper that was made of record and indicated its intent to defend.[49]  The Court finds that the Venue Objection Letter was an appearance by ITE.  Thus, although at the time Plaintiff filed its cross-complaints, ITE may have been in default for the failure to timely file an answer or Rule 12 motion for Sony's Third-Party Complaint, ITE was not a party in default for failing to appear.

The fact that Plaintiff's counsel, at the time of seeking a default, explained its service by mail on a company vice president by stating no one had "entered an appearance" for ITE at the time of the filing of Plaintiff's cross-complaint, does not change the fact that ITE had made an appearance at the time Plaintiff served its cross-complaint.[50]  Plaintiff did not seek default on the basis of failure to appear, but on the basis of failure to file an answer

---

[46]*Id*. at 277.

[47]954 F.2d 1000 (5th Cir. 1992).

[48]*Id*. at 1003.

[49]*Id*. (holding defendant's untimely "letter entitled 'Special Appearance,' while not considered by trial judge to be appearance was made part of record and did list defenses, and therefore was an appearance for Rule 55(b)).

[50]*See McCoy*, 954 F.2d at 1002-03 (finding letter was appearance even though trial court stated at time of receipt of letter that it did not consider that Defendant had appeared by means of the letter).

or respond.  The Affidavit is not misleading since it is clear from the Affidavit that Plaintiff

did not serve a summons with its cross-claim and was relying on the waiver.[51]

ITE also argues that the Venue Objection Letter could not be an appearance

because only an attorney may represent a corporation in federal court.[52]  That is true, but

the remedy is to enter an order requiring that the corporation obtain counsel, not to

disregard papers filed.[53]

In the present case, ITE's right to subsequently contest personal jurisdiction does

not change the fact that once it was properly served by Sony and made its appearance,

ITE was properly served with cross claims under Rule 5 because it was not a party in

default for failing to appear.

Nor does the fact that the second default includes language that ITE has failed to

appear and answer the amended cross-complaint make a difference.  Once ITE had made

an appearance, its subsequent default, even if the subsequent default is for the

subsequent failure to appear, has no effect on Rule 5(a)(2).[54]  This is the "dichotomy . .

crated by [Rule 5(a)(2)] between a party in default for failure to appear and parties in all

---

[51] *See also Dysert v. Marriott Corp*., 103 F.R.D. 15, 18-19 (E.D. Pa. 1984) ("Once
a third-party defendant has been properly brought within the jurisdiction of the court by
an original defendant, personal jurisdiction need not be established independently by
plaintiff.  Since the Court already has personal jurisdiction over the third-party
defendants, plaintiff's complaint need not be served as original service under F.R.C.P.
4, but may be served pursuant to F.R.C.P. 5.").

[52] Citing *Tal v. Hogan*, 453 F.3d 1244, 1254 n.8  (10th Cir. 2006).

[53] *Id*. (finding no error in refusal to allow pro se individual to represent corporation
and instead "requiring the corporations to secure counsel.").

[54] 1 Moore's  §§ 5.03[2] at 5-23 and 5.03[3] 5-24 n.12 (3d ed. 2010) (collecting
cases.  *See also O'Halloren v. Quarzite Carrara*, 129 F.R. D. 24, 25 (D. Mass. 1990)
(holding that where defendant had once made an appearance, it was entitled to notice
under Rule 5(a)(2) even though it subsequently defaulted for failure to appear).

other type defaults (such as parties who appeared but subsequently defaulted)."[55]

Thus, at the time of service of its amended cross-complaint, and second Motion for Entry of Default, ITE was not in default for failing to make an appearance but, instead, was a party in default for failing to answer or to plead. Rule 5(a)(2) is inapplicable to ITE in this situation and Plaintiff correctly served its cross-complaints on ITE under Rule 5.

B. Personal Jurisdiction

ITE next moves to vacate the default for lack of personal jurisdiction. In support, ITE cites cases setting aside default judgments and refusing to enter default judgments for lack of personal jurisidiction.[56] However, ITE cites only one unpublished case for setting aside a default for improper service.[57] Instead, the general rule to be gathered from the cases ITE relies on is that, before entering a default judgment, a court should first determine that there is jurisdiction over the parties.[58] Thus, it appears that the issue of ITE's claim of lack of personal jurisdiction is appropriately considered as part of the default judgment process rather than as a ground for setting aside the default.

As discussed above, FED. R. CIV. P. 55(c) provides that the court "may set aside an entry of default for good cause."[59] This standard is less strict than to set aside a default

---

[55]Moore's § 5.03[2] at 5-23.

[56]ITE's Mem. in Supp. at 6-9.

[57]*Inversora Murten, S.A. v. Energoprojekt Holding Co*., 2009 WL 179463, (D.Colo. 2009) (setting aside default writ of garnishment for improper service).

[58]*E.g. Williams v. Life Savings & Loan*, 802 F.2d 1200 (10th Cir. 1986), cited by ITE. *See also Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010) (holding personal jurisdiction over the defendant is required before a default judgment in a civil case may be entered).

[59]FED. R. CIV. P. 55(c).

judgment because finality is not implicated.  As the Sixth Circuit explained the standard in

*United States v. 422,050 United States. Currency*,[60]

> In determining whether good cause exists, the district court must consider: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." Although "all three factors must be considered in ruling on a motion to set aside an entry of default," when a defendant has a meritorious defense and the plaintiff would not be prejudiced, "it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead."[61]

The Tenth Circuit applied these same standards in an unpublished case, *Hunt v.*

*Ford Motor Co.*[62]

Applying these factors, the Court finds that the culpable conduct of ITE led to the

defaults.  The delivery receipts and affidavits show ITE had actual notice of the cross-

complaints by receipt of copies.[63]  The letters that accompanied the service made it clear

that defaults could enter if an answer or response were not filed.  Copies of two earlier

defaults were attached to the letter that accompanied service by mail of the Amended

Cross-Complaint.  Despite actual notice, ITE failed to respond for nearly three years.  It

was not until after it received Plaintiff's Motion for Entry of Default Judgment shortly before

---

[60]595 F.3d 318 (6th Cir. 2010).

[61]*Id.* at 324 (quoting *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) and *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir.1986) (alterations omitted)).

[62]1995 WL 523646, 3 (10th Cir. 1995) (holding that "if the default was the result of the defendant's culpable conduct, the district court may refuse to set aside the default on that basis alone").

[63]*C.f. Kitchens v. Bryan County Nat. Bank*, 825 F.2d 248, 256 (10th Cir. 1987) (examining service under Rule 4 in light of fact that "the federal courts generally take a permissive attitude towards the mechanism employed for service of process when defendant actually receives notice") (citing Wright and Miller, 4 Federal Practice and Procedure § 1074 at 295) (further citation omitted).

the scheduled trial that it responded. ITE's current arguments regarding lack of adequate service and/or lack of personal jurisdiction should have been raised almost three years ago in response to either of Plaintiff's two motions for entry of default. Instead, ITE allowed entry of three defaults, two for Plaintiff and one for Sony.[64]

As to prejudice, the Court finds that there would be a great prejudice to Plaintiff in setting aside the default. It is true that the ITE claims have been bifurcated. But that bifurcation is the result of ITE's culpable conduct in letting defaults be entered and not raising any objection until three years later. The bifurcation is at great cost to Plaintiff, who has already completed discovery, including discovery in Taiwan, as well as expert discovery and now will have the expense of a second proceeding. If the default as to liability were to be set aside, Plaintiff will be severely prejudiced because it will have lost nearly three years and, in that time, memories will have faded and evidence been lost. There is also a great prejudice to the other Defendants, who have had to have Plaintiff's claims against them based on the ITE claims bifurcated. Thus, instead of Plaintiff's claims against the other Defendants being resolved as a result of the upcoming trial, they will still be facing one lingering set of claims in another proceeding. To set aside the defaults would result in even greater delay to Plaintiff and to the other Defendants as the case would have to start over against ITE.

The Court construes ITE's arguments asserting it lacks the minimum contacts necessary for personal jurisdiction as it arguing the meritorious defense prong of Rule 55 analysis. The Court finds that because the defaults were the result of ITE's culpable

---

[64]ITE has not moved to set aside the default obtained by Sony.

conduct ITE's position may be effectively raised as a defense to the Motion for a Default Judgment.  As ITE points out, case law establishes that despite entry of a default, default judgment should not enter without personal jurisdiction over the defaulted defendant.

At this point, Plaintiff is only required to establish a *prima facie* showing of the grounds for personal jurisdiction.[65]  In a preliminary determination of a court's jurisdiction over a party "all factual disputes must be resolved in the plaintiff's favor."[66]  Utah's long-arm statute states that its provisions "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause."[67]

Plaintiff argues specific personal jurisdiction is shown by the stream of commerce theory and the *Calder* effects test.[68]  Under the stream of commerce theory, if the plaintiff alleges that the defendant "purposefully shipped the accused" product into a state "through an established distribution channel," and the "cause of action for patent infringement is alleged to arise out of these activities," then "no more is usually required to  establish specific jurisdiction."[69]  Under such circumstances, minimum contacts are shown.[70]  In

---

[65]*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[66]*Id.*

[67]UTAH CODE ANN. § 78-27-22.

[68]*Calder v. Jones*, 465 U.S. 783 (1984) (holding "jurisdiction over" two Florida newspapermen in California was "proper because their intentional conduct in Florida [was] calculated to cause injury to [liable action plaintiff] in California").  See *Tamburo v. Dworkin,* 601 F.3d 693, 703 (7th Cir. 2010) (explaining that the *Calder* effects test, "suggests three requirements for personal jurisdiction in this context: (1) intentional conduct (or "intentional and allegedly tortious" conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt-that is, the plaintiff would be injured-in the forum state").

[69]*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (following *Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102 (1987) but noting that the plurality opinion in *Asahi* was split on the exact requirements for an application

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,[71] the Federal Circuit held that in a patent case, Federal Circuit law, rather than the law of the regional circuit, was applicable to the issues of (1) whether the application of the stream of commerce theory of jurisdiction satisfies due process;[72] and (2) the situs of the injury[73] in patent infringement cases. Once minimum contacts are shown through the stream of commerce, due process also requires that it would not be "unreasonable for the forum to assert jurisdiction under all the facts and circumstances."[74] Generally, a finding of unreasonableness is "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."[75]

In the present case, Plaintiff has shown that ITE is a multi-national manufacturer of computer components. ITE, on its own website, claims that ITE's "market share of the Super I/O products, adopted by many well-known PC manufacturers, has been over 40 percent worldwide."[76] Plaintiff's evidence is that ITE has marketed its products in the United States and placed its products in the stream of commerce and directed the

of the stream of commerce theory).

[70]*Id.* at (applying Virginia's long-arm statute).

[71]*Id.*

[72]*Id.* at 1564-65.

[73]*Id.* at 1571 (noting that for purpose of determining whether a tortious injury had occurred in the state under Virginia's long-arm statute, "a focus on the place where the infringing sales are made is consistent with other areas of intellectual property law—it brings patent infringement actions into line with the rule applied in trademark and copyright cases").

[74]*Id.* at 1568.

[75]*Id.* (citations omitted).

[76]*See* Ex. B attached to Pl.'s Opp. Mem.

destination of the products to Utah by (1) selling its chips directly to consumers in Utah through online distributors; (2) by selling its chips as components of motherboards and personal computers that are intended to be distributed in Utah as well as the rest of the United States; and (3) by providing chips to motherboard manufacturers and retailers in the State of Utah, including Gateway. Plaintiff also alleges that it requires discovery to be able to show the full amount of the various sales. ITE argues Plaintiff's submissions do not contest its own evidence that it has no contacts with the State of Utah and has no knowledge or control over where products containing its chips are directed. ITE moves to strike the affidavit of Dr. Adams as hearsay and speculation. Plaintiff responded with further declarations showing personal knowledge as to some information, asserting that discovery is needed to confirm information such as numbers of sales, and citing case law that hearsay is admissible on the issue of a preliminary showing of personal jurisdiction.[77]

ITE opposes further discovery on the grounds that it is premature and a waste of money because there was no showing of service, it would be futile as Plaintiff does not dispute specific statements in ITE's declaration in support of the Motion, and because Plaintiff does not limit the discovery it seeks. ITE's first argument is resolved by the Court's ruling, above, that service was proper. ITE's second argument merely reflects the parties' disagreement on the proper standard for stream of commerce, an issue for the Court.

---

[77]*E.g.* Docket No. 1563 (Pl.'s Reply in Supp. of Additional Discovery, at 3. n.1) (citing cases including *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 n.1 (Fed. Cir. 2008) for proposition that "affidavits containing hearsay allowed on motion to dismiss for lack of personal jurisdiction").

ITE's third argument is resolved by Plaintiff's reply clarifying that it seeks discovery regarding "ITE's contacts with Utah."[78]

The Court agrees that, at this preliminary stage, some hearsay in affidavits is admissible.[79]  But even without that hearsay, Plaintiff has made a prima facie showing.  In so finding, the Court notes that in the context of a third-party defendant and third-party claims and cross-claims, "the minimum-contacts test may be satisfied by looking to that party's contacts with both the plaintiff and the third-party plaintiff."[80]   Thus, courts may consider not only the third-party defendant's contacts with the forum arising out of the interactions with the Plaintiff, but also the third-party defendant's "contacts with the forum relating to the transaction or occurrence giving rise to the dispute between the original plaintiff and defendant."[81]

Having reviewed the materials submitted by ITE and Plaintiff, including ITE's Motion to Strike, Plaintiff's response, and Plaintiff's Alternative Motion for Preliminary Discovery from ITE Re Personal Jurisdiction, and the applicable case law, the Court finds that Plaintiff has satisfied its *prima facie* burden of showing that ITE is subject to personal jurisdiction under Utah's long-arm statute and that exercise of such jurisdiction is consistent with the

---

[78]Docket No. 1563 at 5.
[79]The supplemental affidavits clarify the personal knowledge basis of some of the alleged hearsay. The two new motions to strike dispute that personal knowledge.
[80]Wright & Miller § 1445.
[81]1 Business and Commercial Litigation in Federal Courts § 8:15, Personal jurisdiction and venue (Robert L. Haig, ed., 2d ed. 2010) (accessed online). *See also Harkers' Wholesale Meats, Inc. v. Framarx Corp.*, 79 f.R.D. 715, 717 (N.D. Iowa 1978) (product liability case holding that in examining minimum contacts for interpleaded defendant, "the court should principally evaluate the links existing between and among all the parties with the product which has brought them all together in this court and with the litigation itself").

Due Process Clause of the United States Constitution.  As in *Beverly Hills Fan*, Plaintiff's evidence that ITE has placed its chips in the stream of commerce as outlined above, that Dr. Adams purchased personal computers and motherboards in Utah containing such chips in the time frame, and the natural inference that ITE likely knew the destination of its products.  Further information on those issues must be obtained through discovery.  While ITE argues that Plaintiff does not dispute the statements in ITE's submitted declaration, it appears that evidence, other than the natural inferences, of ITE's knowledge of likely destinations (including such matters as the likely destinations of its chips sold through third-party Sony's products) must be obtained through discovery.  For now, the *prima facie* showing has been made.  ITE's recent Motions to Strike Plaintiff's Supplemental supporting affidavits based on hearsay, irrelevancy, and disputed facts show that the evidence is hotly contested.  As discussed above, at this stage "all factual disputes must be resolved in the plaintiff's favor."[82] ITE's arguments regarding hearsay and its disputes regarding the facts may be resolved in further proceedings.

Although Plaintiff has made a *prima facie* showing, because ITE contests the facts asserted by Plaintiff in making that showing and because ITE will contest personal jurisdiction in opposition to Plaintiff's Motion for Entry of a Default Judgment against ITE, the Court will grant Plaintiff's alternative Motion for Discovery on Personal Jurisdiction.  Such discovery is necessary to resolve the disputed facts of personal jurisdiction over ITE.

Pursuant to a stipulation of all of the other remaining parties to this case, the issues involved in Plaintiff's Motion for a Default Judgment will be heard together with Plaintiff's

---

[82]*Id.*

claims against the other Defendants based on ITE chips. Discovery on personal jurisdiction may begin right away so that the ITE's defense of lack of personal jurisdiction may be resolved in those bifurcated proceedings. The parties should meet and confer regarding a schedule to begin such discovery.

By granting Plaintiff's request for discovery on the personal jurisdiction issue, the Court is in no way ruling on the availability of any other discovery on issues arising from the ITE chips. That is an issue to be addressed in connection with the bifurcated proceedings. Those bifurcated proceedings will include Plaintiff's Motion for a Default Judgment against ITE, ITE's defense of lack of personal jurisdiction and any other claims between the parties involving ITE chips.

## IV. ORDER

Based on the foregoing, it is

ORDERED that ITE's Motion to Set Aside the Clerk's Entries of Default as to ITE Tech, Inc. and to Dismiss Plaintiff's claims against ITE Tech, Inc. (Docket No. 1329) is DENIED as provided herein. It is further

ORDERED that ITE's Motion to Strike the Declaration of Dr. Adams in Opposition to ITE's Motion to Dismiss (Docket No. 1424) is DENIED . It is further

ORDERED that Plaintiff's Alternative Motion for Discovery re Personal Jurisdiction Issues (Docket No. 1372) is GRANTED. It is further

ORDERED that ITE's Motion to Strike the Declaration of Scott Ryther (Docket No. 1620) is DENIED. It is further

ORDERED that ITE's Motion to Strike Dr. Adams' August 12, 2010, Supplemental

Declaration (Docket No. 1618) is DENIED.

DATED September 1, 2010.

BY THE COURT:

TED STEWART
United States District Judge