IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>WINBOND ELECTRONICS CORPORATION, ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORP., LTD, AND MSI COMPUTER CORP., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT LIMITING DAMAGES<br><br><br><br>Case No. 1:05-CV-64 TS |

I. INTRODUCTION

ASUS and MSI joined former Defendant Sony's Motion for Partial Summary Judgment seeking to limit Plaintiff's damages on two grounds: first, because Plaintiff attempts to rely on the entire market value rule; second, because Plaintiff failed to comply with the marking requirement of 35 U.S.C. § 287(a). The Court finds that the first ground is moot because Plaintiff's expert on damages does not rely on the entire market value to

1

determine damages. As to the second ground, the Court finds that the marking requirement does not apply on the facts proffered. Accordingly, the Court will deny the Motion.

DISCUSSION AND CONCLUSIONS

A. Entire Market Value Rule

The Court need not go into detail about the entire market value rule because the parties agree that it does not apply. Briefly, the "entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand."[1] "For the entire market value rule to apply, the patentee must prove that the patent-related feature is the basis for customer demand."[2]

Sony argued that when Plaintiff's expert, Joseph Gemini, considered the estimate of the cost of replacing defective chips—obtained from the *Toshiba* settlement—compared to the average cost of Sony's computers to determine 2.9% as the reasonable royalty rate, that Mr. Gemini was applying the entire market value rule. Sony argued that because there is no foundation for applying that rule in this case, Plaintiff's expert could "not rely on the value (or average price) of the entire Sony computer in calculating damages."[3] Thus, Sony

---

[1] *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (quoting *State Indus., Inc. v. Mor-Flo Indust., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989)).

[2] *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (internal quotation and citation omitted).

[3] Docket No. 1097 at 15.

sought to preclude Plaintiff from relying on the entire market value rule.[4]  In its reply brief, Sony sought not only to preclude Plaintiff from relying on the entire market value rule, but also to have the Court set the basis for damages as "the smallest salable infringing unit"[5] based on the case *Cornell University v. Hewlett-Packard Co.*[6]  Thus, it argues that damages should be based on a type of running royalty, use of the number of the allegedly infringing chips multiplied by the value of the such chips.  ASUS' joinder in this portion of the motion makes it clear that what it is seeking is also a per unit or running royalty calculation of damages.  ASUS and MSI have pursued that argument in other motions.[7]

Plaintiff agrees that the entire market value rule does not apply in this case and submits that Mr. Gemini's opinion is not based on that rule.  Instead, Plaintiff's theory of damages as explained by Mr. Gemini is based on a paid-up or lump-sum royalty.[8]

Plaintiff argues that the *Cornell University* case is not applicable.  The Court agrees.  *Cornell University* did not, as asserted by Sony, hold that where the entire market value rule does not apply, damages should be based on the smallest salable infringing unit.  Instead, in *Cornell University*, the trial court, in post-trial motions, found that plaintiff had

---

[4] *Id*. at 23.

[5] Docket No. 1191, at 2 (quoting *Cornell University v. Hewlett-Packard Co.*, 609 F.Supp.2d 279, 288 (N.D. N.Y. 2009)).

[6] 609 F.Supp. 2d 279.

[7] Docket No. 1644 (Order Denying Defendants' Motion for Clarification) at 3 and n. 8.

[8] Gemini August 14, 2009 Report at 45-46.

3

not shown that the entire market value applied to the royalty base sought by the plaintiff. Instead, the trial court granted a motion for judgment as a matter of law that the smaller unit was the appropriate royalty base and recalculated damages using that royalty base. In the alternative, it offered the plaintiff a remittitur in the amount of the damages it calculated based on the smaller royalty base. However, *Cornell University* involved only a hypothetical running royalty. It did not involve nor discuss a paid-up (lump-sum) royalty. Thus, its focus on evidence of the "smallest salable infringing unit" related to a running royalty, not a paid-up royalty.

It is well established that a paid-up or lump-sum royalty is a measure of damages that is available where the circumstances warrant.[9] In the present case, evidence of other licenses of the patents in suit in the time frame of the hypothetical negotiations involve such a lump-sum royalty. "A lump-sum or flat-fee may be proper if there is evidence to support finding [the alleged infringer] would have entered into such an agreement at the time the hypothetical negotiations is said to have occurred, or at the least that such royalties are (or were) commonly utilized in the industry."[10]

---

[9] *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326–27, 1330 (Fed. Cir. 2009) (reversing damages award because plaintiff had not met its burden of showing that either lump-sum or running royalties were "sufficiently comparable to support lump-sum damages award" and also considering separately that no basis shown for entire market value rule); *Wordtech Systems, Inc v. Integrated Networks Solutions, Inc.*, 2010 WL 2384958, *10 (Fed. Cir. 2010) (reversing and remanding for new trial on the issue of damages because the evidence did not support the $250,000 lump-sum reasonable royalty award).

[10] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.Supp. 2d 147, (D. R.I. 2009). In *Uniloc*, it was the alleged infringer's expert who argued for a lump-sum royalty while Mr.

4

B.  Sufficiency Challenge to Mr. Gemini's Testimony

Sony also argued that Mr. Gemini conducted a flawed analysis of damages. Sony is no longer a party to this case and, therefore, no purpose would be served by addressing Sony's arguments. ASUS' and MSI's joined in the present motion, but did not add anything of substance to Sony's flawed analysis argument. Instead, they raise their own flawed analysis arguments in two other motions directly addressing Mr. Gemini's damages calculations for Plaintiff's claims against each of them.[11] Accordingly, the Court will consider their arguments regarding the sufficiency of Mr. Gemini's analysis of damages only in connection with those other motions.

C.  Failure to Mark

Defendants[12] argue that Plaintiff failed to comply with the marking requirement of 35 U.S.C. § 287. Therefore, they argue that § 287(a) bars Plaintiff from recovering damages that pre-date the patentee's giving them actual notice of infringement. MSI

---

Gemini, as the plaintiff's expert argued for the "25% rule" as a "rule of thumb".

[11] Docket Nos. 1401 and 1405 (Defendant's Motions to Exclude all or part of Mr. Gemini's report and testimony).

[12] Because Sony is no longer a party, leaving only MSI's and ASUS' joinder in this portion of the Motion to be decided, MSI and ASUS will be referred to as Defendants in this section.

joined the Motion without analysis.[13] ASUS joined but proffers different dates than those applicable to Sony as the dates Plaintiff first provided notice to ASUS.[14]

Section 287(a) provides:

Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.[15]

Section 287 serves three related purposes: (1) it helps to avoid innocent infringement; (2) it encourages patentees to give notice to the public that an article is patented; and (3) it aides the public in identifying whether an article is patented.[16]

"As stated in § 287(a), the obligation to mark extends to persons who make or sell patented articles 'for or under' the patentee, and the failure to mark on the part of such persons precludes the patentee from recovering damages for infringement by third

---

[13] Much later, MSI attempted to file a supplemental brief, which was denied. Docket No. 1575. MSI also raises this defense in a Motion in Limine, which ASUS joined. Docket Nos. 1475 (MSI's Motion in Limine No. 19) and 1481 (ASUS' joinder).

[14] Docket No. 1083.

[15] 35 U.S.C. § 287(a).

[16] *Radar Industries, Inc. v. Cleveland Die & Mfg. Co.*, 2010 WL 777077, 2 (E.D.Mich.) (E.D. Mich. 2010) (citing *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)).

parties."[17] Courts hold that "[p]ersons make or sell patented articles 'for or under' a patentee when the patentee has expressly or impliedly authorized them to do so."[18] Section 287 "applies to authorizations by patentee of other persons to make and sell patented articles regardless of the particular form these authorizations may take and regardless of whether the authorizations are 'settlement agreements,' 'covenants not to sue' or 'licenses.'"[19] If the marking statute applies, Plaintiff has the burden of proving compliance.[20]

Defendants' argument that the marking statute applies is as follows: Because the '002, '222, and '858 patents, the only remaining patents in suit, have both method and apparatus claims and because Plaintiff alleges infringement of the apparatus claims of each patent, the marking statute may apply.[21] Hewlett Packard (HP) and Compaq had licenses from Plaintiff. Those licenses each contained Plaintiff's covenants not to sue HP and Compaq regarding "any matter relating to FDCs."[22] Under Federal Circuit law, a

---

[17]*Id.* at 3.

[18]*Id.*

[19]*In re Yarn Processing Patent Validity Litigation (No. II)*, 602 F.Supp. 159, 169 (D. N.C. 1984).

[20]*Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).

[21]Defendants concede that the marking statute does not apply to only method claims "because there is no 'patented article' to be marked." Docket No. 1083 at 25.

[22]*Id.*

covenant not to sue is equivalent to a non-exclusive license.[23]  HP and Compaq products contained the allegedly infringing Winbond chips. The allegedly infringing Winbond chips are "related to FDCs."  Therefore, they argue that HP's and Compaq's making of computers using the allegedly infringing Winbond chips was making or selling "for or under" the patentee, whether or not HP and Compaq knew the Winbond chips infringed.[24]

Plaintiff naturally does not agree with this interpretation.  Plaintiff points to the very specific and limited nature of the license given to HP and Compaq:

> The HP Software and Patent License Agreement grant a limited license to HP: to use the *Licensed Patents* and *Software Programs* to make, [etc.] . . . *Licensed Products*.  The license grant depends on a series of defined terms that exclude the sale of infringing computers using Winbond FDC chips.
> "*Licensed Products*" are defined and limited to HP products incorporating *Software Programs*, or the *Software Programs* interconnected with an HP product.  "*Software Programs*" are defined as code owned or controlled by Adams for the "*Adams Technology*" licensed to HP.  The "*Adams Technology*" is defined as the list on Exhibit A to the Master Agreement. Exhibit A lists Adams' *Detector*, *Solution*, and *Identifier*, which are the things that Adams was required to deliver to HP under the agreement.[25]

---

[23] *TransCore, LP v. Elect. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (explaining that a patent license "passes no interest in the monopoly, it has been described as a mere waiver of the right to sue by the patentee" and "[t]o like effect, this court and its predecessors have on numerous occasions explained that a non-exclusive patent license is equivalent to a covenant not to sue") (first phrase quoting *De Forest Radio Telephone & Telegraph Co. v. United States*, 273 U.S. 236, 242 (1927)).

[24] There is no allegation that HP or Compaq knew that the Winbond chips were (allegedly) infringing when HP and Compaq purchased them and incorporated them into their products.

[25] Docket No. 1165 at 10 (emphasis in original; internal citations to exhibits omitted).  The HP license agreement is Def.s' Ex. 3, the Compaq agreements are Def.s'

8

Plaintiff further argues:

> Reading all these provisions together, it is clear that Adams licensed HP under the patents only to use Adams' own Software Programs *i.e.*, the software that Adams actually delivered to HP in or with HP products. There is no provision in the HP agreement giving HP a blanket license to use the Adams patents for other purposes. The license is limited to use of the Adams Software Programs. There is no license that covers infringing sales of computers using Winbond chips.
>
> [Defendants] also cited to a covenant not to sue in the Master Agreement, but that covenant does not modify the express terms of the license in the License Agreement. A marking requirement applies only to sales authorized by the patent owner. HP did not get authority to use patents by virtue of a covenant not to sue. Instead, the only authority to use patents comes from the detailed, limited and express license provisions in the agreements. That license does not permit sale of infringing computers with Winbond chips.[26]

Thus, Defendants' argument on marking requires the court to determine the scope to be accorded the "for or under" language of § 287(a) when there is a restrictive express license that contains an apparently unlimited covenant not to sue. Neither party has submitted case law directly addressing this issue,[27] which is apparently one of first

---

Exs. 4 and 12. Plaintiff's Mem. in Opp. to this Motion is filed under seal. However, Plaintiff makes the identical argument to that quoted above in its opposition to MSI's and ASUS's Motion in Limine No. 19 to limit evidence of pre-notice damages under § 287(a), Docket No. 1544, which is filed on the public docket. Therefore, the Court will not file this order under seal.

[26]*Id*. at 10–11 (citing *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) for the proposition that a marking requirement only applies to sales authorized by the patent owner).

[27]In *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008) a patent exhaustion case, the license authorized the licensee to sell products that embodied the method patents but, after such sale purported to limit the ability of third parties to combine the purchased patented parts with components of any other maker for use, import, or sale in combination and required the licensee to provide notice of the

9

impression. For example, the *Transcore* case, cited above,[28] involved only a covenant not to sue, not an express license containing a convent not to sue.

The Court finds that this portion of the summary judgment motion on damages is a matter of contract interpretation and, therefore, a matter of law. For this purpose, the disputed facts of the alleged infringement of Winbond's chips are accepted as true for the purposes of the motion only. Plaintiff did not dispute Defendant's evidence of the numbers of HP/Compaq computers sold, so those figures are accepted for the purposes of this motion only. Because the Court rules on the effect of the licensing agreements' covenants not to sue as a matter of law, the disputed facts of the dates of notice to ASUS and MSI and whether and how Plaintiff marked the products are not material.

Although there are no cases directly on point, the Court finds instructive the case *Tulip Computers Intern. B.V. v. Dell Computer Corp.*[29] Like the present case, in *Tulip Computers*, the defendants offered a failure to mark defense. In *Tulip Computers*, the license to use and sell contained several restrictions, including the rights to have patented

---

provision. Notwithstanding receiving such notice Quanta did combine the patented part it purchased from the licensee with parts not manufactured by the patentee or licensee in a manner that practiced the patents. The Court found that because the initial sale was authorized, and because the products' "constituted a material part of the patented invention and all but completely practice[d] the patent," "lacking only the addition of standard parts", the doctrine of patent exhaustion applied. However, *Quanta* is of no assistance because unlike the sales in *Quanta*, the use in the present case by suppliers to the licensee was not authorized under the license.

[28]563 F.3d 1271.

[29]262 F.Supp.2d 358, 359 (D. Del. 2003).

products made only if the patentee Tulip supplied the specifications. The licensee purchased several pre-made infringing products from a supplier under a re-marketing agreement and marketed them under the licensee's own name. When the patentee sued the supplier for infringement, the supplier defended under the marking statute. The supplier "reason[ed] that because [the licensee], as Tulip's licensee, sold those products without placing a patent mark on them, the provisions of 35 U.S.C. § 287(a) [were] applicable" and "moved for partial summary judgment on failure to mark."[30]

The *Tulip Computers* court explained that because § 287(a) extends to licensees,

> As [the suppliers] marking defense arises in the context of sales by [the licensee] and not Tulip, the Court, before proceeding to a consideration of the damage limiting provisions of Section 287(a), must first determine whether [the licensee's] activities, in relation to those sales, should be imputed to Tulip. If so, Tulip is accountable under Section 287(a) for the actions of its licensee. If [the licensee] was not acting in accordance with its licensing obligations when executing the sales in question, then Tulip should not bear the consequences for the unauthorized activities of [the licensee] and [the supplier].[31]

Construing the licensing agreement in accordance with applicable state law, the *Tulip Computers* court found it must be read as a whole and could not be read to render the license limits a nullity—a result forbidden by state law.[32]

---

[30] *Id.* at 361.

[31] *Id.* at 362.

[32] *Id.* at 365–66.

In the present case, the license contracts must be construed under California law.[33] Under that law, as in the state law at issue in *Tulip Computers*,

> As a rule, the language of an instrument must govern its interpretation if the language is clear and explicit. A court must view the language in light of the instrument as a whole and not use a disjointed, single-paragraph, strict construction approach. If possible, the court should give effect to every provision. An interpretation which renders part of the instrument to be surplusage should be avoided.[34]

In this case, as in *Tulip Computers*, the rights to "make, . . have made, use, . . . offer for sale, sell . . . . Licensed Products" is limited. In this case the right is ultimately limited to the Software Programs for the "Adams Technology" "licensed by HP."[35] Thus, HP rights are limited to those licensed by HP from Plaintiff. The allegedly infringing chips purchased from a supplier were not licensed by HP from Plaintiff. As in *Tulip Computers*, the license "does not cover the transfer of unauthorized products allegedly covered by" Plaintiff's patents.[36]

To read the covenant not to sue as writing out of the license agreements all other provisions would render all of those limitations surplusage, an impermissible result under California law. Under such a reading, the licenses' many limitations would have no binding

---

[33]Def.'s Ex. 3 at PMA0028584 (choice of law provision providing it will be construed in accordance with the laws of the State of California) and Ex. 4 PMA0022567(same for Compaq agreement).

[34]*National City Police Officers' Ass'n v. City of National City*, 87 Cal. App. 4th 1274, 1279 (Cal. App. 2001) (internal citations and quotations omitted).

[35]Def.'s Ex. 3 at PMA0028598 and PMA0028606 (adding "to be executed solely on" an HP product to definition of Licensed Products).

[36]*Tulip Computers*, 262 F.Supp.2d at 366.

effect on HP/Compaq because Plaintiff would have given an implied license "in any matter related to FDCs." This is especially true where the license agreements contains several provisions relating to the parties' rights regarding lawsuits.[37] To read one (the covenant) as controlling and others as surplusage makes no sense. Similarly, the covenants not to sue contain more that "related to FDC's" language. For example, the covenant in the Compaq agreement provides what Plaintiff agrees not to sue Compaq regarding, others to whom the agreement extends, and the scope of that extension as to others.[38] To focus solely on one phrase of the covenant would render the rest of the language surplusage. Thus, as in *Tulip Computers*, the licensee HP's sales of computers containing the allegedly infringing chips cannot be imputed to Plaintiff for purposes of the marking statute.[39]

### III.   ORDER

ORDERED that Sony's Motion for Summary Judgment Limiting Damages (Docket No. 1063) is DENIED because the marking statute does not apply. It is further

---

[37] Def.'s Ex. 3 at PMA0028584 ¶¶ 6 and 8.

[38] Def.'s Ex. 4 at MA0022566.

[39] *See also* Robert A. Matthews, Jr., Annotated Patent Digest § 30:154 (2010) ("A patentee cannot be found not to comply with the marking statute based on unauthorized manufacture and sale by a third party. Such use is not 'for or under' the patentee.") (citing cases including *Tulip Computers*).

ORDERED that Motion is also DENIED as joined by MSI (Docket No. 1075) and ASUS (Docket No. 1082). Therefore, the Motions for Joinder at Docket Nos. 1072 and 1076 are MOOT.

DATED September 8, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge