IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>WINBOND ELECTRONICS CORPORATION, ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORP., LTD, AND MSI COMPUTER CORP., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON WINBOND'S CLAIM OF PRIVILEGE<br><br><br><br>Case No. 1:05-CV-64 TS |

Plaintiff challenges Winbond's claim of privilege in two copies of the same document inadvertently produced during discovery. Winbond argues the documents are privileged under the attorney-client privilege and also argues that Plaintiff has acted improperly in not immediately returning all copies and by submitting the document directly for *in camera* review.

The background of the dispute over Plaintiff's submission is as follows: Winbond inadvertently produced to Plaintiff a document identified as Bates Nos. WNBD013654-58.

1

The document is an email between two Winbond engineers and attaches several pages of test results. When Plaintiff sought to question a Winbond witness regarding the document, Winbond made its claim of privilege, demanded the document be returned, and amended its privilege log to list the document as its Amended Privilege Log No. 415. Plaintiff promptly complied with the request and returned the document.

However, unbeknownst to the parties, Winbond had also produced to Plaintiff another copy of the document, with entirely different Bates numbers as WNBD004139-43 (the second copy).

Plaintiff's recent Motion for Sanctions Against Winbond for Spoliation was based, in part, on the second copy, arguing that Winbond spoliated certain evidence. Upon receipt of the Motion, Winbond inquired as to the source of the information, identified it as another copy of the document listed on its privilege log as No. 415, and demanded return of the second copy. Winbond then amended its privilege log to include the second copy as No. 416.

On August 2, 2010, Plaintiff submitted the second copy to the Court together with its challenge to the claim of privilege for *in camera* review. When Plaintiff submitted a copy to the Court, Plaintiff also represented that it had destroyed all other copies in its possession. Winbond's claim of privilege for Nos. 415 and 416 (No. 415[1]) on its privilege log are for attorney-client privilege only; it does not also claim them under the work product

---

[1] Because Nos. 415 and 416 are identical, they will be jointly referred to as No. 415.

doctrine.

Thus, Plaintiff challenges Winbond's claim of privilege in No. 415 by an *in camera* submission and Winbond responded to the *in camera* matter.

The Court then ordered that Winbond submit several additional privilege log items for *in camera* review. Winbond submitted those additional privilege log documents for *in camera* review together with translations requested by the Court for some of the materials. The Court reviewed those additional items to determine if they could shed light on the claim of privilege in No. 415. Unfortunately, only one of the additional requested materials were helpful to the claim of privilege in No. 415. The Court finds those other privilege log documents are all properly claimed as privileged but that only one is relevant to the claim of privilege in No. 415.

In addition to the materials submitted for the *in camera* review of No. 415, Winbond also submitted argument and Declarations covering No. 415 in connection with its response to Plaintiff's Motion for Sanctions against Winbond.[2]

As the final submission was made on this *in camera* matter on August 8, 2010, Plaintiff discovered that it had attached a copy of No. 416 to a paper it served on the parties in late July. The attachment was made as a result of Plaintiff's law firm's support personnel using documents from a hard drive provided to Plaintiff's current law firm by its former law firm. The former law firm has now been notified to delete the document. Apparently, Winbond did not notice the July 24, 2010, attachment. The Court finds such

---

[2]See Docket No. 1495, at 7 and n.40.

disclosure to have been inadvertent.

As an initial matter, the Court finds that based on the unique facts of this case that Plaintiff did not act improperly. At the time of the submission, the trial was fast approaching, Plaintiff had already relied on the document in a filed and pending motion, Plaintiff's reliance was the result of Winbond's own inadvertent but repeated production to Plaintiff, and there was no clear procedure for resolving the matter. However, finding that Plaintiff did not act improperly does not mean that its unusual procedure was in any manner favored by the Court. Such a submission of a dispute for *in camera* review without first requesting an *in camera* review will not be considered in the future. Such matters should be conducted by motion.

Turning to the merits of the claim of privilege, the record consists of eight proffer letters from counsel, plus declarations and exhibits submitted with those letters.[3]

The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."[4] However, as the Supreme Court has explained:

> The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:
>
>> "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different

---

[3] The record will be filed under seal as a single docket entry.

[4] *Upjohn Co. v. United States,* 449 U.S. 383, 390 (1981).

4

> thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."[5]

"The party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable."[6] "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law."[7] If the particular material does not relate to an issue of substantive patent law, the Court looks to the law of the Tenth Circuit regarding privilege.[8] In the present case, the materials are related to a substantive issue of patent law.

The claimed attorney-client privilege material, Log No. 415, consists of an email between two engineers, with attached test results. The attached test results appear to be of test programs writef3.dump and writef1.dump.

Winbond argues that the email and test results were prepared and communicated by its engineers and that the information was ultimately provided to its counsel for the purpose of obtaining legal advice. If that were correct, the email would be subject to the

---

[5] *Id.* at 395-96 (emphasis in original) (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (D. Pa. 1962)).

[6] *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).

[7] *In re Seagate Tech.,* 497 F.3d at 1375 (quoting *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001)).

[8] *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006).

privilege. Where the information is ultimately conveyed to counsel for the purpose of obtaining legal advice, communications between employees in the course of their work preparing, gathering, etc., the information to counsel are also covered. Reviewing the supporting declarations, the Court notes that they do not disclose when the writef3 test program was prepared. While the declarations imply that writef3 was created in 2003, in connection with the litigation, they do not actually aver that it was created in 2003. In sharp contrast, the declarations specifically state that the creation of the writef1 and writef2 programs was in March 2000.[9] The declarations do disclose the time period when the writef3 test program was used to prepare the test results that are attached to the email—September 2003.

There is a factual dispute between Plaintiff and Winbond over whether the writef programs are used in manufacturing. Thus, writef3 is relevant to a major issue at trial.

The Court finds that the email itself is privileged but that the carefully worded Declarations and the argument of counsel in the many letters submitted on this issue fail to establish that the writef3 program or its test results are covered by the attorney-client privilege.

The Court had requested that counsel submit information about No. 415, including "every recipient of the communication."[10] Winbond's counsel responds by saying "the *substance* of the email was communicated to" two named counsel. However, the

---

[9] Lu Decl.

[10] Docket No. 1436 at 1.

Declarations of those counsel do not support this claim—none of the them say the information was communicated to them. There is a declaration by one counsel avering that one of the engineers provided him with "information related" to an issue so he could provide legal advice on that issue. However, he does not say that it was the information in No. 415 that was provided to him or that the substance of its information was provided to him. He avers that the email responds to a question he "*would have* needed to have answered to provide legal advice asked under the existing circumstances."[11] But he does not say that he knows that the question was asked of the engineers or that the answer was actually provided to him or other counsel. Another counsel says the email between the two engineers was transmitting the "technical information that one was asked to provide to Winbond's legal department."[12] But again it does not say the information or the substance of the information was ever provided to the declarant/counsel or any other known counsel. There is no declaration from the engineer who prepared the email or the one who received it.

Thus, there is no showing in the declarations submitted by counsel that the factual information in the attachments was ever communicated to counsel. However, one other document in the privileged documents, Log No. 242, does establish the likely purpose and use of the cover email for No. 415 and ties it to other information that had been provided to counsel. Thus, the Court finds that Winbond has met its burden of showing that the

---

[11] Sun Decl. at ¶ 5 (emphasis added).

[12] Chiang Dep. at ¶ 4.

email itself is an attorney-client privileged communication.

However, regardless of whether they were communicated to counsel, the underlying facts in the form of test results are merely facts. As discussed above, the "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."[13] Thus, the test results themselves, as facts, and not being subject to a claim of work product, are not covered by the privilege and must be produced.

Plaintiff also requests that writef3 and its source code be produced. As stated above, there is no showing that the writef3 test program was created in 2003 to provide information for the purpose of obtaining legal advise. There is no claim of work product. The only information is that writef3 was used in 2003. That is insufficient for it to be covered by the attorney client privilege. The source code for the writef1 and writef2 programs have already been turned over to Plaintiff and there is no reason why the writef3's source should not also be turned over.

It is not clear if Winbond still has the writef3 test program source code. However, if it does have that source code, it is not subject to an attorney-client privilege. Therefore, it should be produced.

As counsel are well aware, this case is in the midst of a jury trial. They shall work together to produce the material directly to Plaintiff forthwith. To the extent that Plaintiff needs additional time with Dr. Adams or Dr. Kraft after receipt of the material, counsel shall

---

[13]*Upjohn,* 449 U.S. at 390.

work together regarding the timing and inform the Court. It is therefore

ORDERED that the emails at Winbond Log Nos. 415 and 416, are privileged and need not be turned over. It is further

ORDERED that the test results attached to Log Nos. 415 and 416, the writef3 test program, and the source code for the writef3 test program are not privileged and shall be turned over to Plaintiff forthwith. It is further

ORDERED that the Court briefly sealed this order to allow counsel to state their position, if any, on its unsealing. It is further

ORDERED that counsel for Plaintiff and for Winbond may pick up copies of this Order directly from chambers on today's date and shall inform the Court by 8:15 a.m. on September 17, 2010 of any reason that this Order shall not be unsealed.

DATED September 16th, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge