IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PHILLIP M. ADAMS & ASSOCIATES, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>WINBOND ELECTRONICS CORPORATION, ASUS COMPUTER INTERNATIONAL, MICRO-STAR INTERNATIONAL CORP., LTD, AND MSI COMPUTER CORP., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS TO EXCLUDE ALL OR PART OF PLAINTIFF'S EXPERT GEMINI'S TESTIMONY<br><br>Case No. 1:05-CV-64 TS |

Winbond and MSI[1] move to exclude the testimony of Plaintiff's expert Joseph Gemini because it is not reliable and will not assist the jury in determining the facts at issue. ASUS[2] moves to exclude certain of Mr. Gemini's testimony on the grounds his opinions are speculative and lack sound economic proof. Portions of the Motions are mooted by the Court's recent orders dismissing Plaintiff's trade secret claims against all

---

[1]MSI Computer Corporation and Micro-Star International Corporation, Ltd.

[2]Asustek Computer and Asus Computer Intl.

1

of the remaining Defendants. Therefore, there will be no occasion for Mr. Gemini's opinions on damages arising from the trade secret claims.

Federal Rule of Evidence 702 requires that an expert's testimony be based upon "sufficient facts," that the testimony is the "product of reliable methods," and that the "witness has applied the principles and methods reliably to the facts of the case."

Winbond and MSI do not dispute that the methodology used by Mr. Gemini is accepted.[3] Instead, they argue that he so misapplied that methodology as to some factors that his testimony is deficient and should be excluded on those areas. Specifically, they argue that he misapplied each of the *Georgia-Pacific* factors.[4] The *Georgia-Pacific* factors are used to determine a reasonable royalty rate to calculate damages for patent infringement.[5]

Plaintiff argues that Mr. Gemini applies the correct methodology—the *Georgia-Pacific* factors—and that his underlying factual foundation is sound. Plaintiff further argues that Defendants' *Daubert*[6] challenges to Mr. Gemini's testimony merely raise issues more appropriately explored through cross-examination at trial.

The Federal Circuit recently and fully explained admissibility of expert evidence on damages in a patent trial under Fed. R. Evid. 702 and the *Daubert* line of cases in *i4i Ltd.*

---

[3] Docket No. 1412 (Mem. in Supp. at 1 (arguing that "Mr. Gemini misapplies the accepted methodology for determining the reasonable royalty for patent infringement")).

[4] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D. N.Y. 1970) (listing 15 factors used to determine a reasonable royalty rate for damages for patent infringement).

[5] *i4i Ltd. Partnership v. Microsoft Corp.,* 598 F.3d 831, 854 (Fed. Cir. 2010).

[6] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

*Partnership v. Microsoft Corp*.:[7]

> When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility.[8]

The Court finds that Mr. Gemini is qualified to opine on damages in this case. Defendants do not proffer anything from which the Court could find otherwise. The fact that portions of his testimony were excluded in two other cases does not mean he is not qualified. In the first case, *Dastgheib v. Genentech*,[9] Mr. Gemini's testimony was permitted to testify on value issues over the objections of the defendant. However, he was not allowed to testify on a narrow range of information. For example, he was not allowed to opine that a fact was true.[10] But he was allowed to testify that he assumed a fact to be true for purposes of opinion on damages.[11] Significantly, the same restrictions that were placed on Mr. Gemini in *Genentech* were also placed on the defendant's expert.[12]

In the second case, *IP Innovation L.L.C. v. Red Hat, Inc*.,[13] Mr. Gemini's testimony was excluded in part, based on his "arbitrary" "pick of a royalty rate that was much higher

---

[7] 598 F.3d 831, 854 (Fed. Cir. 2010).

[8] *Id.* at 852.

[9] 438 F. Supp. 2d 546 (E.D. Penn. 2006). *Genentech* was not a patent case. Instead, it involved a claim for a breach of agreement.

[10] *Id*. at 552 and n.4.

[11] *Id.*

[12] *Id*. at 552 and n.5.

[13] 2010 WL 986620 (E.D. Tex. March 2, 2010).

3

that the existing royalty rates for licenses to the patents-in-suit," using certain reports as a "starting point." The trial court found that rather than relying on these studies, Mr. Gemini should have "at least inaugurated his analysis with reference to the existing licenses to the patents-in-suit."[14] The trial court then invited motions to re-do the expert opinion.[15]

Defendants argue that this case is like *Red Hat* because Mr. Gemini relied on the same reports in this case. However, the *Red Hat* court's requirement that Mr. Gemini use existing licenses as a "starting point" for his analysis is exactly how Mr. Gemini proceeded in this case. Mr. Gemini's report lists and considers the royalties received by Plaintiff for the licensing of the patents-in-suit as proving or tending to prove an established royalty.[16] Further, *Red Hat* involved the "entire market rule" a rule that Mr. Gemini does not rely on in the present case.

The fact that Defendants' experts find other reports and summaries to be more applicable to the present case or more authoritative reveals a difference of expert opinion, not a lack of sufficient data. That difference may be explored on cross-examination.

Defendants also argue that Mr. Gemini's reliance on the *Toshiba* settlement is improper because he fails to explain how it has anything to do with this case. In particular, they object to his use of an estimate of the replacement costs for a computer component

---

[14]*Id.* (citing *Georgia-Pacific*, 318 F.Supp. at 1120, as an example of correct consideration of "past and present royalties received by the patentee 'for the licensing of the patent-in-suit, proving or tending to prove an established royalty'").

[15]*Id.* (noting that the trial court would "entertain appropriate motions to repair and prepare a record suitable for trial on issue of damages").

[16]Winbond's and MSI's Mem. in Supp. at 12 and Def.s' Ex. 1 (Gemini Report) at 37-38.

4

as memorialized in the *Toshiba* settlement.[17] Defendants argue that the potential replacement costs in *Toshiba* were materially different. However, their own expert's estimates of the replacement costs is hardly more specific to this case.[18] The shortcomings of the use of either estimate may be explored during the respective cross-examinations. Mr. Gemini will be testifying based on his assumptions of facts. The validity of using those assumptions may be fully explored at trial under the standards as set forth in a separate order.[19] Mr. Gemini several times references the *Toshiba* settlement, but he does not use it as a direct comparison of royalties tending to prove or disprove an established royalty as he does with the *Gateway* settlement.[20]

Defendants summarize their positions as objecting to Mr. Gemini's "(1) assertions of facts with no evidentiary basis; (2) failure to consider or even acknowledge relevant evidence; (3) failure to apply an accepted methodology; and (4) offering opinions outside his area of expertise."[21]

---

[17] *E.g.* Gemini August 14, 2009 Report at 41-42 (considering value of hardware fix as part of consideration of *Georgia-Pacific* factor 11: The extent to which the infringer has made uses of the invention, and any evidence probative of the value of that use).

[18] *See* ASUS' expert Rasmussen's Report at Docket No. 1418-6 at ¶ 392 (opining that "[b]ased on my conversations [with my client] I understand that the costs required would be dependent upon the specific chips and motherboards involved . . . they did state that such costs would be minimal"). *Compare* Gemini Report at 41 (stating basis for opinion, "I understand from Dr. Adams" that the *Toshiba* settlement's value for the hardware fix based on a redesigned FDC is "in effect the [same] nature of the fix used by Defendants for [their] computers").

[19] Docket No. 1730 (Order on Defendant's Motion in Limine No. 4 to Preclude Plaintiff's Expert Gemini from Introducing Hearsay Evidence).

[20] *Id.* at 38.

[21] Joint Reply, Docket No. 1594 at 1.

The first summarized objection to use of certain facts is addressed in the Court's Order Denying Motion in Limine No. 4, regarding Mr. Gemini's ability to rely on hearsay.[22] Further, Defendants' experts opine based on their own assumptions regarding disputed facts.[23]

Second, Defendants argue that Mr. Gemini failed to consider or even acknowledge relevant evidence. Among the facts that Defendants contend are both relevant and not considered by Mr. Gemini are the reduction in the number of patent in suits from five to three. However, Mr. Gemini explained in his deposition that he understands the Defendants are still infringing the remaining patents and, therefore, he does not find a reason to reduce his royalty calculation.[24] Whether this is correct or not is a determination to be made by the jury.

The parties also have divergent views on what patents are comparable to the patents in suit and, therefore, what are licenses are comparable.[25] They also disagree on whether there were non-infringing alternatives available. These types of disagreements are the types of matters that are properly developed in cross-examination.

---

[22]*See* note 18.

[23]*E.g.* Rasmussen Report at ¶ ¶ 195-97 (noting that Mr. Gemini relies on assumptions inherent in Plaintiff's case and opining that based on Mr. Rasmussen's own review of the disputed evidence that Mr. Gemini's assumptions are not correct).

[24]Gemini Dep. at 89-90.

[25]*E.g. compare* Carmichael Report at 16-20 (listing licenses for patents that Mr. Carmichael opines are similar) *with* Gemini Report at 38 (opining that he has "not been provided with licenses of Defendants for licensing of patents comparable to the Adams patents-in-suit") and Gemini First Supp. Report at 3-4 (opining why three licenses are not comparable).

Defendants also argue that Mr. Gemini ignored evidence that there were non-infringing alternatives available. However, Mr. Gemini did not ignore such evidence. Mr. Gemini opined the allegation that the chip manufacturers could have used non-infringing alternatives or switched chip manufacturers is "inconsistent with information" provided to him, including "the simple fact . . . that the Defendants chose not make that switch."[26]

Third, Defendants argue that Mr. Gemini refuses to apply accepted methodology. This appears to be a version of the parties' dispute over whether Mr. Gemini's choice of a lump sum royalty is less appropriate than the running royalty chosen by Defendants' experts.[27] Where both models are accepted methodology, opinions on why one model for damages is chosen over another on a given set of facts is a quintessential matter for expert testimony.

Defendants argue that Mr. Gemini improperly relied on the HP and Compaq bundled agreements when those agreements include more than patent royalties. For example, Defendants argue that the HP/Compaq license include such things as consultant services. Again, this goes to weight and credibility of the expert testimony.

Fourth, Defendants argue that Mr. Gemini offers opinions outside the area of his expertise. The Court has addressed Defendants' argument regarding the *Genentech* case, above. As in *Genentech*, Mr. Gemini will be able to testify that he assumes certain facts

---

[26] Gemini Supp. Report at 2-4.

[27] *E.g.* Docket No. 1414, Ex. 7 Winbond's Expert Carmichael's Report at 21 (opining that running royalty rates applied to the net selling price of the semiconductor devices is the normal practice in the semiconductor industry); and 15 (opining that different royalty bases makes the agreements with sellers of personal computers inapplicable for establishing a royalty rate for makers of semiconductor chips).

for his testimony.

Defendants argue that Mr. Gemini fails to consider such legal principles as the entire market value, patent invalidity and the failure to mark. The Court has found that Mr. Gemini does not rely on the entire market value rule, that invalidity is a jury question, and that the marking statue does not apply.[28]

Finally, Defendants attempted to preclude all evidence of the *Toshiba* settlement in a separate motion.[29] As explained in the Order denying that Motion, the *Toshiba* settlement is relevant to issues in the present case and its probative value is not substantially outweighed by the danger of unfair prejudice.[30] However, that prior Order reserved the issue of whether Plaintiff's expert could discuss the *Toshiba* case.

Having considered Mr. Gemini's report and his deposition the Court finds that Mr. Gemini does not merely rely on the *Toshiba* case to establish damages. As discussed above, he considers one aspect of that settlement—the amount of the hardware fix—as it applies to this case based on the facts as explained to him by Dr. Adams. Mr. Gemini also considers the terms of *Toshiba* settlement as relevant to background, demand for the patent, etc.

Defendants take particular umbrage at the characterization of evidence in one statement in one section of Mr. Gemini's summary of the evidence regarding a non-

---

[28]Docket No. 1063. See also Docket Nos. 1075 (MSI's joinder); 1082 (ASUS' joinder).

[29]Defendants' Motion in Limine No. 1 to Preclude Discussion of the Amount of the Class Action Settlement with Toshiba.

[30]Docket No. 1583, at 3.

infringing alternative. That characterization is underlined in the following quote :

> After the *Toshiba* settlement, there was concern <u>almost frantic concern</u>, among companies in the industry about facing the same fate as Toshiba (and other litigation had started). There was uncertainty and misinformation in the market . . . [31]

The Court finds that the disputed phrase is not a baseless characterization of the evidence Mr. Gemini reviewed. That reviewed evidence includes an email by one Defendant characterizing the FDC defect problem as a "matter of LIFE-OR-DEATH to the I/O business . . . we can never overemphasize it."[32]

As the Court explained in its prior Order:

> Plaintiff's consistent theory of the case has been that the stunning *Toshiba* settlement influenced Defendant's actions. Defendants are able to point out to the jury how the *Toshiba* case differs from this case, including the nature of the alleged defects, the causes of action, etc.[33]

The Court has reviewed Mr. Gemini's reports, and deposition excerpts and finds that he will be allowed to reference the *Toshiba* settlement consistent with his disclosed opinions.

In conclusion, the Court finds that the Defendants' positions regarding Mr. Gemini's report and anticipated testimony are very similar to the position of the defendant in the *i4i Ltd.* case. In affirming the trial court's admission of the disputed expert testimony, the Federal Circuit held:

> [Defendant] ably points out various weaknesses in the damage calculations by i4i's expert. At their heart, however, [defendant's] disagreements are with

---

[31] Gemini Supp. Report at 3 (emphasis added).

[32] *Id*. at 18 (citing Ex. 194). See also additional evidence summarized at 18-19.

[33] Docket No. 1583 at 3.

[plaintiff's expert's] conclusions, not his methodology. *Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness. We have consistently upheld experts' use of a hypothetical negotiation and the *Georgia-Pacific* factors for estimating a reasonable royalty. [Plaintiff's expert's] testimony about the acceptance of the hypothetical negotiation model among damage experts and economists, combined with his methodical explication of how he applied the model to the relevant facts, satisfied Rule 702 and *Daubert*. . . . [Defendant's] quarrel with the facts [plaintiff's expert's] used goes to the weight, not admissibility, of his opinion.[34]

The Court finds Mr. Gemini's testimony is based on "sufficient facts," is "the product of reliable methods," and that he "has applied the principles and methods reliably to the facts of the case"[35] as required by Rule 702 and *Daubert*. As in the *i4i Ltd*. case, the Court further finds the Defendants' quarrel with the facts used by Mr. Gemini "goes to the weight, not admissibility, of his opinion."[36] It is therefore

ORDERED that Winbond's and MSI's Motion to Exclude the Testimony of Joseph Gemini (Docket No. 1401) is DENIED. It is further

ORDERED that ASUS's Motion to Exclude Certain Testimony of Joseph Gemini (Docket No. 1405) is DENIED.

DATED September 20, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[34] 598 F.3d at 854 (citations and quotations omitted).

[35] Fed. R. Civ. P. 702.

[36] 598 F.3d at 854.